Shaneeda Jaffer (SBN 253449)
sjaffer@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California
Telephone: (628) 600-2250
Facsimile: (628) 221-5828

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Victoria F. Maroulis (SBN 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000

*Counsel for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America,
Inc.*

Jeannie S. Rhee (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW Washington, DC 20006-
1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com

*Counsel for Google LLC*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC., <br><br>        *Plaintiff*, <br><br>   vs. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC, <br><br>       *Defendants*. | Case No. 3:24-cv-06843-JD <br><br> **JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

The parties to the above-entitled action jointly submit this JOINT CASE

MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All

Judges of the Northern District of California and Civil Local Rule 16-9.

1    **1.  JURISDICTION & SERVICE**

2           The parties agree that this Court has subject-matter jurisdiction over this case

3    pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337.  The

4    Parties further agree that the Court has supplemental and diversity jurisdiction over Epic's state-

5    law claims pursuant to 28 U.S.C. §§ 1367 and 1332.  There are no issues pending regarding

6    personal jurisdiction or venue, and no parties remain to be served.

7    **2.  FACTS**

8           **EPIC'S STATEMENT**:  This case is about Google and Samsung's long-standing

9    business relationship, including their most recent effort to thwart the jury verdict in the *Epic v.*

10   *Google* case.  Google and Samsung are able to achieve their anti-competitive goals because

11   Google has a monopoly in the market for Third-Party Smartphone Operating Systems,[1] which is

12   the market comprising smartphone operating systems ("OSs") that original equipment

13   manufacturers ("OEMs") can license for installation on smart mobile devices they manufacture,

14   such as mobile phones and cellular-enabled tablets.  Google's Android operating system

15   ("Android") is the only commercially viable option that is available for OEMs to license.

16          Google has used its monopoly in the Third-Party Smartphone Operating Systems

17   to unlawfully maintain monopolies and restrain trade in a related market:  the Android App

18   Distribution Market, which is the market for the distribution of mobile applications ("apps") to

19   users of Android devices.  Google has a monopoly in the Android App Distribution Market

20   through the Google Play Store ("Google Play"), which is Google's app store.  As a result of its

21   monopoly power, Google Play is how more than 80% of all Android apps globally (excluding

22   China) and more than 95% in the United States are downloaded and installed.

23          Google has maintained its illegal monopoly through a web of anticompetitive

24   agreements and technical impediments and frictions.  First, Google has entered into agreements

25

26   _____

27   [1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Complaint.  (Dkt. 1.)

28

with OEMs that ensure Google Play is installed on the home screen of every Android device, most often on an exclusive basis, giving Google Play a significant advantage over other app stores.  In addition, Google has designed Android to allow users to download and install apps from Google Play easily and with minimal steps.  By contrast, Google has made it extremely difficult for users to download apps from any alternative app store, or to download directly from a developer's website.  Specifically, Google has embedded scare screens that make the process complex, confusing and intimidating, in order to deter users from completing the download and installation process for apps downloaded from alternative app stores or the web.

    To ensure that no competition gets through these barriers, Google has also launched an array of projects to pay off competitors and prevent other stores from getting a foothold in the market.  One of its partners in this scheme has been Samsung, the world's largest Android smartphone maker.  Given its stature, Samsung is positioned to challenge Google's dominance in app distribution.  But instead of fierce competition, Samsung has chosen loyal cooperation.  Samsung has formed an exceptionally close relationship with Google, which includes Google paying Samsung billions of dollars.  In return, Samsung has touted Google Play and largely maintained its own Galaxy Store as an insignificant alternative to Google Play.  This long-standing relationship between Google and Samsung, including concerted action such as agreements not to compete, has had anticompetitive effects in the Android App Distribution Market for years.[2]

    In December 2023, a jury found that Google violated Sections 1 and 2 of the Sherman Act and the Cartwright Act, and the Court stated its intent to issue remedies opening up the Android App Distribution Market.  In anticipation of this relief, on August 16, 2024, Epic

---

[2] Google and Samsung fault Epic for not yet having internal documents evidencing Google and Samsung's agreement.  But the Complaint sets forth ample evidence that Google and Samsung agreed to put Auto Blocker on by default, including Google and Samsung's prior agreements, their longstanding cooperation, Samsung's failure to compete with the Google Play Store and the timing of Auto Blocker's roll out.  The fact that, without the benefit of discovery, Epic does not have internal documents evidencing an agreement regarding Auto Blocker is therefore irrelevant.

launched its app store, called the Epic Games Store, on Android.  While remedy proceedings were ongoing, however, Samsung, in coordination with Google, announced a new competition-suppressing update to its devices.  The update changed a previously non-default setting, called "Auto Blocker," to be enabled on Samsung devices as the default setting.  This means that the status quo stymies competition:  Auto Blocker intercepts and halts all user attempts to download and install Android apps from any source other than Google Play and the Galaxy Store.  If a user actually attempts to turn off Auto Blocker—which requires them to navigate through the device's settings menu (as Samsung admits)—they are told that Auto Blocker is a "security" feature; this scare tactic will lead many users to abandon any attempt to download the app or app store.

If Auto Blocker remains the default setting on Samsung phones, it would materially frustrate the remedies this Court has imposed on Google in the *Epic v. Google* litigation and impede any nascent competition in the Android App Distribution Market. Samsung sells more Android smartphones than any other smartphone manufacturer.  Purchases on Samsung devices account for more than half of the total revenue Google collects from in-app sales made within Android apps.  The effect of Auto Blocker is to substantially foreclose third-party app stores, such as the Epic Games Store, from the relevant market and from reaching a sizable audience on Android.[3]

To prevent this and other concerted action and anticompetitive behaviors between Google and Samsung, Epic promptly filed its Complaint on September 30, 2024.  Samsung and Google's actions also give rise to other causes of action, including claims under the California Unfair Competition Law and common law trade libel and commercial disparagement.

---

[3] Samsung argues that the anticompetitive effects of Auto Blocker are diminished because it is only on by default on new phones.  But, as the Complaint alleges, Samsung's plan is to implement Auto Blocker by default on all phones—the fact that it has not yet done so is of no moment.

Epic anticipates that the following factual issues, among others, will be disputed: (a) whether Google and Samsung have engaged in the above-described anticompetitive conduct in the Android App Distribution Market, including acting in concert to maintain Google's illegal monopoly; and (b) the effects of Google and Samsung's conduct on competing app distributors, developers, and users.[4]

**SAMSUNG'S[5] STATEMENT**:  As Epic's statement demonstrates, its long-running antitrust dispute is with Google; not Samsung.  Google supposedly has monopoly power.  Google allegedly imposed anticompetitive agreements for years.  Google is the one that lost a recent verdict in a separate suit filed by Epic (which is on appeal).  Epic provides no basis for its unsupported claims against Samsung.   In fact, Epic does not even mention Samsung until nearly halfway through its recitation of the case.  That alone tells much.

The broader problem is that this case makes little sense and in fact demonstrates why Samsung is essentially an afterthought to Epic's campaign against Google.  The crux of Epic's allegations is that Samsung supposedly colluded with Google to pre-emptively neuter this Court's injunctive remedies in *Epic v. Google* and that Samsung seemingly did so to maintain *Google*'s alleged monopoly power, despite Epic's concession that Samsung is Google's biggest rival in the alleged relevant market.  For this supposed collusion, Epic alleges Samsung got absolutely nothing out of the deal—no payment, no special relationship, no consideration of any kind.  Samsung thus allegedly conspired to harm its own competitive position at a point where it knew this Court was about to issue an injunction that would greatly benefit Samsung, and all for nothing in return.  It makes no economic sense.

---

[4] As discussed above, in December 2023, after a 15-day trial, a jury found that Google violated Sections 1 and 2 of the Sherman Act and the Cartwright Act.  *See Epic v. Google*, Jury Verdict (Dkt. 606).  That verdict establishes many of the issues Epic would need to prove here, and Epic reserves all rights with respect to asserting issue preclusion.

[5] "Samsung" includes both Defendant Samsung Electronics America, Inc. and Defendant Samsung Electronics Co., Ltd.

Moreover, the mechanism by which Samsung supposedly colluded with Google to harm its own competitive position is convoluted in the extreme, and immunized under the antitrust laws, in any event. Epic alleges Samsung colluded with Google by introducing a July 2024 update to a security feature on Samsung phones called "Auto Blocker." Among other things,[6] that update turned Auto Blocker "on" by default only for *new* Samsung phones. For all other Samsung phones—the *vast* majority currently in circulation—Auto Blocker remains "off" by default and can only be turned on voluntarily by the phone's user. Epic does not and cannot dispute that Auto Blocker is a Samsung feature, programmed and designed by Samsung for Samsung products,    to be used by Samsung consumers, and that the decision to turn it on by default on new Samsung phones was Samsung's.

Notably, Epic does not allege that Auto Blocker's mere existence is anticompetitive. If Samsung phone users turn it on by themselves (as they have had the option to do since October 2023), Epic is fine with that. Epic never explains why, if Samsung has colluded with Google to help Google, Samsung's sole method of collusion only applies to a sliver of Samsung phones. Nor does it explain why Samsung has made turning Auto Blocker "off" so easy. For affected phones, during the phone's initial setup wizard (i.e., the electronic device setup process that all users must complete before using the device), users are prompted with the option to turn it off from the very start. If a user chooses to keep it on, they can turn it off at any time in the phone's settings. And if a user is actually affected by Auto Blocker—*e.g.*, by trying to install an app from a source other than Galaxy or Play stores—the pop-up screen they see explicitly explains how the user can turn off the feature using a simple and intuitive process (which involves navigating to a top-level menu in the phone's Settings and then going to the appropriate submenu).

---

[6] The Complaint recognizes that the July 2024 update to Auto Blocker contained other security improvements, e.g., blocking commands from USB cables or software updates by USB cable (both of which can be used surreptitiously to install malware), and blocking malware installation from images or links in messaging apps. *See* Compl. ¶91 n.3.

As part of Epic's public relations tour commenced the day it filed the Complaint, Epic's CEO, Tim Sweeney, admitted that "he doesn't yet have proof that Google and Samsung colluded — he's hoping that comes out in the legal discovery process." Sean Hollister, "Epic is suing Google — again — and now Samsung, too," *The Verge* (Sep. 30, 2024), *available at* https://tinyurl.com/mr3awf5c. Indeed, Epic has all but admitted the same in its Complaint, conceding that Samsung *rejected* Google's alleged repeated requests to not compete and "get out of the [app] store business." Compl. ¶5. As Epic admits, "Google entered into [Revenue Sharing Agreements] with most major OEMs where it paid each OEM a portion of Play Store revenue in exchange for store exclusivity on the OEM's smartphones." *Id*. ¶51. The *one* notable exception is Samsung, which Epic concedes "pre-installs [Samsung's competing] Galaxy Store on virtually all Samsung devices." *Id*. ¶39.

In short, Epic admits Samsung has consistently competed with Google and that Epic has no actual evidence of collusion here—which is critical in a case that hinges entirely on a supposed conspiracy between Samsung and Google. Notwithstanding those concessions, Epic nonetheless alleges Samsung committed an about face for no gain at all at the exact moment this Court was about to issue injunctive relief that would benefit Samsung more than any other current or prospective competitor. This is not only implausible; it is untrue.

There are a host of other fatal flaws to Epic's baseless lawsuit, as will be set forth in Samsung's forthcoming motion to dismiss.

Factual issues, among others, exist regarding: whether Samsung colluded with Google as alleged in the Complaint; Epic's alleged relevant antitrust markets; and the factual bases for Epic's trade libel claims.

**GOOGLE'S STATEMENT**: Epic's entire case is predicated upon the unsupported allegation that Google and Samsung conspired to change Samsung's Auto Blocker feature from default off to default on. As counsel for Epic stated in the parties' Rule 26(f) conference on December 17, 2024, that is the "core issue" in this case. It is the only illegal agreement alleged in the Complaint, and the only anticompetitive conduct that forms the basis of

all of Plaintiff's claims against Google. But it is untrue, and also, unsupported–a fact

acknowledged by Epic's CEO when he stated, on the date Plaintiff filed the Complaint, that Epic

"doesn't yet have proof that Google and Samsung colluded" and that "he's hoping that comes

out in the legal discovery process."[7]

Epic's dissatisfaction with Samsung's independent security actions is not a basis

for suing Google.  Indeed, it appears that Google has been brought into *this* case only to

bootstrap Samsung's conduct in a highly-competitive industry into an alleged antitrust violation

against Google.  But there is no evidence to support the allegation of an agreement.  To the

extent Epic's principal dispute is with Google, the place to litigate those issues is not here, but is

currently ongoing in the Ninth Circuit, on appeal from *Epic Games, Inc.* v. *Google LLC et al.*,

Case No. 3:20-cv-05671-JD (N.D. Cal.).

As Epic's Complaint acknowledges, Auto Blocker is a security feature created by

Samsung, implemented by Samsung using its own proprietary user interface, and announced and

launched by Samsung.   As Google's forthcoming motion to dismiss will explain, Epic's claims

against Google must be dismissed because there are no plausible and factual allegations of

coordination or an agreement.  Google does not fault Epic for not having internal documents; it

faults Epic for not offering any support for its allegations beyond mere speculation and

conclusory statements.  Google never entered into an agreement with Samsung regarding

Samsung's decision to change Auto Blocker to "default on."  And most certainly, there was no

agreement "to circumvent the injunction that the United States District Court for the Northern

District of California will likely soon issue in *Epic v. Google*," Compl. ¶ 101, an allegation that

is as untrue and irresponsible as it is conclusory and unsupported.

Nor can Epic manufacture a new lawsuit against Google because it is unhappy

that other industry players are taking steps to compete on security and build features to protect its

---

[7] Sean Hollister, *Epic is suing Google – again – and now Samsung, too*, The Verge (Sept. 30, 2024), *available at* https://tinyurl.com/mr3awf5c.

customers from security and privacy risks.  *See* Google's Objections to Epic's Proposed

Injunction, *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.), ECF

No. 656 at 41-42 (May 2, 2024).

Thus, the other allegations in Plaintiff's Complaint, and Plaintiff's own recitation

of its case in this Statement–both having nothing to do with this "core issue" in the case–are

merely attempts to bolster Epic's speculative claims with issues in dispute in a different

litigation.  Those issues should continue to be litigated where they belong and only where they

belong–in the Ninth Circuit.

Google anticipates that the following factual issues, among others, will be

disputed: whether there is any evidence of an agreement between Samsung and Google to turn

Auto Blocker on by default in order to allegedly circumvent an injunction from *Epic Games, Inc.*

v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.) or to effectuate a group boycott of

independent app store developers.

**3.   LEGAL ISSUES**

**EPIC'S STATEMENT**:  At this time, Epic anticipates that the following issues

will be disputed:

- Whether Google and Samsung's conduct as alleged in the Complaint violates Section 1
  or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  (*See* Compl. at Counts 1, 2, and 3 and ¶¶
  132-153.)

- Whether Google and Samsung's conduct as alleged in the Complaint violates California's
  Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., and Unfair Competition Law,
  Cal. Bus. & Prof. Code §§ 17200, et seq.  (See Compl. at Counts 4-6 ¶¶ 154-173.)

- Whether Samsung's conduct as alleged in the Complaint violates California tort law,
  which prohibits intentional disparagement of the quality of property that results in
  pecuniary damage.  *See*, *e.g.*, *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.
  4th 277, 290, (2014).

**SAMSUNG'S STATEMENT**:  Samsung agrees with the legal issues identified by Epic and Google.

**GOOGLE'S STATEMENT**: At this time, Google believes the following legal issues will be disputed:

- Whether Google reached any agreement with Samsung to turn Auto Blocker on by default, in violation of Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2;

- Whether Defendant Samsung's decision to turn its Auto Blocker feature to "default on" has produced or will produce any anticompetitive effects in any relevant antitrust market(s), in violation of Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

- Whether Google participated in any unlawful group boycott against independent app store distributors in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether Google's alleged conduct violates California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*,

- Whether Google's alleged conduct violates California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

## 4. MOTIONS

There are no pending motions.  Samsung and Google intend to move to dismiss this Action.  The Parties have agreed to a briefing schedule for the anticipated motion to dismiss, set forth below and in Exhibits A and B.

## 5. AMENDMENT OF PLEADINGS

At this time, Epic does not anticipate seeking any amendments to its Complaint but reserves the right to do so in response to a dispositive motion or responsive pleading by Samsung and Google.

## 6. EVIDENCE PRESERVATION

**EPIC'S STATEMENT**: Epic certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, that it discussed evidence

preservation at the Parties' meet and confer on December 17, 2024, and certifies that it has taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**SAMSUNG'S STATEMENT**:  Samsung certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, that it discussed evidence preservation at the Parties' meet and confer on December 17, 2024, and certifies that it has taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**GOOGLE'S STATEMENT**:  Google certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, that it discussed evidence preservation at the Parties' meet and confer on December 17, 2024, and certifies that it has taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**7. DISCLOSURES**

The Parties have agreed to serve initial disclosures on January 13, 2025.

**8. DISCOVERY**

**A. Discovery Propounded to Date**

No discovery has been propounded as part of this litigation to date.

**EPIC'S STATEMENT**: Epic's position is that discovery should commence in earnest as soon as initial disclosures are served on January 13, 2025.  Given the proof presented in the *Epic v. Google* trial and the jury verdict rendered in that matter, Epic's claims are more than sufficiently credible to warrant proceeding with discovery prior to resolution of the forthcoming motions to dismiss.

Samsung's proposal for a stay of discovery pending its forthcoming motion to dismiss would be inappropriate in this case.  As this Court has made clear, "except in extraordinary circumstances," it will not stay discovery pending a motion to dismiss.  (*See* 10.08.2020 Hearing Tr. 11:15-17 (3:20-cv-05671-JD; Dkt. 69).)  Those circumstances do not

exist here.  Epic's Complaint provides more than enough plausible bases to believe that Samsung and Google acted in concert with respect to Auto Blocker and that Samsung has acted violation of California's Unfair Competition law and California common law.  A stay of discovery would only delay this case and prevent Epic from obtaining the relief it is seeking.

**SAMSUNG'S STATEMENT**: Mindful that the Court only stays discovery pending dispositive motions to dismiss in extraordinary circumstances, Samsung respectfully submits that such circumstances exist here.  As noted above, the crux of this action is that Samsung—at a time when it, the largest competitor to Google in the alleged relevant market, stands to gain most—colluded with Google to roll-out Auto Blocker as a default feature in order to harm Samsung's competitive position for no gain whatsoever and despite a long history of rejecting Google's alleged requests to not compete against Google.  Moreover, on the day Epic filed the Complaint, Epic's CEO admitted publicly that "he doesn't yet have proof that Google and Samsung colluded — he's hoping that comes out in the legal discovery process."  Sean Hollister, "Epic is suing Google — again — and now Samsung, too," *The Verge* (Sep. 30, 2024) https://tinyurl.com/mr3awf5c.  Given the multiple case dispositive problems with Epic's Complaint, as well as Epic's concessions that it has no plausible basis to believe Samsung and Google actually conspired here, Samsung respectfully intends to move this Court to stay discovery pending resolution of Samsung's forthcoming motion to dismiss.

**GOOGLE'S STATEMENT**: Google does not intend to move to stay discovery pending resolution of its Motion to Dismiss but believes that the case should remain on the same schedule for all Parties.   Accordingly, if the Court grants Samsung's forthcoming motion to stay discovery, the stay should apply to the whole case.  Google further believes that the result of *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.) has little, if any, bearing on whether discovery should commence, where the core issue, as acknowledged by Plaintiff, is simply whether there was an alleged agreement between Samsung and Google to turn Auto Blocker on by default.

**B.  Scope of Anticipated Discovery**

**EPIC'S STATEMENT**: At this time, Epic expects to seek documentary and testimonial discovery from Samsung and Google regarding, among other things:  (1) Samsung and Google's business relationship; (2) Samsung's decision to launch Auto Blocker and to make it on by default; (3) communications between Samsung and Google regarding Auto Blocker; (4) Samsung's and Google's business practices with respect to other app stores besides the Samsung Galaxy Store and Google Play; (5) Google's policies, practices, and pricing for Google Play; (6) Samsung's policies, practices, and pricing for the Samsung Galaxy Store; (7) historical and projected revenues, costs, and profitability for Google Play and the Samsung Galaxy Store; (8) methods of downloading apps or app stores outside of Google Play and the Samsung Galaxy Store, including the additional steps and warnings consumers encounter on Android devices when they download an app directly from a developer or from an alternative store; (9) the relevant markets described in the Complaint and Samsung and Google's power in those markets, including any barriers to entry; (10) the effects of Google's and Samsung's policies and practices on competition, innovation, app distributors, app developers, and consumers; (11) any purported procompetitive justifications for Google's and Samsung's conduct; (12) Epic or its products, including Google's and Samsung's actual or contemplated response to the introduction of Epic's app store.  Epic notes that the bifurcated discovery proposed by Defendants would unnecessarily prolong the discovery process in this case, making unrealistic the timeline proposed by the Defendants below.  Moreover, Epic has brought multiple claims against Samsung that do not require *any* agreement, as both Samsung and Google admit in their statement of the legal issues above.  These include claims of unfair practices in violation of California's Unfair Competition Law as well as trade libel and commercial disparagement in violation of California common law. (*See* Compl. at Counts 6-7 ¶¶ 167-178.)  Therefore, "fact discovery first focusing on . . . whether there is evidence of an agreement between Samsung and Google to turn Auto Blocker on by default" is not appropriate here.  Epic further notes that the scope and burden of discovery could be materially diminished through the adoption in this case of findings made in *Epic v. Google*.

Epic also intends to seek documentary and testimonial discovery from non-parties.

**SAMSUNG'S STATEMENT**:  As noted above, Samsung believes it is proper to stay discovery pending its motion to dismiss, given the many problems with the Complaint. Nevertheless, Epic overstates the scope of discovery even if the Court permits the Complaint to survive in full.  For example, Samsung and Google's entire business relationship is not at issue except as it relates to the relevant markets or Auto Blocker, and it is unclear why Samsung's policies, practices, and pricing for the Samsung Galaxy Store or its historical and projected revenues, costs, and profitability for the Samsung Galaxy Store are proportional to the needs of this case.  Moreover, Samsung does not believe discovery prior to 2024 is appropriate considering that under the Complaint, Samsung did not develop or implement Auto Blocker until October 2023, and the alleged conspiracy did not begin until July 2024.  The only relevant discovery predating 2024 is that Samsung implemented Auto Blocker in 2023 and the supposed "false statements" underlying Epic's trade disparagement and "unfair practices" UCL claim (which invokes trade disparagement as its predicate act) began at that time.  But such discovery is relevant only insofar as it shows widespread dissemination of those statements and that Epic alleges no harm from them.  Samsung will, of course, meet and confer with Epic as warranted and when appropriate in relation to these issues.

Samsung agrees that the topics identified by Google are properly within the scope of discovery, and Samsung may also seek documentary and testimonial discovery from non-parties.

Samsung agrees with Google's proposal to a bifurcated discovery schedule.

**GOOGLE'S STATEMENT**: Google proposes that discovery in this case should proceed in a bifurcated manner, with fact discovery first focusing on the only new allegations in this Complaint: whether there is evidence of an agreement between Samsung and Google to turn Auto Blocker on by default.  Without any evidence of an agreement between Samsung and Google as to the change in the default setting of that feature, none of Plaintiff's claims against

Google can survive–as an agreement is an essential element of Plaintiff's Section 1 and Section 2 conspiracy claims.  It would therefore be inefficient and a waste of the parties' and judicial resources to engage in full-scale discovery about other aspects of Plaintiff's antitrust claims, which overlap with *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.) and the topics of substantial discovery in that case, including by Samsung as a non-party in that proceeding.   Indeed, the majority of topics on which Epic intends to seek discovery in this case are near-verbatim repeats of the topics on which Epic sought discovery in the that proceeding.  *See* Case No. 3:20-cv-05671-JDA.

Google proposes that the parties meet and confer after approximately 6 months of fact discovery that is focused substantially on Auto Blocker regarding (a) what further discovery the parties contend they need to support their claims or defenses in this case; (b) the reproduction of relevant documents from *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.); (c) the refresh of any productions from *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.); and (d) appropriate use, if any, of depositions from *Epic Games, Inc.* v. *Google LLC et al.*, Case No. 3:20-cv-05671-JD (N.D. Cal.) in this case.  At the same time as the parties confer regarding what, if any, additional discovery is needed, Google proposes that Defendants be permitted to file a partial summary judgment motion on the "core issue" in this case pertaining to the existence of an agreement between Samsung and Google.  Defendants' proposed case schedule, Exhibit B, accounts for this proposal.  Epic's position that Defendants' proposed case schedule would "prolong the discovery process in this case" has it exactly backwards: by prioritizing what even Epic identified as the "core issue" in this case, Defendants' proposed schedule is the more efficient manner for discovery to proceed. Moreover, Epic does not dispute that, absent an agreement, it has no claims against Google, which further supports focusing the Parties' initial discovery on the existence of such an agreement.

To the extent that this litigation continues into discovery, Google anticipates seeking documentary and testimonial discovery from Epic regarding, among other things:  (1)

Epic's security policies, practices, and procedures, including with respect to its app store; (2) Epic's knowledge, awareness, or recognition of security and privacy risks associated with direct downloads or independent app stores; (3) Epic's internal and external communications regarding Samsung's Auto Blocker feature; (4) Epic's internal and external communications regarding its apps being made available in the Samsung Galaxy Store or in other app stores; (5) Epic's agreements with other OEMs; (6) Epic's knowledge, or lack thereof, of any alleged agreement between or among Defendant(s) and/or other third parties; (7) the facts known to Epic at the time that it filed this Complaint, including any outreach made to Defendants and any indication of possible pre-suit relief that may have been requested during any such outreach; (8) the effects of the purported agreement alleged in the Complaint.  Google may also seek documentary and testimonial discovery from non-parties.

**C.  Report on Planned Stipulated E-Discovery Order**

The Parties have agreed to use the Stipulated Electronically Stored Information filed in the *Epic v. Google* related case as a starting point for the Stipulated Electronically Stored Information (ESI) [Proposed] Order in this action.

**EPIC'S STATEMENT**: Epic proposes to file a Stipulated Electronically Stored Information (ESI) [Proposed] Order, based heavily on the stipulation adopted in *Epic v. Google*, by January 31, 2025.

**SAMSUNG'S STATEMENT**:  Samsung will work expeditiously and in good faith to reach agreement on a Stipulated Electronically Stored Information (ESI) [Proposed] Order, but does not agree that a specific deadline by which to file that Proposed Order is necessary.

**GOOGLE'S STATEMENT**:  Google will work expeditiously and in good faith to reach agreement on a Stipulated Electronically Stored Information (ESI) [Proposed] Order, but does not agree that a specific deadline by which to file that Proposed Order is necessary.

**D.  Proposed Discovery Plan.**

**<u>EPIC'S STATEMENT</u>**:  Epic's proposal regarding the timing of discovery is set forth in Exhibit A.  Defendants' alternative is entirely unrealistic, especially when considering Defendants' request for bifurcated discovery.  Indeed, Defendants' schedule currently proposes "partial" summary judgment briefing to commence on October 17, 2025—only two weeks after the substantial completion of document production, leaving no meaningful time for fact depositions, and *before* all expert discovery.  That is hardly surprising: a realistic schedule that provides for bifurcated discovery and partial summary judgment briefing will be much longer than the schedule proposed by Defendants, likely taking the Parties well into 2027 before trial.

**<u>DEFENDANTS' STATEMENT</u>:**  Samsung and Google's proposal regarding the timing of discovery is set forth in Exhibit B.  While Defendants contend a substantial completion deadline is unnecessary, should the Court impose one, it should apply to the first phase of fact discovery only (with ample time for the parties to conduct fact depositions).  Any additional discovery or substantial completion deadlines should be negotiated as part of the meet and confer that Defendants propose.  Moreover, expert discovery is not necessary for the Court's determination of whether any material fact is in dispute regarding the existence of an agreement.

**E.  Current Discovery Disputes**

To date, the Parties have not identified any discovery disputes.

**9.  CLASS ACTIONS**

There is no proposed class at issue in this matter.

**10. RELATED CASES**

This Court has one related case in this litigation, *Epic Games, Inc. v. Google LLC*, 20-cv-05671-JD.  *See* Related Case Order, Dkt. 19. (Oct. 1, 2024).  At this time, the Parties are not aware of other related cases.

**11. RELIEF**

**<u>EPIC'S STATEMENT</u>**: Epic seeks all appropriate injunctive and equitable relief, including that the Court:  (1) enter judgment in favor of Epic and against Samsung and

Google; (2) issue an injunction prohibiting Google's and Samsung's anti-competitive and unfair conduct and mandating that Samsung take all necessary steps to cease such conduct and to restore competition; (3) award a declaration that Google's and Samsung's anticompetitive conduct is unlawful and unenforceable; (4) award as monetary relief, compensatory, consequential, and punitive, (including treble) damages to Epic, as well as attorneys' fees and costs; (5) award any other equitable relief necessary to prevent and remedy Google's and Samsung's anticompetitive conduct; and (6) grant such other and further relief as the Court deems just and proper.  (*See* Compl., Prayer for Relief.)

**SAMSUNG'S STATEMENT**: Epic is not entitled to any relief.

**GOOGLE'S STATEMENT**: Epic is not entitled to any relief.

## 12.  SETTLEMENT AND ADR

The Parties have met and conferred regarding ADR and determined that ADR would not assist in resolving the dispute at this time.  Epic filed its ADR Certification form on December 19, 2024.  (Dkt. 42.)  Samsung filed its ADR Certification form on December 23, 2024.  (Dkt. 44.) Google filed its ADR Certification form on December 20, 2024.  (Dkt. 43.)

**EPIC'S STATEMENT**:  Google claims it cannot cause Samsung to reverse course on its default application of Auto Blocker.  While Epic doubts that, it is against this backdrop that Epic made clear to Google that there is no alternative relief Google could provide that would resolve the case.

**GOOGLE'S STATEMENT**: Google notes that in the parties' Rule 26(f) conference on December 17, 2024, Google asked Epic what relief, if any, it sought against Google to resolve the case.  Epic indicated that it did not have any demands to Google to resolve the case, and there is <u>nothing</u> that Google can currently do that would resolve the case.

## 13. OTHER REFERENCES

The Parties agree this case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict litigation.

**14. NARROWING OF ISSUES**

**EPIC'S STATEMENT**: At this stage, Epic does not seek bifurcation of any issues.  Epic believes it is too early to identify potential ways to expedite the presentation of evidence at trial, or otherwise narrow the case, except through the adoption in this case of certain findings made in *Epic v. Google*, either by agreement of the Parties and/or through motion practice on preclusion.  As discussed above, Epic believes that Samsung and Google's proposal to bifurcate discovery is not appropriate, would be prejudicial to Epic and would cause unnecessary delay in this case.

**SAMSUNG'S STATEMENT**:  Samsung agrees with Google's proposal to bifurcate discovery and agrees that without any evidence of an agreement between Samsung and Google as to the change in the default setting of Auto Blocker, none of Plaintiff's antitrust-based claims, which are the gravamen of the Complaint, can survive.  Epic's only remaining claims (assuming they have not been dismissed) would relate to trade libel, which would entail a different scope of discovery as compared to its antitrust-based claims.  This warrants bifurcation.

**GOOGLE'S STATEMENT**:  Hours before this filing, Epic claimed that it believes the issues can be narrowed through the adoption in this case of certain findings made in *Epic* v. *Google*, potentially by way of motion practice on issue preclusion. Google will discuss any proposal from Plaintiff in good faith, but at this time intends to oppose any request for issue preclusion.

As explained in Section 8(b) above, Google proposes that discovery in this case should proceed in a bifurcated manner, with fact discovery first focusing on the new allegations in this Complaint related to Auto Blocker and in particular, whether there is evidence of an agreement between Samsung and Google to turn Auto Blocker on by default. Without any evidence of an agreement between Samsung and Google as to the change in the default setting of that feature, none of Plaintiff's claims against Google can survive.

As reflected in the proposed case schedule in Exhibit B, Google submits that Defendants should be permitted to file a partial summary judgment motion on the core issue of

whether an agreement between Samsung and Google exists.  At the same time as the parties brief that motion, Google proposes that, with respect to "non-core" issues for discovery, the parties meet and confer as set forth in Section 8.B, above.

**15. EXPEDITED TRIAL PROCEDURE**

The Parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

**16. SCHEDULING**

Epic's scheduling proposal is set forth in Exhibit A.

Samsung and Google's scheduling proposal is set forth in Exhibit B.

**17. TRIAL**

Epic has demanded a jury trial.  At this time, before any discovery has taken place, the Parties are unable to estimate the length of trial.

**18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

**EPIC'S STATEMENT**:  Pursuant to Civil Local Rule 3-15, Epic filed its Certification of Interested Entities or Persons (Dkt. No. 2), which discloses that as of the date of filing, it has no parent corporation and that Tencent Holdings Limited indirectly owns more than 10% of Epic's stock, and that, other than the named parties, Tencent Holdings Limited, and Timothy Sweeney, there is no other person, firm, partnership, corporation, or other entity known by Epic to have either:  (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**SAMSUNG'S STATEMENT**: Pursuant to Civil Local Rule 3-15, Samsung filed its Certification of Interested Entities or Persons (Dkt. No. 39), which discloses as of the date of filing that Defendant Samsung Electronics America, Inc. ("SEA") is a wholly-owned subsidiary of Defendant Samsung Electronics Co., Ltd. ("SEC"), that no other publicly held corporation owns 10% or more of SEA's stock, and that SEC has no parent corporation and no publicly held corporation owns 10% or more of SEC's stock.

**GOOGLE'S STATEMENT**: Pursuant to Civil L.R. 3-15, Google filed its Certification of Interested Entities and Persons on November 15, 2024 (ECF No. 33), which discloses that, as of the date of filing, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

 1. Google LLC

 2. XXVI Holdings Inc., Holding Company of Google LLC

 3. Alphabet Inc., Holding Company of XXVI Holdings Inc.

**19. PROFESSIONAL CONDUCT**

 All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated:

| | |
|---|---|
| */s/ Yonatan Even*<br>Shaneeda Jaffer (SBN 253449)<br>sjaffer@beneschlaw.com<br>Lily A. North (CA 260709)<br>lnorth@beneschlaw.com<br>BENESCH FRIEDLANDER COPLAN &<br>ARONOFF LLP<br>100 Pine Street, Suite 3100<br>San Francisco, California<br>Telephone: (628) 600-2250<br>Facsimile: (628) 221-5828 | */s/ Victoria F. Maroulis*<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>Victoria F. Maroulis (SBN 202603)<br>victoriamaroulis@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>Telephone: (650) 801-5000 |

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

Adam B. Wolfson (SBN 262125)
adamwolfson@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Debra D. Bernstein (*pro hac vice forthcoming*)
debrabernstein@quinnemanuel.com
1200 Abernathy Road NE, Building 600,
Suite 1500
Atlanta, Georgia 30328
Telephone: (404) 482-3502

*Counsel for Samsung Electronics Co., Ltd.
and Samsung Electronics America, Inc.*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

*/s/ Jeannie S. Rhee*
Jeannie S. Rhee (*pro hac vice*)
jrhee@paulweiss.com
Karen L. Dunn (*pro hac vice forthcoming*)
kdunn@paulweiss.com
Jessica E. Phillips (*pro hac vice*)
jphillips@paulweiss.com
Martha L. Goodman (*pro hac vice*)
mgoodman@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420

Meredith R. Dearborn (SBN 268312)
535 Mission Street, 24th Floor
San Francisco, California
Telephone: (202) 223-7323
Facsimile (202) 330-5908
mdearborn@paulweiss.com

*Counsel for Google LLC*

**E-FILING ATTESTATION**

       I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                   */s/ Yonatan Even*

                                   Yonatan Even

CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____          _____
                                        UNITED STATES DISTRICT/MAGISTRATE JUDGE

**Exhibit A: Epic's Proposed Discovery Plan and Schedule**

| Event | Deadline |
|---|---|
| Joint Case Management Statement | Thursday January 9, 2025 |
| Serve Rule 26(1)(1) Initial Disclosures and Start of Fact Discovery | Monday January 13, 2025 |
| Initial Case Management Conference | Thursday January 16, 2025 |
| Motion to Dismiss Opening Brief | Tuesday January 21, 2025 |
| File Stipulated [Proposed] Protective Order | Friday January 31, 2025 |
| File Stipulated [Proposed] ESI Order | Friday January 31, 2025 |
| Motion to Dismiss Opposition Brief | Tuesday February 18, 2025 |
| File Stipulated [Proposed] Expert Order | Thursday February 20, 2025 |
| Motion to Dismiss Reply Brief | Tuesday March 11, 2025 |
| (Substantial or Full) Completion of Document/Data Production | Tuesday July 1, 2025 |
| Close of Fact Discovery | Monday November 3, 2025 |
| Opening Expert Reports | Thursday January 8, 2026 |
| Rebuttal Expert Reports | Friday, February 20, 2026 |
| Expert Discovery Cutoff | Friday March 13, 2026 |
| Dispositive Motions | Monday March 23, 2026 |
| Pretrial Meet and Confer | Tuesday April 21, 2026 (30 days before pretrial filings are due) |
| Motions *in limine* and trial Exhibits Exchanged | Tuesday May 5, 2026 (at least 14 days before pretrial filings are due) |
| Oppositions to Motions *in limine* | Friday May 15, 2026 (at least 4 days before pretrial filings are due) |
| Joint Pretrial Conference Statement, Proposed Jury Instructions and Verdict Forms, Joint Witness and Exhibit Lists, Motions *in limine* and Trial Briefs | Thursday May 21, 2026 (per Judge Donato's rules, 14 days before final pretrial conference) |
| Pretrial Conference and Hearing on Dispositive Motions | Thursday May 4, 2026 at 1:30 PM (per Judge Donato's rules, a Thursday 19 days before the start of trial) |
| Proposed Order on Trial Stipulations, and Witness and Exhibit Lists | Thursday, June 11, 2026 |
| Trial Start | Monday June 22, 2026 |

## EXHIBIT B: DEFENDANTS' PROPOSED CASE SCHEDULE

| Event | Defendants' Proposed Deadline |
|---|---|
| Joint Case Management Statement | Thursday January 9, 2025 |
| Serve Rule 26(1)(1) Initial Disclosures | Monday January 13, 2025 |
| Initial Case Management Conference | Thursday January 16, 2025 |
| Motion to Dismiss Opening Brief | Tuesday January 21, 2025 |
| Motion to Dismiss Opposition Brief | Tuesday February 18, 2025 |
| Motion to Dismiss Reply Brief | Tuesday March 11, 2025 |
| Motion to Dismiss Hearing | Thursday, April 3, 2025 |
| Substantial Completion of Document/Data Production (First Phase)[8] | N/A, or Tuesday, July 1, 2025 |
| Opening Brief on Partial Motion for Summary Judgment on Existence of Agreement | Friday, October 17, 2025 |
| Opposition Brief on Partial Motion for Summary Judgment on Existence of Agreement | Friday, November 14, 2025 |
| Reply Brief on Partial Motion for Summary Judgment on Existence of Agreement | Friday, December 5, 2025 |
| Hearing on Partial Motion for Summary Judgment | Wednesday, December 17, 2025 |
| Expert Disclosures (identity and topics for Opening Experts) | Friday, December 19, 2025 |
| Close of Fact Discovery | Friday, January 30, 2026 |
| Opening Expert Report | Wednesday, February 4, 2026 |
| Responsive Expert Reports | Friday, March 13, 2026 |
| Close of Expert Discovery | Tuesday, March 31, 2026 |
| Dispositive Motion and Daubert Opening Briefs | Friday, April 17, 2026 |
| Dispositive Motion and Daubert Opposition Briefs | Friday, May 8, 2026 |
| Pretrial Meet and Confer | Wednesday, May 20, 2026 (30 days before pretrial filings due) |
| Dispositive Motion and Daubert Reply Briefs | Friday, May 22, 2026 |
| Dispositive Motion Hearing (and Expert Hot Tub, if the Court requests) | Thursday, June 4, 2026 |
| Serve Motions *in limine* and Trial Exhibits | Wednesday, June 10, 2026 (at least 14 days before pretrial filings due) |
| Oppositions to Motions *in limine* | Monday, June 22, 2026 |
| Pretrial Filings | Friday, June 24, 2026 |
| Final Pretrial Conference | Wednesday, July 8, 2026 |
| Proposed Order on Trial Stipulations and Witness & Exhibit Lists | Thursday, July 16, 2026 |

---

[8] Defendants do not agree that a Substantial Completion discovery cut-off should be included in a Scheduling Order at this juncture, but if the Court is inclined to include a date, two dates are necessary: one for the first phase of discovery and another for the second phase, the latter of which need not be set until after the parties' meet and confer on the scope of such phase.

| Trial Start | Monday, July 27, 2026 |