Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
kdunn@paulweiss.com
jphillips@paulweiss.com
mgoodman@paulweiss.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California
Telephone: (202) 223-7323
Facsimile: (202) 330-5908
mdearborn@paulweiss.com

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> *Plaintiff*, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO. LTD; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC, <br><br> *Defendants*. | Case No. 3:24-cv-06843-JD <br><br> **DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: April 3, 2025 <br> Time: 10:00 a.m. <br> Dept.: Courtroom 11, 19th Floor <br> Judge: Hon. James Donato |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on April 3, 2025, at 10:00 a.m., or as soon as the matter may be heard, before the Honorable James Donato of the United States District Court, Northern District of California at Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA, Defendant Google LLC will and hereby does move to dismiss Plaintiff Epic Games, Inc.'s Complaint (Dkt. 1) as to Google under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. This motion is based upon this notice of motion, the supporting memorandum of points and authorities, and such evidence as may be requested or permitted by the Court.

## RELIEF SOUGHT

Google respectfully requests an order dismissing Plaintiff Epic Games, Inc.'s Complaint (Dkt. 1) as to Google for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: January 21, 2025

Respectfully submitted,

*/s/ Jeannie S. Rhee*
Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
kdunn@paulweiss.com
jphillips@paulweiss.com
mgoodman@paulweiss.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California
Telephone: (202) 223-7323
Facsimile: (202) 330-5908

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

mdearborn@paulweiss.com

*Counsel for Defendant Google LLC*

GOOGLE'S MOTION TO DISMISS EPIC'S COMPLAINT IN CASE NO. 3:24-cv-06843-JD

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

PLAINTIFF'S ALLEGATIONS ........................................................................................1

LEGAL STANDARD ..........................................................................................................3

ARGUMENT ........................................................................................................................3

I.      The Conspiracy Claim Should Be Dismissed for Failure to Allege an
        Agreement. ..............................................................................................................3

        A.      The Complaint Fails to Plead Direct Evidence of an Agreement. ...........4

        B.      The Complaint Fails to Plead Circumstantial Evidence of an
                Agreement. ....................................................................................................5

                1.      The Complaint Fails to Plead Circumstantial Evidence of
                        Google's Participation in a Conspiracy. ......................................5

                2.      The Complaint Fails to Plead Parallel Conduct. ........................6

                3.      The Complaint Fails to Plead Cognizable Plus Factors. ............7

II.     The Group Boycott Claim Should Be Dismissed. .............................................12

III.    The Conspiracy to Monopolize Claim Should Be Dismissed. .........................13

IV.     The State-Law Claims Should Be Dismissed. ...................................................14

CONCLUSION ...................................................................................................................15

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)....................................................................................................................3

6

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999)........................................................................................................7

7

8

*Bay Area Surgical Mgmt. LLC* v. *Aetna Life Ins. Co.*,
    166 F. Supp. 3d 988 (N.D. Cal. 2015) ......................................................................................12

9

10

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)............................................................................................................3, 4, 7

11

12

*Blomkest Fertilizer, Inc.* v. *Potash Corp. of Saskatchewan*,
    203 F.3d 1028 (8th Cir. 2000) ..................................................................................................10

13

*Bona Fide Conglomerate, Inc.* v. *SourceAmerica*,
    691 F. App'x 389 (9th Cir. 2017) ...............................................................................................6

14

15

*Burtch* v. *Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011)........................................................................................................4

16

*Cal. Crane School, Inc.* v. *Google LLC*,
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) ...............................................................................4, 13

17

18

*Chavez* v. *Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) .....................................................................................................14

19

20

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ..............................................................................................4, 10

21

*City of Oakland* v. *Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) ...............................................................................................12, 13

22

23

*County of Tuolumne* v. *Sonora Community Hosp.*,
    236 F.3d 1148 (9th Cir. 2001) ..............................................................................................4, 14

24

*Credit Bureau Servs., Inc.* v. *Experian Info. Solutions, Inc.*,
    2013 WL 3337676 (C.D. Cal. June 28, 2013) .......................................................................4, 5

25

26

*D'Augusta* v. *Am. Petrol Inst.*,
    117 F.4th 1094 (9th Cir. 2024) .......................................................................................3, 4, 8, 13

27

*Davis* v. *HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ..................................................................................................14

28

*Doe* v. *CVS Pharmacy, Inc.*,
   982 F.3d 1024 (9th Cir. 2020) ...................................................................................14

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust*
   *Litig.*,
   28 F.4th 42 (9th Cir. 2022) ............................................................................. *passim*

*Flaa* v. *Hollywood Foreign Press Ass'n*,
   55 F.4th 680 (9th Cir. 2022) ................................................................................12, 13

*Gamm* v. *Sanderson Farms, Inc.*,
   944 F.3d 455 (2d Cir. 2019).......................................................................................10

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .....................................................................................1

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................................6

*Great Escape, Inc.* v. *Union City Body Co., Inc.*,
   791 F.2d 532 (7th Cir. 1986) .....................................................................................14

*In re High-Tech Employee Antitrust Litigation*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) .....................................................................14

*Hinds Cty., Miss.* v. *Wachovia Bank N.A.*,
   790 F. Supp. 2d 106 (S.D.N.Y. 2011)........................................................................11

*Hobart-Mayfield, Inc.* v. *Nat'l Operating Comm. on Standards for Athletic*
   *Equip.*,
   48 F.4th 656 (6th Cir. 2022) ...................................................................................8, 10

*HomeLight, Inc.* v. *Shkipin*,
   694 F. Supp. 3d 1242 (N.D. Cal. 2023) .....................................................................14

*Honey Bum, LLC* v. *Fashion Nova, Inc.*,
   63 F.4th 813 (9th Cir. 2023) ...............................................................................10, 12

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).........................................................................................4

*Jones* v. *Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) .....................................................................6, 9

*Kendall* v. *Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .................................................................................3, 4

*Khoja* v. *Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................2

*In re Late Fee & Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ...................................................................................10

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ............................................................................... *passim*

*Name.Space, Inc.* v. *Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) .........................................................................................6, 8

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) ........................................................................................13

*NorthBay Healthcare Grp.-Hosp. Div.* v. *Blue Shield of Cal. Life & Health Ins.*,
   342 F. Supp. 3d 980 (N.D. Cal. 2018) .............................................................................14

*Nova Designs, Inc.* v. *Scuba Retailers Ass'n*,
   202 F.3d 1088 (9th Cir. 2000) ........................................................................................14

*In re Optical Disk Drive Antitrust Litig.*,
   2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...................................................................11

*Orchard Supply Hardware LLC* v. *Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ...........................................................................14

*Oxbow Carbon & Minerals LLC* v. *Union Pac. R. Co.*,
   926 F. Supp. 2d 36 (D.D.C. 2013) ....................................................................................4

*Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) .........................................................................................6, 7

*In re Pool Prods. Dist Market Antitrust Litig.*,
   988 F. Supp. 2d 696 (E.D. La. 2013) .................................................................................6

*Porcayo* v. *Corrections Corp. of Am.*,
   2008 WL 11449074 (D. Ariz. Mar. 25, 2008) ...................................................................2

*In re Processed Egg Prods. Antitrust Litig.*,
   821 F. Supp. 2d 709 (E.D. Pa. 2011) .................................................................................5

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .............................................................................11

*In re Treasury Securities Auction Antitrust Litig.*,
   595 F. Supp. 3d 22 (S.D.N.Y. 2022) .................................................................................4

*Uhr* v. *Responsible Hosp. Inst., Inc.*,
   2011 WL 4091866 (D. Minn. Sept. 14, 2011),
   *aff'd*, 473 F. App'x 517 (8th Cir. 2012) ...........................................................................6

GOOGLE'S MOTION TO DISMISS EPIC'S COMPLAINT IN CASE NO. 3:24-cv-06843-JD

*Willow Creek Fuels, Inc.* v. *Farm & Home Oil Co.*,
    2009 WL 3103738 (E.D. Pa. Sept. 18, 2009) ............................................................................6

**Other Authorities**

Philip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law: An Analysis of Antitrust Principles and Their Application*
    (2d ed. 2003) ............................................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................3

Samsung Newsroom U.S., *Protect Your Device Your Way with Samsung Auto
    Blocker* (Oct. 31, 2023), https://news.samsung.com/us/protect-device-your-
    way-samsung-auto-blocker/ ....................................................................................2, 8

Samsung, *Protect Your Galaxy Device with the Auto Blocker Feature* (July 11,
    2024), https://www.samsung.com/latin_en/support/mobile-devices/protect-
    your-galaxy-device-with-the-new-auto-blocker-feature/ ........................................2

GOOGLE'S MOTION TO DISMISS EPIC'S COMPLAINT IN CASE NO. 3:24-cv-06843-JD

1

**INTRODUCTION**

In July 2024, Samsung updated a feature called Auto Blocker, which it first announced in October 2023 "as an enhanced security option" for users, to be on by default in new Samsung phones.  ¶¶ 90-91.[1]  As alleged in the complaint, this security feature was implemented by Samsung on Samsung's proprietary user interface layer, announced by Samsung, launched by Samsung, and set to default on by Samsung.  ¶¶ 90-91.  Plaintiff alleges Samsung's decision was the result of an agreement with Google.  Yet there are no allegations regarding the formation (e.g., who, when, or where) or operation (e.g., the terms of what Samsung would receive in exchange) of such an agreement.  Nor is there any allegation that Google undertook *any* act related to Auto Blocker.  At the pleading stage and assuming the truth of Plaintiff's allegations, Plaintiff still bears the burden to plead facts that are "largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015).  It has not done so.  Plaintiff's allegations are more consistent with Samsung's unilateral, rational business decision to promote the security of its products than with an illegal conspiracy with Google.  The complaint as to Google must be dismissed.

**STATEMENT OF ISSUES TO BE DECIDED**

Should Plaintiff's claims against Google be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim?

**PLAINTIFF'S ALLEGATIONS[2]**

Samsung's Auto Blocker is a feature built into Samsung's "proprietary user interface layer, which Samsung installs on top of Android."  ¶ 90.  Auto Blocker "disables the installation of apps from any and all sources other than" the Google Play Store and the Samsung Galaxy Store.  ¶ 92.  Samsung first announced Auto Blocker on October 31, 2023, as "an enhanced security option" users could enable, ¶ 90, explaining that Auto Blocker can prevent "social

---

[1] All citations by paragraph number are to Plaintiff's Complaint, Dkt. 1.

[2] Google acknowledges that the Court must take Plaintiff's allegations as true, but need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

engineering attacks" where "attackers could talk users into installing malicious software."[3]

On July 11, 2024, Samsung announced that, on its newest phones, Auto Blocker would be on by default. ¶ 91. Both before and after July 2024, a Samsung user has always been free to decide whether to use Auto Blocker. ¶ 96. Samsung's July 2024 announcement explained how to turn Auto Blocker off,[4] and Auto Blocker itself presents users with instructions for how to disable the feature, ¶ 93.

Plaintiff asserts that Samsung turned Auto Blocker on by default because it had entered into an agreement with Google to "circumvent the injunction" this Court would "likely soon issue in *Epic* v. *Google*," ¶ 101, and to "build[] a moat around the incumbent monopolist, Play Store," ¶ 103.

Plaintiff's primary support for its allegation is a recitation of trial evidence from *Epic* v. *Google* concerning Google and Samsung's relationship. That evidence does not pertain to Auto Blocker and involves conduct from four or more years before Samsung turned Auto Blocker on by default. ¶¶ 60, 106, 112-113.

In addition, according to Plaintiff, Samsung's July 2024 announcement occurred "just as the District Court in *Epic* v. *Google* announced its intent to enjoin Google." ¶ 110. The Court did not conclude hearing from the parties on Epic's proposed injunction until August 14, 2024. *Epic* v. *Google*, No. 3:20-cv-5671, ECF No. 690.[5] At the time Plaintiff filed this complaint, the Court had yet to issue a final injunction. ¶ 82.

According to Plaintiff, Samsung's July 2024 announcement also occurred "just as Epic and Microsoft announced their intent to launch their own competing Android app stores."

---

[3] Samsung Newsroom U.S., *Protect Your Device Your Way with Samsung Auto Blocker* (Oct. 31, 2023),                     https://news.samsung.com/us/protect-device-your-way-samsung-auto-blocker/ (hereinafter "Samsung Announcement"). This announcement is incorporated by reference into, and relied upon in, Plaintiff's complaint, *e.g.* ¶¶ 90 n.2, 97 n.4, and can therefore be considered at the pleadings stage. *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).
[4] Samsung, *Protect Your Galaxy Device with the Auto Blocker Feature* (July 11, 2024), https://www.samsung.com/latin_en/support/mobile-devices/protect-your-galaxy-device-with-the-new-auto-blocker-feature/. This announcement is also incorporated by reference into, and relied upon in, Plaintiff's complaint, *e.g.* ¶ 91 n.3, and can therefore be considered at the pleadings stage. *Khoja*, 899 F.3d at 1002.
[5] The Court may take judicial notice of the docket and dates of entries on the docket "because they are matters of public record and not subject to reasonable dispute." *Porcayo* v. *Corrections Corp. of Am.*, 2008 WL 11449074, at *2 (D. Ariz. Mar. 25, 2008).

¶ 111.  Microsoft first announced its intent to launch an Android app store in March 2023, ¶ 89, and Epic launched its app store on August 16, 2024, ¶ 11.

Plaintiff brings five claims against Google based upon the only alleged anticompetitive conduct in this case—the purported agreement between Google and Samsung that Samsung would turn Auto Blocker on by default: two Sherman Act Section 1 claims, ¶¶ 132-143; a Section 2 claim for conspiracy to monopolize, ¶¶ 144-153; a California Cartwright Act claim, ¶¶ 154-160; and a California Unfair Competition Law ("UCL") claim, ¶¶ 161-166.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully"; it requires the facts pleaded to push the asserted claim across "the line between possibility and plausibility of entitlement to relief." *Id*.

## ARGUMENT

### I.    The Conspiracy Claim Should Be Dismissed for Failure to Allege an Agreement.

The Court should dismiss Plaintiff's Section 1 conspiracy claim (Count 1) because Plaintiff fails to plead sufficient evidence—either direct or circumstantial—plausibly suggesting that Samsung's decision to turn Auto Blocker on by default on certain Samsung devices was the result of an agreement between Google and Samsung.  To state a Section 1 conspiracy claim, a plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made" among the conspirators. *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556-57 (2007).  The complaint must answer the basic questions such as "who, did what, to whom (or with whom), where, and when?" *Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  A plaintiff has two ways to plead a claim: it can plead facts that are "direct evidence of a conspiracy that requires no further inference," or "circumstantial evidence . . . suggesting a conspiracy." *D'Augusta* v. *Am. Petrol Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (internal quotation marks and citation

omitted).  Either way, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove . . . a contract, combination or conspiracy."  *Kendall*, 518 F.3d at 1047; *Twombly*, 550 U.S. at 566.  Plaintiff has not done so.

### A.    The Complaint Fails to Plead Direct Evidence of an Agreement.

In the Ninth Circuit, "[d]irect evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted."  *County of Tuolumne* v. *Sonora Community Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999).  Plaintiff's complaint lacks any direct evidence of an agreement between Google and Samsung relating to Auto Blocker.

Plaintiff makes no allegation of direct evidence showing the time, place, persons involved in, circumstances surrounding, or terms of the purported agreement.  Allegations of a "document or conversation explicitly manifesting the existence of the agreement in question" would constitute direct evidence, but Plaintiff alleges no such facts here.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324 n.23 (3d Cir. 2010).  Courts dismiss such complaints that fail to allege "the form those agreements took, who executed them, or when and where they were enacted" for lack of direct evidence.  *Credit Bureau Servs., Inc.* v. *Experian Info. Solutions, Inc.*, 2013 WL 3337676, at *8 (C.D. Cal. June 28, 2013); s*ee also Burch* v. *Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (no allegations specifying "a time or place that any actual agreement" occurred or "any particular individuals" involved); *Cal. Crane School, Inc.* v. *Google LLC*, 722 F. Supp. 3d 1026, 1038 (N.D. Cal. 2024); *In re Treasury Securities Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 43-44 (S.D.N.Y. 2022); *Oxbow Carbon & Minerals LLC* v. *Union Pac. R. Co.*, 926 F. Supp. 2d 36, 47 (D.D.C. 2013).

Nor is it sufficient that Plaintiff simply invoked the words "agreement" or "coordinated decision."  *See Twombly*, 550 U.S. at 564 ("A few stray statements speak[ing] directly of agreement . . . are merely legal conclusions.").  For example, the Ninth Circuit affirmed dismissal of bare, "conclusory allegations" that closely resemble Plaintiff's: that defendants "agreed [among themselves] to take any surplus oil off the market, cut their production, and substantially reduce their investment in exploration and production."  *D'Augusta*, 117 F.4th at 1103-04.  By failing to

make anything more than conclusory allegations that an agreement existed, Plaintiff has therefore failed to plead direct evidence of an agreement.

### B. The Complaint Fails to Plead Circumstantial Evidence of an Agreement.

Absent direct evidence of a conspiracy, a "higher standard" applies. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022). A plaintiff must plead additional, nonconclusory facts to place the alleged conduct "in a context that raises a suggestion of a preceding agreement." *Musical Instruments*, 798 F.3d at 1194. Plaintiff fails to allege such circumstantial evidence. The complaint lacks any factual allegations suggesting that Google took any action related to Auto Blocker at all or took any step that could be considered "active participation" in the alleged conspiracy. Nor does the complaint adequately allege parallel conduct or any cognizable plus factors plausibly suggesting the alleged agreement.

### 1. The Complaint Fails to Plead Circumstantial Evidence of Google's Participation in a Conspiracy.

Courts dismiss Section 1 claims where the complaint does not plead facts suggesting that a defendant actively participated in the alleged conspiracy. In *Credit Bureau Services*, the court dismissed the complaint where plaintiff alleged that defendants Experian and CoreLogic acted in concert to eliminate CoreLogic's rivals, but plaintiff's complaint "contain[ed] almost no factual allegations related to actions taken or statements made by CoreLogic [and] most of the allegations pertain[ed] to unilateral conduct by Experian." 2013 WL 3337676 at *6; *see also In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 723 (E.D. Pa. 2011) (requiring specific allegations as to each individual defendant's involvement because "active participation" is "key in inferring agreement to the conspiracy and potential liability").

Here, Plaintiff implicates Google in a conspiracy without pleading that Google undertook *any* act related to Auto Blocker, let alone any act plausibly supporting Google's active participation in a conspiracy. ¶ 101. The complaint suggests the opposite, conceding that it was Samsung that created, launched, and turned Auto Blocker on by default. ¶¶ 90-100. Plaintiff's allegations relating to Google's conduct pertain only to historical conduct predating the existence of Auto

Blocker.  ¶¶ 60-79.  Samsung's unilateral conduct is not a basis from which to infer Google's participation in a conspiracy.  *Name.Space, Inc.* v. *Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015) (no inference of an agreement with outside interests "simply because the system [defendants] adopted made it difficult for [a plaintiff] to carry out its business plans").  Plaintiff asks the Court to make the extraordinary inference that Google participated in a conspiracy concerning a Samsung feature without conduct *by Google* related to that feature.

### 2.    The Complaint Fails to Plead Parallel Conduct.

A plaintiff may plead parallel conduct to show conspirators' participation in a conspiracy.  *Musical Instruments*, 798 F.3d at 1193; *see also In re Pool Prods. Distrib. Market Antitrust Litig.*, 988 F. Supp. 2d 696, 719 (E.D. La. 2013) (parallel conduct allegations "are one of the most important components of a valid Section 1 complaint").  Some courts have stated that "parallel conduct . . . must be adequately pled in order to state a claim," and these courts dismiss Section 1 claims without analyzing the sufficiency of any "plus factors" if a complaint does not adequately plead parallel conduct.  *Jones* v. *Micron Tech. Inc.*, 400 F. Supp. 3d 897, 915 n.10 (N.D. Cal. 2019); *see also Bona Fide Conglomerate, Inc.* v. *SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017); *Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (dismissing for failure to plead parallel conduct and finding "no discussion of any 'plus factors' is necessary").

Here, Plaintiff does not allege that Google and Samsung engaged in any parallel conduct or that Google undertook similar acts in parallel with Samsung.  *See In Re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (granting dismissal in part after finding allegations of parallel conduct "not so convincing" where defendants released products several months apart from each other); *Uhr* v. *Responsible Hosp. Inst., Inc.*, 2011 WL 4091866, at *9 (D. Minn. Sept. 14, 2011), *aff'd*, 473 F. App'x 517 (8th Cir. 2012) (plaintiff "has not even alleged parallel conduct, which makes his conspiracy allegation even weaker than that found insufficient in *Twombly*"); *Willow Creek Fuels, Inc.* v. *Farm & Home Oil Co.*, 2009 WL 3103738, at *4 (E.D. Pa. Sept. 18, 2009) (dismissing claim against some defendants where plaintiff "does

not even allege parallel conduct"). Again, the complaint is devoid of any allegation that Google undertook acts related, or parallel, to Auto Blocker.

Nor is Auto Blocker's "close resemblance" to Google's Unknown Sources install flow evidence of parallel conduct. ¶¶ 64, 106. The Unknown Sources install flow has existed "for well over a decade," while Auto Blocker was turned on by default in July 2024. ¶¶ 64, 91. This does not plead parallel conduct, which must be undertaken "around the same time in response to similar market conditions." *Musical Instruments*, 798 F.3d at 1193; *see also id.* at 1195-96 (parallel conduct "over a period of several years . . . does not raise the specter of collusion"); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 131-32 (3d Cir. 1999) (changes six months apart "refute rather than support" conspiracy); *Park Irmat Drug Corp.*, 911 F.3d at 516-17 (same).

### 3. The Complaint Fails to Plead Cognizable Plus Factors.

Courts also dismiss Section 1 claims where, as here, the complaint does not contain valid plus factor allegations—that is, factual allegations of "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Musical Instruments*, 798 F.3d at 1194, 1198; *DRAM*, 28 F.4th at 54 (same); *Twombly*, 550 U.S. at 564-70. As the Supreme Court has emphasized, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.

To assess whether a plaintiff's alleged plus factors are sufficient, the Ninth Circuit first analyzes each purported plus factor in isolation. *Musical Instruments*, 798 F.3d at 1194-98 (considering each factor "in turn"). It assesses whether each is "largely inconsistent with unilateral conduct" and therefore a proper plus factor, or is merely consistent with coordination and therefore not a cognizable plus factor. *Id.* at 1194-98. Allegations that do not constitute valid plus factors cannot be aggregated to state a Section 1 claim. *DRAM*, 28 F.4th at 53-54 (dismissing complaint and not aggregating individual facts that each did not suggest a conspiracy); *Musical Instruments*, 798 F.3d at 1198. Last, "a single plausible plus factor allegation that weakly tips in the plaintiffs' favor" is not enough "to open the floodgates to discovery in antitrust cases." *DRAM*, 28 F.4th at

53-54.  None of the allegations in the complaint are valid plus factors sufficient to plausibly suggest that Samsung's Auto Blocker decision arose from an agreement.

**Allegations Samsung Acted Against Its Independent Business Interest.**  Plaintiff alleges that "the design of Auto Blocker . . . shows it is the product of coordinated action" because it authorizes installation only from the Play and Galaxy Stores.  ¶¶ 102-103.  Yet Plaintiff's complaint and incorporated documents offer another obvious, economically rational, and unilateral explanation for Samsung's default-on design of Auto Blocker: security.  *See* ¶¶ 90, 104; *Name.Space*, 795 F.3d at 1130 ("courts must consider obvious alternative explanations for a defendant's behavior when analyzing plausibility"); *D'Augusta*, 117 F.4th at 1104-05 (same).  By preventing installation from unauthorized sources, Auto Blocker helps stall "social engineering attacks" such as voice phishing attacks.  *See supra* pp. 1-2; Samsung Mot. to Dismiss, Dkt. 49, at 4.  Samsung's own interest "in the credibility and safety of [its] products," *Hobart-Mayfield, Inc.* v. *Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 667 (6th Cir. 2022), can "just as easily suggest rational, legal business behavior by" a defendant as it "could suggest an illegal conspiracy" and is thus "insufficient to plead" a Section 1 violation, *Musical Instruments*, 798 F.3d at 1194; *see also Hobart-Mayfield*, 48 F.4th at 667 (dismissing claim where defendant's actions were more plausibly motivated by safety concerns).

Plaintiff also claims that turning Auto Blocker on by default was "an abrupt departure from prior conduct" for Samsung, but that too is not a valid plus factor.  ¶ 114.  As alleged in the complaint, Samsung's decision was more consistent with its prior unilateral conduct than with coordinated agreement.  Samsung has not departed from a "prior position of 15 years to allow direct downloading on all Samsung devices."  ¶ 114.  As alleged in the complaint, Samsung users remain able to turn Auto Blocker off and perform direct downloads if they choose.  ¶ 96.  They are prompted how to do so by the Auto Blocker pop-up.  ¶ 93.  In addition, Samsung's original October 2023 announcement recognized that the Auto Blocker default setting must balance any user interest in "intentional sideloading" against "security and privacy."  *See* Samsung Announcement, *supra* n.3.  Samsung's decision less than a year later about how to weigh those factors with respect to phones operating its newest user interface is not inconsistent with unilateral

conduct.  Plaintiff's "speculation" and conclusory assertion that Samsung's decision was instead the product of an agreement with Google is "not enough to move Plaintiff['s] theory of preceding agreement from conceivable to plausible."  *DRAM*, 28 F.4th at 51-52 (dismissing complaint where defendants' "alleged change in conduct . . . is also consistent with conscious parallelism").  As a court in this District has observed, "deviation from past behavior is a poor plus factor" precisely because it "merely relabels" the core allegation that the defendant engaged in some affirmative conduct consistent with a conspiracy.  *Jones*, 400 F. Supp. 3d at 920.

Nor was Samsung's decision to implement Auto Blocker by default "irrational" or inconsistent with Samsung's own interest, as Plaintiff claims.  ¶¶ 115-117.  Plaintiff does not explain why the default-on setting was *against* Samsung's interest.  It alleges only that other choices, including not having an Auto Blocker feature at all, could conceivably have made Samsung even more money.  ¶ 117.  That allegation comes nowhere close to the kind of "extreme action against self-interest contemplated by this circuit as a plus factor."  *DRAM*, 28 F.4th at 50 (internal quotation marks and citation omitted).  It is far more plausible and "economically rational" for Samsung to wish to improve its own products by enhancing the security features of its phones to be the default for its users.  *Id.*  "Without some further factual allegations to suggest a preceding agreement, this purported plus factor" therefore "does not plausibly support a conspiracy claim."  *Id.*

**Timing of Samsung's Decision.**  Plaintiff alleges that "the timing of the changes to the Auto Blocker feature" is evidence of a preceding agreement because Samsung's July 2024 announcement occurred "just as the District Court in *Epic* v. *Google* announced its intent to enjoin Google" and competitors announced their intention to launch competing app stores.  ¶¶ 107, 110-111.  But Samsung first created and launched Auto Blocker before the jury returned a verdict in *Epic* v. *Google*.  ¶¶ 6, 90.  And Samsung's July 2024 announcement that Auto Blocker would be on by default was 16 months after Microsoft had announced its intent to launch an Android app store.  *Supra* pp. 2-3.  Nor does Plaintiff offer any explanation for how Samsung's July 2024 announcement was motivated by events that had not yet transpired, such as Epic's launch of its own app store or continued argument in *Epic* v. *Google* regarding Epic's proposed

injunction. *Supra* pp. 2-3. In any event, courts have warned against inferring collusion from timing allegations because those inferences are "victim to the classic logical fallacy *post hoc ergo proctor hoc* (after this, therefore because of this)." *Hobart-Mayfield*, 48 F.4th at 667.

**Google and Samsung's Relationship.** Plaintiff alleges that "Samsung and Google have engaged in a high number of atypical interfirm communications," which implies a conspiracy. ¶ 113. But Plaintiff makes no effort to allege the nature of any communications between Samsung and Google regarding Auto Blocker, or explain how they are "atypical." It is in no way suspicious or unusual for businesses in a vertical relationship to be in regular communication with one another. Indeed, Plaintiff's theory is contradicted by its own complaint, which repeatedly acknowledges that the two companies operate as partners because of the nature of the relationship between a smartphone OEM and OS developer. *See* ¶¶ 26-27, 42-43, 56, 69.

Even when firms are not expected or required to be in frequent communication due to the nature of their business relationship, merely alleging frequent contacts is not enough. Courts cannot simply "infer participation in the conspiracy from the opportunity to do so." *Citric Acid*, 191 F.3d at 1103; *see also Gamm* v. *Sanderson Farms, Inc.*, 944 F.3d 455, 466 (2d Cir. 2019). Here, none of the prior communications Plaintiff alleges bears any relation to Auto Blocker, *see* ¶¶ 69-89, and therefore all lack "the logical link necessary to infer" an agreement relating to Auto Blocker. *Blomkest Fertilizer, Inc.* v. *Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033-34 (8th Cir. 2000); *see Honey Bum, LLC* v. *Fashion Nova, Inc.*, 63 F.4th 813, 823-24 (9th Cir. 2023) (rejecting "generalized" allegations that "some fast-fashion vendors are 'close colleagues' and 'friends'"). And even assuming, as alleged, the existence of "a common motive to conspire," "'[m]otivation to enter a conspiracy is never enough' to show an agreement." *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) (quoting Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1411, at 68 (2d ed. 2003)); *see also Musical Instruments*, 798 F.3d at 1194-95 (alleging common motive "simply restates that a market is interdependent," which does not "entail collusion").

Plaintiff's alleged plus factors about Samsung's business decision and its timing, as well

as Samsung and Google's relationship, are thus more consistent with a rational independent business decision by Samsung about Auto Blocker than with a conspiracy.

Finally, Plaintiff makes allegations based on trial evidence from the separate *Epic* v. *Google* case, including relating to a 2020 revenue sharing agreement and Google's Project Banyan from 2019, ¶¶ 75-76. These allegations describe conduct unrelated to Auto Blocker, predating even the initial launch of Auto Blocker by more than three years. ¶¶ 60-82, 112. And, as a matter of law, allegations about past, unrelated conduct alone—that is, without any other valid plus factors as is the case here—cannot overcome the absence of allegations of circumstantial evidence supporting the presently alleged conspiracy. *In re Optical Disk Drive Antitrust Litig.*, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("other instances" in which defendants fixed prices were "provocative, but plaintiffs have not shown enough commonalities between those circumstances and the present case"); *Hinds Cty., Miss.* v. *Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 116 (S.D.N.Y. 2011) (rejecting reliance on conspiracy regarding unrelated transactions because "ascribing guilt based on association cannot nudge a plaintiff's claims across the line from conceivable to plausible"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (prior, unrelated guilty pleas "are not sufficient to support Plaintiffs' claims standing on their own"). Plaintiff must still meet its burden to plead sufficient direct or circumstantial facts of an agreement *in this case*—that Samsung and Google entered a conspiracy to turn Auto Blocker on by default "to circumvent the injunction that the United States District Court for the Northern District of California will likely soon issue in *Epic* v. *Google*," ¶ 101. Plaintiff has not done so.

*DRAM* is instructive. There, plaintiffs alleged that, between 2016 and 2018, dynamic random access memory manufacturers coordinated to restrict output. 28 F.4th at 45-46. Only one "plus factor" "weakly tip[ped] in the plaintiffs' favor": the same defendants' prior criminal convictions for price-fixing. *Id.* at 52-53. But the finding of a previous conspiracy—even one involving criminal convictions for "the same alleged coordination and actors"—could not state a claim on its own. *Id.* at 53-54. So too here: even if evidence presented at *Epic* v. *Google* concerning Google and Samsung's past conduct showed similar acts of coordination by the same

actors with a similar purpose (it does not), Plaintiff's plus factors still fail to plausibly suggest an agreement *about Auto Blocker*.

In sum, Plaintiff's allegations, viewed individually or holistically, *DRAM*, 28 F.4th at 53, do not suffice to plausibly suggest Google's participation in a conspiracy with Samsung about Auto Blocker.

## II.    The Group Boycott Claim Should Be Dismissed.

To plead a group boycott under the per se rule or the rule of reason, a plaintiff must plausibly allege "a concerted attempt by a group of competitors at one level to protect themselves from competition from non-group members who seek to compete at that level."  *Flaa* v. *Hollywood Foreign Press Ass'n*, 55 F.4th 680, 688-89, 694-95 (9th Cir. 2022); *Honey Bum*, 63 F.4th at 820 (under per se rule, plaintiff must allege that two or more firms agreed "not to deal with another firm" and that "the boycott's initiator had no purpose other than disadvantaging the target"); *Bay Area Surgical Mgmt. LLC* v. *Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 993 (N.D. Cal. 2015) (under the rule of reason, a plaintiff must allege sufficient facts that it was "the intention on the part of the co-conspirators to harm or restrain competition," and actual injury to competition).  Whether under the per se rule or rule of reason, Plaintiff's group boycott claim under Section 1 (Count 2) should be dismissed for failure to plausibly allege any agreement between Google and Samsung relating to Auto Blocker, and for failure to plead sufficient facts plausibly suggesting any agreement constituting a boycott.

First, a group boycott claim requires plausibly alleging that the defendants entered into an agreement to take collective action—here, an alleged boycott of "independent app store developers," ¶ 141.  *City of Oakland* v. *Oakland Raiders*, 20 F.4th 441, 453-54 (9th Cir. 2021); *Flaa*, 55 F.4th at 688-89; *Honey Bum*, 63 F.4th at 820 ("A group boycott . . . is an agreement among multiple firms not to deal with another firm . . . .").  As explained above, *supra* § I, Plaintiff's allegations do not plausibly suggest Auto Blocker's default-on status was the product of any agreement with Google, warranting dismissal.  *Oakland*, 20 F.4th at 453-54.

Second, Plaintiff's group boycott claim fails for the independent reason that Plaintiff does not allege conduct by Google that would actually constitute a "boycott."  Plaintiff does not allege

facts plausibly showing that Google itself took part in any "boycott" of "independent app store developers," or that Google refused to do business with any independent app store developer, as a result of an agreement with Samsung.  In *Oakland*, the Ninth Circuit affirmed dismissal of a group boycott claim that alleged that only one football team actually boycotted the city of Oakland, even where the complaint alleged other NFL teams supported the individual boycott.  *Oakland*, 20 F.4th at 453-54 ("Here, the other NFL teams simply supported the Raiders' refusal to deal with the City, but did not themselves refuse to do business with the City.").

Moreover, the complaint does not allege any independent app developer was "boycotted."  Here, turning Auto Blocker on by default does not constitute a "boycott" because the action did not "cut off access to a supply, facility, or market necessary to enable the boycotted firm [here, Plaintiff] to compete."  *Flaa*, 55 F.4th at 689.  Samsung users remain fully able to download apps from Plaintiff's app store, and Samsung provides users with instructions to do so.  ¶¶ 92-93, 96.

**III.    The Conspiracy to Monopolize Claim Should Be Dismissed.**

Plaintiff alleges that Samsung and Google conspired to maintain Google's monopoly in the Android App Distribution Market in violation of Section 2 by "changing Auto Blocker to on by default." ¶ 149.  To state a conspiracy to monopolize claim, a plaintiff must plead: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury."  *In re Nat'l Football League's Sunday Ticket Antitrust Litig.,* 933 F.3d 1136, 1159 (9th Cir. 2019).  Plaintiff's Section 2 claim (Count 3) should be dismissed for failure to plead at least two of the required elements.

First, Plaintiff's Section 2 conspiracy claim fails for the same reasons its Section 1 conspiracy claim fails.  "For a successful antitrust conspiracy claim under either Section 1 or Section 2 of the Sherman Act, a plaintiff must plead allegations plausibly suggesting (not merely consistent with) agreement."  *D'Augusta*, 117 F.4th at 1103-04; *see also Cal. Crane School*, 722 F. Supp. 3d at 1040 (dismissing Section 2 conspiracy claim "for largely the same reasons as its Section 1 claim," including failure to plead facts "sufficient to plausibly allege an agreement or

conspiracy"). As shown above, Plaintiff does not allege direct or circumstantial evidence plausibly suggesting a conspiracy.

Second, Plaintiff does not allege facts plausibly showing that Google possessed the "specific intent to monopolize—that is, the intent not merely to grow its business (potentially at competitors' expense), but to control prices or unreasonably destroy competition." *HomeLight, Inc.* v. *Shkipin*, 694 F. Supp. 3d 1242, 1253 (N.D. Cal. 2023); *see also Great Escape, Inc.* v. *Union City Body Co., Inc.*, 791 F.2d 532, 541 (7th Cir. 1986). Other than a recitation of the legal standard for specific intent, ¶ 150, Plaintiff alleges only that Google "is motivated to receive monopoly profits on its store," ¶ 118—i.e., another way of stating that Google is lawfully motivated "merely to grow its business." *HomeLight*, 694 F. Supp. 3d at 1253.

**IV.    The State-Law Claims Should Be Dismissed.**

Because Plaintiff fails to plead a Sherman Act claim, its Cartwright Act claim—based on the same factual allegations as its Sherman Act claims, ¶¶ 154-160—also fails. *In Re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103, 1114 (N.D. Cal. 2012) ("federal and state antitrust claims rise and fall together"); *Tuolumne*, 236 F.3d at 1160; *Nova Designs, Inc.* v. *Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000).

Plaintiff's UCL claim, based on the "unlawful" and "unfair" prongs, ¶¶ 161-166, should also be dismissed. Without a valid Sherman or Cartwright Act claim, Plaintiff does not allege "unlawful" conduct to support its unlawful prong claim. *Davis* v. *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168, 1171 (9th Cir. 2012).

Next, Plaintiff does not allege any facts plausibly showing what makes the conduct at issue "unfair," but instead restates the UCL's legal standard. *See Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020) (affirming dismissal of unfairness claim that did not "give proper notice of [the] claim and the grounds on which it lies"). To the extent Plaintiff alleges that the alleged conduct is unfair because it is "anti-competitive," ¶ 166, the unfairness prong claim fails just as the unlawful prong claim fails. *Orchard Supply Hardware LLC* v. *Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013); *see also Chavez* v. *Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001); *NorthBay Healthcare Grp.-Hosp. Div.* v. *Blue Shield of Cal, Life & Health Ins.*, 342

1  F. Supp. 3d 980, 989 (N.D. Cal. 2018) ("where the unfair business practices alleged under the

2  unfair prong of the UCL overlap entirely with the business practices addressed" in the unlawful

3  prong, "the unfair prong of the UCL cannot survive" if the other does not).

### CONCLUSION

5      For the foregoing reasons, Google respectfully requests the Court dismiss Plaintiff's claims

6  against Google.

7   Dated:  January 21, 2025                    Respectfully submitted,

8                                               */s/ Jeannie S. Rhee*
                                                Jeannie S. Rhee (*pro hac vice*)
9                                               Karen L. Dunn (*pro hac vice* pending)
                                                Jessica E. Phillips (*pro hac vice*)
10                                              Martha L. Goodman (*pro hac vice*)
                                                PAUL, WEISS, RIFKIND, WHARTON &
11                                              GARRISON LLP
                                                2001 K Street, NW
12                                              Washington, DC 20006-1047
                                                Telephone: (202) 223-7300
13                                              Facsimile: (202) 223-7420
                                                jrhee@paulweiss.com
14                                              kdunn@paulweiss.com
                                                jphillips@paulweiss.com
15                                              mgoodman@paulweiss.com

16                                              Meredith R. Dearborn (SBN 268312)
                                                PAUL, WEISS, RIFKIND, WHARTON &
17                                              GARRISON LLP
                                                535 Mission Street, 24th Floor
18                                              San Francisco, California
                                                Telephone: (202) 223-7323
19                                              Facsimile: (202) 330-5908
                                                mdearborn@paulweiss.com

20
21                                              *Counsel for Defendant Google LLC*
22
23
24
25
26
27
28