Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
kdunn@paulweiss.com
jphillips@paulweiss.com
mgoodman@paulweiss.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
mdearborn@paulweiss.com

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EPIC GAMES, INC.,

*Plaintiff*,

vs.

SAMSUNG ELECTRONICS CO. LTD; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC,

*Defendants*.

Case No. 3:24-cv-06843-JD

**REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THE COMPLAINT**

Date: April 3, 2025
Time: 10:00 a.m.
Dept.: Courtroom 11, 19th Floor
Judge: Hon. James Donato

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I. THE CONSPIRACY CLAIM SHOULD BE DISMISSED. ..................................... 1

A. Plaintiff Has Not Pled Any Factual Allegations Showing Google's Participation in a Conspiracy. ........................................................ 1

B. Plaintiff Has Not Pled Parallel Conduct Occurring "Around the Same Time." ........................................................................ 4

C. Plaintiff Has Not Alleged Cognizable Plus Factors. ..................................... 5

II. THE REMAINING CLAIMS AGAINST GOOGLE SHOULD BE DISMISSED. ........................................................................................ 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson News LLC* v. *Am. Media, Inc.*, 123 F. Supp. 3d 478 (S.D.N.Y. 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018) ....8

*Bay Area Surgical Mgmt. LLC* v. *Aetna Life Ins. Co.*, 166 F. Supp. 3d 988 (N.D. Cal. 2015) ....2

*Bona Fide Conglomerate, Inc.* v. *SourceAmerica*, 691 F. App'x 389 (9th Cir. 2017) ....4

*Burtch* v. *Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011)....6

*In re Calif. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031 (N.D. Cal. 2021) ....2

*Cason-Merenda* v. *Detroit Med. Ctr.*, 862 F. Supp. 2d 603 (E.D. Mich. 2012)....4

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ....6

*City of Long Beach* v. *Standard Oil Co. of Calif.*, 872 F.2d 1401 (9th Cir. 1989) ....7

*City of Oakland* v. *Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021) ....9

*City of Pontiac Police & Fire Ret. Sys.* v. *BNP Paribas Sec. Corp.*, 92 F.4th 381 (2d Cir. 2024) ....4

*Credit Bureau Servs., Inc.* v. *Experian Info. Sols., Inc.*, 2013 WL 3337676 (C.D. Cal. June 28, 2013) ....2

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 60 F. Supp. 3d 914 (N.D. Ill. 2014), *aff'd*, 801 F.3d 758 (7th Cir. 2015) ....8

*In re DRAM Indirect Purchaser Antitrust Litig. (DRAM)*, 28 F.4th 42 (9th Cir. 2022) .... *passim*

*Ferraro Family Foundation, Inc.* v. *Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735 (N.D. Cal. 2020) ....3

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....8, 9

*Flextronics Int'l USA, Inc.* v. *Panasonic Holdings Corp.*,
2023 WL 4677017 (9th Cir. July 21, 2023) ... 7

*In re German Automotive Mfrs. Antitrust Litig.*,
2021 WL 4958987 (9th Cir. Oct. 26, 2021) ... 2

*Gibson* v. *Cendyn Grp., LLC*,
2024 WL 2060260 (D. Nev. May 8, 2024) ... 5

*Husky* v. *City of San Jose*,
204 F.3d 893 (9th Cir. 2000) ... 7

*Jones* v. *Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) ... 7, 8

*Kendall* v. *Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ... 2

*Khoja* v. *Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ... 5

*Kleen Prods. LLC* v. *Int'l Paper*,
276 F. Supp. 3d 811 (N.D. Ill. 2017) ... 6

*Klor's, Inc.* v. *Broadway-Hale Stores, Inc.*,
359 U.S. 207 (1959) ... 9, 10

*Markson* v. *CRST Int'l, Inc.*,
2019 WL 6354400 (C.D. Cal. Mar. 7, 2019) ... 2

*Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ... 3

*In re Mexican Gvt. Bonds Antitrust Litig.*,
412 F. Supp. 3d 380 (S.D.N.Y. 2019) ... 2

*Moore* v. *Mars Petcare US, Inc.*,
820 F. App'x 573 (9th Cir. 2020) ... 7

*Moss* v. *U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ... 3

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ... 1, 4, 5, 6

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) ... 5

*Optronic Techs., Inc.* v. *Ningbo Sunny Elec. Co.*,
20 F.4th 466 (9th Cir. 2021) ... 8

*Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*,
911 F.3d 505 (8th Cir. 2018) ....................5

*PLS.com, LLC* v. *Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) ....................4

*Prosterman* v. *Am. Airlines, Inc.*,
747 Fed. App'x 458 (9th Cir. 2018) ....................8

*Schneider* v. *Calif. Dep't of Corrs.*,
151 F.3d 1194 (9th Cir. 1988) ....................3, 8

*SD3, LLC* v. *Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ....................7

*In re Suboxone Antitrust Litig.*,
636 F. Supp. 3d 539 (E.D. Pa. 2022) ....................7

*In re Sulfuric Acid Antitrust Litig.*,
743 F. Supp. 2d 827 (N.D. Ill. 2010) ....................7

*Tops Mkts., Inc.* v. *Quality Mkts., Inc.*,
142 F.3d 90 (2d Cir. 1998)....................10

*Williamson Oil Co., Inc.* v. *Philip Morris USA*,
346 F.3d 1287 (11th Cir. 2003) ....................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................3, 8

## INTRODUCTION

Plaintiff's core allegation underlying its claims in this case is that "the decision to turn Auto Blocker on by default was a coordinated decision by Google and Samsung to circumvent the injunction" in *Epic* v. *Google*. Compl. ¶ 101. According to Plaintiff, to plead that conspiracy it need not actually allege any additional details of the purported conspiracy, such as when this agreement took place, who from Google was allegedly involved, how the agreement was reached, or on what terms the agreement was made; it need not allege parallel conduct between Google and Samsung; and it need not even make a single factual allegation about Google's conduct during the relevant time period. But Plaintiff has cited no law holding that antitrust conspiracy pleading standards disappear whenever there are prior antitrust findings against a defendant. The law of this Circuit is the opposite. *In re DRAM Indirect Purchaser Antitrust Litig. (DRAM)*, 28 F.4th 42, 53-54 (9th Cir. 2022). Because Plaintiff has not pled factual allegations about the conspiracy it alleged in this case that are more consistent with an illegal agreement between Samsung and Google than with Samsung's unilateral, rational business decision, the complaint as to Google must be dismissed.

## ARGUMENT

### I. The Conspiracy Claim Should Be Dismissed.

Plaintiff concedes that it has not alleged direct evidence of an agreement and must therefore allege circumstantial evidence instead. *See* Opp. 8-9. Circumstantial evidence must show "a context that raises a suggestion of a preceding agreement." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015). The Complaint fails to meet this standard for three independent reasons.

#### A. Plaintiff Has Not Pled Any Factual Allegations Showing Google's Participation in a Conspiracy.

Plaintiff has not pled any circumstantial evidence suggesting that Google participated in the alleged agreement that Plaintiff agrees is the basis for its complaint: "an agreement between [Google and Samsung] to prevent competition through Auto Blocker, now that Google itself is about to be enjoined." Opp. 18; *see also* Compl. at 25 ("Google and Samsung have agreed to set

Auto Blocker to on by default."). Absent from the complaint is any specific factual allegation concerning Google's involvement in Samsung's decision-making regarding Auto Blocker, much less any allegations to satisfy the "who, did what, to whom (or with whom), where, and when?" standard required by the Ninth Circuit. *Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).[1] Of course, Plaintiff is not required to allege every detail of a conspiracy, but neither can Plaintiff proceed absent any factual boundaries.

Courts have dismissed complaints similarly lacking factual allegations that would suggest a defendant's involvement in the particular conspiracy alleged. *Credit Bureau Servs., Inc.* v. *Experian Info. Sols., Inc.*, 2013 WL 3337676, at *8 (C.D. Cal. June 28, 2013) ("does not allege whether there were one or multiple agreements, the form those agreements took, who executed them, or when or where they were enacted"); *In re Calif. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1049 (N.D. Cal. 2021) (finding "no alternative authority upholding . . . allegations against defendants whose participation was not described in terms of communications and/or meetings with other defendants"); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388-89 (S.D.N.Y. 2019). Plaintiff's citation to *Markson* v. *CRST Int'l, Inc.*, 2019 WL 6354400 (C.D. Cal. Mar. 7, 2019), demonstrates precisely the kinds of facts Plaintiff fails to allege about any agreement relating to Auto Blocker. There, plaintiffs alleged "specifics" of their asserted no-poach conspiracy that demonstrated defendants' involvement, including particular terms agreed to (the "did what"); communications used to convey the conspiracy, such as "letters to other trucking companies" (the "when" and "who"); and particular instances in which defendants refused to hire individual drivers pursuant to the conspiracy (the "to whom"). *Id.* at *3-4.

In response, Plaintiff urges that its complaint is nonetheless sufficient because the Court should infer Google's participation in a conspiracy relating to Auto Blocker based wholly on a search revenue-sharing agreement (RSA) between Google and Samsung from 2020. Opp. 17

---

[1] Plaintiff contends that *Kendall* and cases applying *Kendall* are inapposite because no fact discovery has occurred in this case, *see* Opp. 8 n.3, but the Ninth Circuit has applied *Kendall*'s standard in motion-to-dismiss cases lacking any fact discovery. *E.g.*, *In re German Automotive Mfrs. Antitrust Litig.*, 2021 WL 4958987, at *1 & n.1 (9th Cir. Oct. 26, 2021); *see also Bay Area Surgical Mgmt. LLC* v. *Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 995 n.2 (N.D. Cal. 2015).

(citing Compl. ¶¶ 78-79). But "courts are not required to make unreasonable inferences or unwarranted deductions of fact to save a complaint from a motion to dismiss." *Moss* v. *U.S. Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009) (dismissing claim lacking specific allegations tying the named defendants to the challenged conduct). For example, courts do not "accept a chain of inferences that are unmoored from particularized allegations that demonstrate their basis." *Ferraro Family Foundation, Inc.* v. *Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 758 (N.D. Cal. 2020). Even assuming (as is required on a motion to dismiss) the truth of Plaintiff's allegations about the 2020 RSA, Plaintiff has offered no specific facts to support the series of inferences required to infer a new, Auto Blocker-related agreement just from that past conduct.

First, Plaintiff offers no facts to support the inference that the existence of search revenues Samsung already negotiated and obtained a contractual right to in 2020 implies that Samsung received money in exchange for turning Auto Blocker on by default in 2024.[2] Nor does Plaintiff offer facts to support the attenuated inference that, based on Samsung's alleged passive commitment not to compete with Google, *see* Compl. ¶ 78 (alleging agreement not to lower prices or enter into exclusive deals for store content), four years later Samsung agreed to take an affirmative act to protect Google's monopoly by changing the default for Samsung's own security feature. That inference is particularly unwarranted because there is no allegation that Google and Samsung's conduct in 2020 had anything to do with sideloading, as Plaintiff alleges the Auto Blocker agreement does. *See* Compl. ¶¶ 78-79, 112, 117; Opp. 11-12 (2020 RSA related to alleged agreement to "not compete on store content" or "on pricing"). In short, Plaintiff asks the Court to infer that, because employees from Google and Samsung reached an allegedly anticompetitive agreement four years ago, Google and Samsung must have colluded about Auto Blocker in 2024, too. That is not the kind of unwarranted inference that the law permits absent factual support.

---

[2] In its opposition, Plaintiff asserts that the 2020 RSA "likely expired the very same month that Samsung set Auto Blocker 'on' by default in July 2024." Opp. 15. That is not alleged in the Complaint, so it is "irrelevant for Rule 12(b)(6) purposes." *Schneider* v. *Calif. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

**B. Plaintiff Has Not Pled Parallel Conduct Occurring "Around the Same Time."**

Plaintiff's claim must be dismissed for a second reason—failure to allege cognizable parallel conduct as is required under the law of this Circuit and other courts of appeal. MTD Br. 6 (citing cases); *City of Pontiac Police & Fire Ret. Sys.* v. *BNP Paribas Sec. Corp.*, 92 F.4th 381, 401 (2d Cir. 2024). In opposition, Plaintiff musters only a single out-of-circuit district court case to argue that parallel conduct allegations are not required, Opp. 10, while ignoring a Ninth Circuit case stating that "'plus factors' are relevant only if the complaint adequately alleges parallel conduct among the defendants," *Bona Fide Conglomerate, Inc.* v. *SourceAmerica*, 691 F. App'x 389, 390 (9th Cir. 2017).[3] And even Plaintiff's lone case observed that a Section 1 claim "is seriously weakened, albeit not outright defeated, by the absence of evidence of parallel conduct." *Cason-Merenda* v. *Detroit Med. Ctr.*, 862 F. Supp. 2d 603, 640 (E.D. Mich. 2012).

Plaintiff argues in the alternative that it has sufficiently alleged parallel conduct because of purported similarities between Google's Unknown Sources flow and Auto Blocker. The Unknown Sources flow is not parallel to Auto Blocker because Google adopted Unknown Sources "well over a decade" before Samsung created Auto Blocker. Compl. ¶¶ 64, 91. Parallel conduct allegations plausibly support a conspiracy only if the conduct is adopted "around the same time." *Musical Instruments*, 798 F.3d at 1193; *see* MTD Br. 7. Plaintiff's own cited case hurts its contention, as parallel conduct allegations were found plausible there because defendants adopted parallel policies <u>within one month of each other</u>—a closeness in time that is absent here. *PLS.com, LLC* v. *Nat'l Ass'n of Realtors*, 32 F.4th 824, 830 (9th Cir. 2022).

Plaintiff does not and cannot contend that Unknown Sources and Auto Blocker were adopted "around the same time," *Musical Instruments*, 798 F.3d at 1193, so instead argues that "since 2024, at least one of Google and Samsung has employed a functionally identical" install

---

[3] Plaintiff also selectively quotes from *Musical Instruments* that parallel conduct "<u>may constitute circumstantial evidence</u> of anticompetitive behavior." Opp. 10. The case next states: "But mere allegations of parallel conduct—even consciously parallel conduct—are insufficient to state a claim." *Musical Instruments*, 798 F.3d at 1193. The word "may" thus denoted that parallel conduct is not enough to state a claim. Nowhere did *Musical Instruments* dispense with the parallel conduct requirement.

flow, Opp. 10. But, as Plaintiff does not rebut, parallel conduct is not sufficiently alleged where defendants adopted policies far apart in time—regardless of whether "at least one of" the defendants was engaged in the conduct at the time of the alleged conspiracy. Opp. 10; *see Musical Instruments*, 798 F.3d at 1195-96 (no parallel conduct where ongoing policies adopted "over a period of several years"); *Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018) (terminations six months apart); *Gibson* v. *Cendyn Grp., LLC*, 2024 WL 2060260, at *4 (D. Nev. May 8, 2024) (defendants began licensing the same pricing software "at different times over an approximately 10-year period").

**C. Plaintiff Has Not Alleged Cognizable Plus Factors.**

Even had Plaintiff alleged Google's active participation and parallel conduct, it would be required to plead additional plus factors that suggest conspiracy. MTD Br. 7. Importantly, the holistic analysis for plus factors does <u>not</u> permit aggregating any plus factor that is not cognizable on its own.[4] *Id.* In other words, zero plus zero is still zero.[5] Nor, as the Ninth Circuit has stated, does a holistic analysis mean that "a single plausible plus factor allegation that weakly tips in the plaintiffs' favor" can save a conspiracy claim. *DRAM*, 28 F.4th at 53-54. Viewed individually and holistically, Plaintiff's plus-factor allegations do not plausibly plead a conspiracy.

***The Design of Auto Blocker Suggests an Independent, Rational Business Decision, Not a Conspiracy.*** Auto Blocker's default-on design is more consistent with Samsung's unilateral, rational business conduct. MTD Br. 8-9. In opposition, Plaintiff urges that Auto Blocker was against Samsung's self-interest because Samsung did not also block Google's Play Store. Opp. 12-13. As an initial matter, Plaintiff's argument ignores the important business interest, user safety and security, that Samsung has stated is served by Auto Blocker, MTD Br. 8, summarily waving it off as "pretextual," Opp. 16.[6] Further, Plaintiff speculates that Samsung should have designed

---

[4] Contrary to Plaintiff's insinuation, Opp. 9 n.4, Google accurately described how courts should evaluate plus-factor allegations. In its motion to dismiss, Google explicitly noted that plus factor allegations <u>are</u> considered "holistically." MTD Br. 12 (citing *DRAM*).

[5] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019), cited by Plaintiff, is inapposite to the plus factor analysis. That case considered a different question: whether anticompetitive effects of different agreements can be aggregated. *Id.*

[6] Google properly cites to Samsung announcements explaining the security benefits of Auto

Auto Blocker to block users from downloading from the Play Store even though the Play Store "attracts a large number of participating app developers and users," Compl. ¶ 53. Most importantly, Plaintiff's argument falls far short of the high bar—acknowledged nowhere in its opposition—for finding an action to be so against a defendant's self-interest that it supports a conspiracy. "More extreme action against self-interest" "may suggest prior agreement" if "individual action would be <u>so perilous</u> in the absence of advance agreement that <u>no reasonable firm</u> would make the challenged move without such an agreement." *Musical Instruments*, 798 F.3d at 1195 (emphasis added). Plaintiff has identified no reason why turning Auto Blocker, which does not block Samsung's own Galaxy Store, on by default is "perilous" absent agreement. Even a more straightforwardly "perilous" decision like making unilateral supply cuts does not necessarily support a conspiracy claim. *DRAM*, 28 F.4th at 49-51.

Plaintiff also contends that Auto Blocker was against Samsung's self-interest because Samsung could hypothetically have made even more money if it blocked the Play Store, Opp. 12-13, or chose to enable other competitor stores, Opp. 16. Again, Plaintiff ignores Samsung's legitimate interest in competing on grounds such as safety and security. "Courts have recognized that firms must have broad discretion to make decisions based on their judgments of what is best for them and that business judgments should not be second-guessed." *In re Citric Acid Litig.*, 191 F.3d 1090, 1101 (9th Cir. 1999); *see also Burtch* v. *Milberg Factors, Inc.*, 662 F.3d 212, 229 (3d Cir. 2011) (applying similar reasoning to dismiss complaint); *Williamson Oil Co., Inc.* v. *Philip Morris USA*, 346 F.3d 1287, 1310 (11th Cir. 2003) ("We must exercise prudence in labeling a given action as being contrary to the actor's economic interests."); *Kleen Prods. LLC* v. *Int'l Paper*, 276 F. Supp. 3d 811, 828 (N.D. Ill. 2017) ("Defendants may choose not to chase after every business opportunity."). Plaintiff's conjecture about how Samsung could have better run its business or better designed Auto Blocker does not suggest a conspiracy.

---

Blocker that incorporated by reference into the complaint in order to "prevent[] plaintiffs from selecting only" helpful "portions of documents." *Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Plaintiff also urges that the default-on change to Auto Blocker in July 2024 was "an abrupt and unexplained" departure from 15 years of prior conduct.[7] Opp. 16. As demonstrated by Plaintiff's cited case, a "shift in behavior" is relevant to whether parallel conduct is alleged; it is not a separate plus factor. *SD3, LLC* v. *Black & Decker (U.S.) Inc.*, 801 F.3d 412, 428 (4th Cir. 2015). Without more, changes from prior conduct may be "just as consistent with innocent behavior as with unlawful behavior." *Jones* v. *Micron Tech. Inc.*, 400 F. Supp. 3d 897, 920 (N.D. Cal. 2019). Moreover, Google explained why the switch to default-on is more consistent with unilateral behavior than concerted action. MTD Br. 8-9; *see also* Samsung MTD Br. 7-12.

***Plaintiff's Allegations about Google and Samsung's Relationship Are Insufficient to Suggest a Conspiracy.*** Plaintiff argues that Google and Samsung share a motive "to maximize profits through anticompetitive means" because of a separate 2020 RSA regarding search revenues. Opp. 11. The Ninth Circuit has "rejected common motive as a plus factor to show an agreement." *Moore* v. *Mars Petcare US, Inc.*, 820 F. App'x 573, 575-76 (9th Cir. 2020).[8] Further, revenue-sharing agreements are common business arrangements that do not, "standing alone, tend to show anticompetitive collusion." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 858 n.9 (N.D. Ill. 2010); *see also In re Suboxone Antitrust Litig.*, 636 F. Supp. 3d 539, 556-63 (E.D. Pa. 2022) ("revenue share" between defendants not suggestive of conspiracy).

Plaintiff also relies on a handful of communications between Google and Samsung from 2020 and before to argue that Google and Samsung have "extraordinary" communications that are "probative" of the Auto Blocker conspiracy. Opp. 14-15. But none of those communications were

---

[7] Plaintiff's attempt to now avoid inconsistencies in its timing allegations by generalizing them to an ambiguous "looming remedy," Opp. 16 n.5, demonstrates the dangers of the *post hoc ergo propter hoc* fallacy Plaintiff relies on. Courts reject the fallacy because it assumes causation based on coincidences in timing, which can be framed to support any argument. *See* MTD Br. at 10; *Husky* v. *City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000).

[8] To instead argue that "a motive to maximize profits through anticompetitive means suggests a conspiracy," Plaintiff cites to much older Ninth Circuit precedent that—even if it were still good law—is inapposite. *City of Long Beach* v. *Standard Oil Co. of California* held that "substantial incentives to conspire" <u>could</u> "support at least an inference of an agreement" where market structure and circumstances made cooperation a "necessity." 872 F.2d 1401, 1407 (9th Cir. 1989). Plaintiff does not allege that cooperation is a "necessity" for Google or for Samsung.

about Auto Blocker, linked to Auto Blocker, concerning sideloading, or even from the time period during which Auto Blocker has existed. As shown by Plaintiff's cited cases, even "atypical" communications are a cognizable plus factor only when they are made during the relevant time period and are plausibly related to the alleged conspiracy.[9] *See Flextronics Int'l USA, Inc.* v. *Panasonic Holdings Corp.*, 2023 WL 4677017, at *2 (9th Cir. July 21, 2023) (communications about need to hide conspiracy at issue); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142-44, 1148 (N.D. Cal. 2009) ("specific instances" of meetings after which "output was reduced"); *Optronic Techs., Inc.* v. *Ningbo Sunny Elec. Co.*, 20 F.4th 466, 481 (9th Cir. 2021) (emails suggesting means to carry out conspiracy).

Plaintiff puts forward a new plus factor that the "concentration of the Android App Distribution Market makes it especially ripe for collusive abuse." Opp. 16-17. This allegation was not in Plaintiff's complaint and is therefore "irrelevant for Rule 12(b)(6) purposes." *Schneider*, 151 F.3d at 1197 n.1. Regardless, market concentration does not support the existence of a conspiracy because "allegations concerning market characteristics" are "just as likely to be consistent with innocent as unlawful behavior." *Jones*, 400 F. Supp. 3d at 917; *see also DRAM*, 28 F.4th at 52 ("DRAM market's structure" alone insufficient to plausibly suggest conspiracy); *Prosterman* v. *Am. Airlines, Inc.*, 747 F. App'x 458, 461 (9th Cir. 2018) (rejecting plus factors that merely "restate[d]" factors "endemic to an oligopoly").

***"History of Anticompetitive Collusion" Is Not Enough to Suggest a Conspiracy.*** The support for Plaintiff's conspiracy allegation comes down to one thing: Plaintiff's characterization that Google and Samsung previously had "anticompetitive understandings."[10] Opp. 13-14. Even

---

[9] The "consisten[cy]" of communications between Google and Samsung also does not suggest conspiracy. Opp. 15. Repeated contacts or a close relationship between partners, even if they are also competitors, is neither atypical nor suggestive of illicit agreement. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 951 (N.D. Ill. 2014) ("Having repeated communications with a supplier, who also is a competitor in certain markets, does not a conspirator make."), *aff'd*, 801 F.3d 758 (7th Cir. 2015); *Anderson News LLC* v. *Am. Media, Inc.*, 123 F. Supp. 3d 478, 504 (S.D.N.Y. 2015) (communications "were necessary for Defendants" to "conduct their day-to-day business"), *aff'd*, 899 F.3d 87 (2d Cir. 2018).

[10] Google disagrees with Plaintiff's characterizations about the *Epic* jury's findings regarding past agreements, *see* Opp. 25. The *Epic* v. *Google* jury returned a verdict finding that at least one, unspecified agreement between Google and any OEM violated Section 1, not any verdict specific

assuming the truth of Plaintiff's allegations as is required on a motion to dismiss, Plaintiff offers no response to Ninth Circuit precedent that past conduct alone is not enough to plausibly support a new conspiracy. *See* MTD Br. 11-12. Plaintiff cites *DRAM* to argue historical conduct can be "probative," Opp. 14, yet ignores that the allegations in *DRAM* were dismissed in spite of "the factual overlap between Defendants' prior criminal conduct and the present allegations." 28 F.4th at 53. Plaintiff's argument mirrors one made and rejected in *DRAM*: just because a prior history may involve "the same offending companies, the same market, the same product, and some of the same executives" does not mean a new alleged conspiracy survives. Reply Br. at 27, *DRAM*, 28 F.4th 42 (No. 21-15125), 2021 WL 4692865, at *27; *DRAM*, 28 F.4th at 53-54; *see also Flash*, 643 F. Supp. 2d at 1149-50 (Plaintiff's cited case stating that a past conspiracy "may not prove the existence of a conspiracy with respect to" a newly alleged agreement absent additional factual support). So too here. Because Plaintiff's other plus factors do not suggest a conspiracy, historical allegations cannot salvage the conspiracy claim.

Plaintiff's Section 1 claim must therefore be dismissed. *DRAM*, 28 F.4th at 54.

## II. The Remaining Claims Against Google Should Be Dismissed.

Plaintiff's group boycott claim fails to plead the existence of an agreement or a group boycott. MTD Br. 12-13. Plaintiff argues that its group boycott claim survives because it is sufficient to allege that Samsung boycotted app stores, thus conceding Plaintiff is alleging a boycott by one firm. Opp. 20. But a group boycott claim cannot be premised on a "boycott" of competitors by a single firm. *City of Oakland* v. *Oakland Raiders*, 20 F.4th 441, 453-54 (9th Cir. 2021) ("Collective action taken in support of an individual boycott is not the same as a group boycott."). Group boycott cases require that "multiple producers refuse[] to sell their goods or services to consumers." *Id.* at 454 (emphasis in original). Ignoring this precedent, Plaintiff cites a single 1959 Supreme Court case that offers no support for its position, as multiple defendants actually boycotted the plaintiff. *Klor's, Inc.* v. *Broadway-Hale Stores, Inc.*, 359 U.S. 207, 209 (1959) ("manufacturers and distributors of such well-known brands as General Electric, RCA,

---

to agreements between Google and Samsung. Verdict Form, *Epic* v. *Google* (No. 3:20-cv-5671-JD), Dkt. 606.

Admiral, Zenith, Emerson" refused to distribute products to plaintiff-retailer). And *Klor's* recognized that "a case of a single trader refusing to deal with another"—all that Plaintiff alleges here—is not a cognizable group boycott. *Id.* at 212.

Plaintiff's conspiracy to monopolize claim fails to plead a conspiracy or that Google possessed specific intent to monopolize. MTD Br. 13-14. The complaint does not contain—and Plaintiff has not identified in its opposition—a single non-conclusory allegation suggesting that, whenever the purported Auto Blocker conspiracy was formed, Google had the specific intent to monopolize the alleged app distribution market. Plaintiff falls back on an anticompetitive effects allegation that has nothing to do with intent, Compl. ¶ 124; a recitation of the legal standard for specific intent, Compl. ¶ 150; and the false and unpled assertion that "Google has already been found to possess specific intent given that it was found liable for monopoly maintenance in *Epic* v. *Google*," Opp. 19. The monopolization claim in *Epic* required only a finding of general, not specific, intent. *Tops Mkts., Inc.* v. *Quality Mkts., Inc.*, 142 F.3d 90, 101 (2d Cir. 1998) (quoting *Times-Picayune Publ'g Co.* v. *United States*, 345 U.S. 594, 626 (1953)). The *Epic* jury was not instructed on specific intent and could not have made a specific intent finding. Jury Instructions, *Epic* v. *Google* (No. 3:20-cv-5671-JD), Dkt. 592.

Finally, Plaintiff's state-law Cartwright Act and UCL claims rise and fall with Plaintiff's Sherman Act claims. MTD Br. 14-15. As Plaintiff admits in its opposition, its allegation that Google violated the "unfair" prong of the UCL also collapses into its federal antitrust claim. Opp. 25 (arguing as to unfair prong that "Defendant's conduct violates the policy or spirit of the antitrust laws by harming competition for that product").

**CONCLUSION**

For the foregoing reasons, Google respectfully requests the Court dismiss Plaintiff's claims against Google.

Dated: March 11, 2025

Respectfully submitted,

/s/ Jeannie S. Rhee
Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
kdunn@paulweiss.com
jphillips@paulweiss.com
mgoodman@paulweiss.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
mdearborn@paulweiss.com

*Counsel for Defendant Google LLC*