Shaneeda Jaffer (SBN 253449)
sjaffer@beneschlaw.com
Lily A. North (CA 260709)
lnorth@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California
Telephone: (628) 600-2250
Facsimile: (628) 221-5828

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

Victoria F. Maroulis (SBN 202603)
victoriamaroulis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Counsel for Defendants Samsung
Electronics Co., Ltd. and Samsung
Electronics America, Inc.*

Meredith R. Dearborn (SBN 268312)
mdearborn@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (628) 432-5100
Facsimile (628) 432-5100

*Counsel for Defendant Google LLC*

*Additional Counsel Listed Below*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC,<br><br>Defendants. | Case No. 3:24-cv-06843-JD<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Judge: Hon. James Donato<br>Action Filed: September 30, 2024 |

The parties to the above-entitled action jointly submit this joint status conference statement pursuant to Your Honor's Order (Dkt. 69).

1. **TREATMENT OF *EPIC V. GOOGLE* JURY FINDINGS IN THIS CASE**

**Epic's Position**:

On January 13, 2025, the parties exchanged their initial disclosures. Epic noted in its initial disclosures that the scope of discovery would depend on whether preclusive effect is afforded to the findings made by the jury in *Epic Games, Inc. v. Google LLC*, Case No. 3:20-cv-05671 ("*Epic v. Google*"), including specifically the finding that "Google is a monopolist in the Android App Distribution Market". Samsung, in its initial disclosures, referred to the relevant market here as the "market(s) for Android App Distribution", consistent with the jury findings.

On January 16, 2025, at the initial case management conference, the Court requested that Epic and Google "start thinking about preclusive effects from the verdict" in *Epic v. Google* because "we're certainly not going to act like the first trial never happened". (Jan. 16, 2025 Case Management Conf. Tr. 9:10-10:7.) At subsequent meet and confers, because both Defendants voiced an interest in streamlining the case and minimizing discovery (but Samsung was not party to *Epic v. Google*), Epic repeatedly proposed a stipulated agreement adopting the jury findings from *Epic v. Google* concerning market definition and market power. Defendants, however, insisted they could not respond to this proposal unless and until Epic reduced it to writing. Accordingly, on February 5, 2025, Epic made a written proposal to Defendants consistent with the proposals it had made verbally in the preceding weeks; specifically, Epic proposed that "the parties stipulate that, consistent with the jury's findings in *Epic v. Google*: (i) the relevant product market for purposes of this action is the Android app distribution market; (ii) the relevant geographic market for the purposes of this action is worldwide excluding China; and (iii) Google has monopoly power in the Android app distribution market."

On February 14, 2025, Google responded to Epic's outreach, stating that "[w]e are still considering Epic's request that Google and Samsung provide a written proposal regarding the contemplated stipulation to preclusion. We will follow up with a proposal for consideration." Following the motion to dismiss hearing on April 3, 2025, Google represented that it was working on a substantive counterproposal but needed a few more weeks to work out some complications. Samsung, for its part, represented to this Court at the motion to dismiss hearing that it believed

this case was a narrow one, implicating only events that occurred "from 2023 and 2024", because "[i]t's only about the auto-blocker feature that Samsung implemented in October 2023". (Apr. 3, 2025 MTD H'rg Tr. 6:11-19.)

On April 21, 2025, Defendants finally responded to Epic's February 5 proposal. In a meet and confer on that day, Samsung informed Epic that it (i) would not agree to adopt any of the jury findings in *Epic v. Google*, and (ii) reserves the right to argue for a different market definition than the one identified by the jury. Moreover, Defendants took the position that the jury findings should not preclude *either* Defendant from arguing for a different market (or for Google lacking market power in a relevant market), on the theory that applying preclusion against Google would prejudice Samsung, given their status as codefendants. In other words, Defendants contend that Epic should proceed to prove its allegations on market definition and market power against both Defendants, notwithstanding the jury findings in *Epic v. Google*. However, Defendants have provided *no* reasoning or legal support as to why preclusion should not apply to Google, which has already fully and fairly litigated these issues. And setting aside the legal question of whether the jury's findings have a preclusive effect such that further litigation of market definition and market power are formally barred, neither Defendant has indicated any willingness to accept any aspect of the jury's findings as a practical matter to avoid unnecessarily duplicative litigation.[1]

Samsung contends that Epic's proposal would prejudice Samsung because Samsung wishes to argue for certain pro-competitive benefits that arise in another market and purportedly "motivated Samsung's smartphone design choices". But these arguments have no bearing on (let alone negate) the existence of a relevant antitrust market for Android App Distribution, which Google has monopolized. Samsung also protests at length that Epic is not *entitled* to assert issue preclusion against it. Epic is not arguing for preclusion: Epic's argument is a practical one—its proposal would have greatly streamlined and narrowed both discovery and trial. Google's position as a monopolist has been fully litigated to, and adjudicated by, the jury in *Epic v. Google*, using much the same record evidence that will be available here. Following a 15-day trial concerning

---

[1] Epic understands that the Court has suggested that formal collateral estoppel does not apply to Samsung. (Jan. 16, 2025 Case Management Conf. Tr. 10:2-3.)

Google's conduct that is of the same character as the conduct alleged here, the jury found that the relevant market in which to assess Google's conduct, including its conduct vis-à-vis Samsung, is the global (excluding China) Android app distribution market, and that Google had and willfully maintained monopoly power in that market. There is little to be gained from relitigating these issues here, other than cost and delay. Google had every incentive and opportunity to contest those findings in *Epic v. Google*. There is simply no reason to believe that Samsung, relying on much the same record, could prove that Google is *not* a monopolist in the relevant market, when Google itself failed in doing so.

Samsung nonetheless insists that it "has a right to contest Epic's alleged market definition in this case" because "[a]s demonstrated by Epic's prior lawsuits against Apple and Google, fact finders can reach different conclusions as to antitrust market definition". This argument misses the mark. This Court has already found that the market definition issues litigated in *Epic v. Apple* were "plainly not the same" as those litigated in *Epic v. Google*. (*Epic v. Google*, Dkt. 674 at 7.) *Epic v. Apple* is irrelevant here too for the same reasons. The distinct conduct and market structure addressed in *Epic v. Apple* are not present here. Instead, the claims in this case concern Google's monopoly power and conduct by Google and Samsung that is similar to conduct considered by the jury in *Epic v. Google*. Yet Defendants insist on forcing Epic to try these market definition and market power matters from scratch, rather than streamlining the case on the basis of jury findings reached in a trial against the most pertinent party—Google, the accused monopolist.

Worse still, Defendants insist that because Samsung was not a party to the *Epic v. Google* case, Google too should have a second bite at the apple. In other words, Defendants argue that Google may disregard the jury findings in *Epic v. Google* and attempt yet again to contest its monopoly in the Android app distribution market because—according to Defendants—any other outcome would prejudice Samsung. That concern is both speculative and premature. *If* Samsung could somehow sustain its position that Google is not a monopolist in the Android app distribution market up to trial, Samsung may then seek to address any prejudice from the jury learning of the findings in *Epic v. Google* through an appropriate motion *in limine*. But that concern, however addressed, cannot and does not justify Google having the opportunity to retry issues it already lost

on to the same plaintiff, based on much the same record, before the same Court. Indeed, Defendants' position would be immensely prejudicial to Epic; Epic should not be forced to retry *against Google* issues Epic already tried and won.[2]

**Samsung's Position**:

Epic has proposed that Samsung agree to apply here factual determinations made in a previous lawsuit to which Samsung was not a party and which does not fit the facts of this case. Specifically, that "(i) the relevant product market for purposes ***of this action*** is the Android app distribution market; (ii) the relevant geographic market for the purposes ***of this action*** is worldwide excluding China; and (iii) Google has monopoly power in the Android app distribution market." *See supra* (emphases added). This would not only violate due process by depriving Samsung of its ability to defend itself, but also impose relevant market and power determinations that have received very different receptions by different fact finders, and not apply to the actual allegations in this case. For these reasons, Samsung told Epic it could not agree to such a proposal.

To explain in more detail why this is so, Samsung notes that questions of market definition are foundational to Epic's case because the entire thrust of Epic's antitrust and unfair competition claims is that Samsung conspired to maintain *Google's* monopoly. However, Epic also alleges that the acts in which Samsung engaged unquestionably happened on a device (Galaxy smartphones) that Samsung sells in a market Epic does *not* allege Google dominates, and in which the evidence will show Samsung competes with numerous, non-Google entities—notably, Apple. Samsung thus has every right to contest Epic's proposed market and power definitions because they ignore the relevant market that actually motivated Samsung's smartphone design choices and do not account for the procompetitive benefits and legitimate business justifications for Samsung's smartphone-focused design choices. These market definitions also ignore the Ninth Circuit's *Allied Orthopedic* product improvement doctrine and would have Samsung essentially agree that, contrary to binding precedent, the fact finder in this case should not be asked whether a smartphone design choice

---

[2] The Ninth Circuit has previously favored a grant of summary judgment against a party seeking to retry market definition and market power on the basis of the same or a similar record that was the basis of an adverse finding in another case. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 848 (9th Cir. 1996).

improved a smartphone and therefore immunizes Samsung from antitrust liability—even if that product improvement had alleged anticompetitive effects in a different relevant market.

Epic asserts above that Samsung has not "indicated any willingness to accept any aspect of the jury's findings as a practical matter to avoid unnecessarily duplicative litigation." But it is Epic's burden to identify any legal basis for Samsung to voluntarily compromise its own defenses, and Epic has consistently failed to do so. To state the obvious, the fact that it would make Epic's case more "streamlined" is not a recognized basis for Samsung to concede an issue it has every right to dispute. Throughout the parties' meet and confers, in Epic's written preclusion proposal, and continuing in connection with the current submission, Epic has provided zero legal basis for binding Samsung to determinations made in its absence. And its counsel conceded during the meet and confer on this issue that Epic was *not* seeking issue preclusion—Epic's lead counsel stated that repeatedly. Samsung can only surmise that Epic's inability to assert (and explicit disavowal of) issue preclusion is because settled law makes clear that preclusion does not apply and would be reversibly inappropriate here. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480-81 (1982) ("collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue"); *United States v. Washington*, 593 F.3d 790, 801 n.13 (9th Cir. 2010) (preclusion does not apply "against an entity that was not a party or in privity with a party to the prior litigation"). Indeed, in footnote 1 above, Epic admits that the Court has already noted this exact point. Yet Epic simultaneously seeks, in substance, to deprive Samsung of its right to defend itself by, *inter alia*, contesting Epic's proposed markets.

Samsung's defense will involve disputing Epic's alleged market definition, and advocating that alternative markets (which defeat Epic's claims) exist. Epic is both incorrect and misleading to suggest that Samsung "referred to the relevant market here" as the "market(s) for Android App Distribution" in its initial disclosures. While the phrase "Documents relating to Samsung's market power in the market(s) for Android App Distribution" did appear in Samsung's initial disclosures among a list of materials "that it may use to support its claims or defenses," Epic cannot seriously suggest that this language was meant to identify or adopt the appropriate, proper, or relevant

antitrust market at issue—or otherwise act as any sort of waiver. Epic cites no authority for its attempt to take language from Samsung's initial disclosures out of context and transform the phrase into a concession about a foundational, disputed issue. As noted above, Epic itself focuses on the wrong level of competition relevant to Samsung's decision making, and it must prove that Samsung, a smartphone manufacturer, had a conscious commitment to a common scheme to benefit Google with respect to app distribution when Samsung made a smartphone design choice to compete with other smartphone manufacturers, including Apple. A jury certainly could find that the proper relevant market in such a scenario is not the one Epic alleges.

And Epic pretends there is no way that reasonable fact finders can come to different conclusions, even "relying on much the same record." As vividly illustrated by Epic's prior lawsuits against Apple and Google, a highly similar record can lead a fact finder to make very different relevant market determinations. Depriving Samsung of the opportunity to develop and present market evidence would be unfair and contrary to the proper application of issue preclusion. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("where the application of offensive collateral estoppel would be unfair to a defendant, a trial judge *should not* allow the use of collateral estoppel") (emphasis in original). Epic asserts that "the claims in this case" are "similar to conduct considered by the jury in *Epic v. Google*," but that assertion is plainly incorrect when it comes to Samsung. Samsung's alleged conduct challenged by Epic in this case was indisputably *not* part of *Epic v. Google* matter. Samsung's conduct at issue here concerns the procompetitive actions taken by a OEM to compete with its rivals on device security.

Unlike the application of issue preclusion against Samsung, issue preclusion against Epic based on the outcome of *Epic v. Apple*, 559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd in relevant part*, 67 F.4th 946 (9th Cir. 2023), would be consistent with the principles of collateral estoppel, including because Epic was a litigant in the *Epic v. Apple* case, and Samsung reserves the right to argue for the application of preclusion based on this judgment.

Finally, Samsung submits that imposing collateral estoppel against Google in this case would present significant complications, resulting in considerable case-management challenges and the acute risk of unfairness to Samsung. Epic has alleged that Google and Samsung have

engaged in an anticompetitive conspiracy. Under relevant law, both parties are subject to joint and several liability. *See In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1207 (N.D. Cal. 2015) ("the antitrust laws impose joint and several liability" and "all conspirators are jointly liable for the acts of their co-conspirators") (internal quotations omitted). Nor is there any right of contribution. *See L.A. Terminals, Inc. v. City of Los Angeles*, 2018 WL 6985312, at *6 (C.D. Cal. Nov. 16, 2018) (observing that there is no "right to contribution from other participants in an unlawful conspiracy under the antitrust laws"). Accordingly, Samsung would necessarily be impacted by rulings against Google based on a prior proceeding in which Samsung was not involved or represented in any way.

For the above reasons, Samsung cannot agree to Epic's disguised issue preclusion proposal. Although Epic tries to suggest Samsung acted improperly in rejecting that proposal, it still offers no reason why it would be at all appropriate "for purposes of this action" to apply those market definition or power findings. However, to the extent the Court is inclined to make any holdings concerning the application of collateral estoppel or the scope of such preclusive effect, Samsung respectfully requests the opportunity to provide full briefing on the issue.

**Google's Position**:

Google supports all reasonable efforts to maximize the efficiencies in this case. That is why Google has deemed produced in this matter all of the material that Google produced in *Epic v. Google*. But Samsung—which was not a party to *Epic v. Google* and to which the Court has recognized "formal collateral estoppel does not apply," Epic Statement at 2, n.1 (citing Jan. 16, 2025 Case Management Conf. Tr. 10:2-3.)—has significant concerns with agreeing to a stipulation that would relieve Epic of proving multiple elements of its legal claims in this case. Because Epic chose to sue both Google and Samsung, Google is not in a position to unilaterally agree to a stipulation with Epic about issue preclusion.

**2.   DISCOVERY STATUS UPDATE**

The Parties have reached agreement on the mutual production of all Party-produced documents from *Epic v. Google*. The Parties continue to meet and confer regarding search protocols for additional productions.

**Epic's Position:**

*Production in This Case of Epic v. Google Party Productions*

In its initial disclosures, Epic disclosed that "[d]ocuments and ESI previously produced and discovery previously taken" in *Epic v. Google* (and all related cases) would be relevant to this action. Epic attempted to reach agreement with Defendants on this point outside of the formal Rule 34 Request for Production ("RFP") process, but Defendants would not agree to mutual reproduction by all Parties of their respective documents from *Epic v. Google* outside of that formal process. Epic therefore served on each Defendant, as RFP No. 1, a request to produce "[a]ll Documents produced" by each Defendant in *Epic v. Google*. Google objected to this request as overly broad and unduly burdensome, and further raised objections based on claims of privilege and confidentiality. In meet and confers held over several weeks, Google continued to resist reproducing its production from *Epic v. Google*, seeking instead to narrow the scope of documents it produced and to condition any reproduction on Epic's agreement not to challenge any privilege or confidentiality designations Google had made in *Epic v. Google*. Only following additional meet and confers and a clear directive from the Court (*see* Apr. 3, 2025 MTD H'rg Tr. 12:14-20) did Google ultimately relent and agree that all documents Google produced to Epic in *Epic v. Google* are deemed produced in this action. Samsung has now confirmed that it intends to complete production of the documents it previously produced in *Epic v. Google* by the May 8, 2025 status conference. Epic, for its part, has confirmed it will complete production of its documents from *Epic v. Google* by May 1, 2025.

*A Refresh of Productions from Epic v. Google*

Given Defendants' refusal to accept the jury findings in *Epic v. Google* on market power and market definition, Epic must prepare to retry those issues. To prepare for this possibility, among other necessary discovery, Epic asked each Defendant to refresh its production from *Epic v. Google* (using the same search protocol each of them used in *Epic v. Google*) to cover the period since documents were collected and produced in that case. Samsung indicated that it was not opposed to a refresh of its (quite narrow) production from *Epic v. Google* to cover the period from the date of Samsung's last production to present. Google, however, took a different approach.

On April 22, 2025, Google informed Epic that it does not agree to refresh its production from *Epic v. Google* and instead intends to address both Epic's request for a refresh and Epic's other RFPs through a proposal on search terms and custodians, which Google sent to Epic on April 21, 2025 ("Google's Search Protocol Proposal"). As originally drafted, Google's Search Protocol Proposal was significantly narrower than a full refresh; it included only 13 custodians (as compared to the 43 custodians Google collected from in *Epic v. Google*) and a much narrower set of search terms. Epic believes Google's Search Protocol Proposal is overly narrow, especially in light of Google's position that Epic must relitigate market definition and market power. As a compromise, on April 29, 2025, Epic proposed supplementing Google's Search Protocol Proposal with 23 additional custodians (for a total of 36 custodians—still fewer than the number of custodians agreed to in *Epic v. Google*) and several search terms (most of which Google had agreed to in *Epic v. Google*). Epic further asked Google to confirm that it would produce any documents identified by the revised search protocol that would have been considered responsive in *Epic v. Google*.

*Time Period for Epic's RFPs to Samsung and Google*

In its RFPs, Epic has generally requested documents dated from January 1, 2020 to the present. Epic requested longer and shorter time periods with respect to a handful of RFPs. Both Defendants objected to these periods on grounds that Epic views as unreasonable.

In Samsung's R&Os, Samsung indicated it was willing to produce documents only from time periods beginning on January 1, 2023 or January 1, 2024, depending on the request. It made this objection notwithstanding its representation that it began developing Auto Blocker prior to both dates—in October 2022—and that it has now taken the position that Epic needs to prove market definition and market power from scratch.[3] As a compromise, Epic offered to accept a time period beginning on October 1, 2022 for requests related only to Auto Blocker. However, for Epic's RFPs related to broader issues like market definition, monopoly power and competition

---

[3] Samsung was not opposed to a refresh of its *Epic v. Google* production, but that production was the result of an exceedingly narrow search protocol, given Samsung's status in that case as a third party headquartered outside the jurisdiction.

in the market (or lack thereof), Epic believes it is entitled to documents spanning a broader time period, and that a start date of January 1, 2020 is eminently reasonable given the scope of Epic's allegations.[4]

Google has suggested that, because it has now agreed to produce all documents it previously produced in *Epic v. Google*, it would apply two different time periods in its search protocol: (1) for RFPs relating to Auto Blocker, January 1, 2022 through September 30, 2024 (when the Complaint was filed in this case); and (2) for all other RFPs, August 14, 2020 (the day after Epic filed its Complaint in *Epic v. Google*) through September 30, 2024. Epic does not object to these start dates, but given the continuing nature of Google and Samsung's conspiracy, Epic objects to cutting off the discovery period on September 30, 2024. In the interest of compromise, and to prevent burdening Google with the need to re-collect documents from custodians whose documents Google had already collected, Epic proposed that the cutoff date of any collection would be the collection date itself, provided such collection was completed no earlier than January 31, 2025.

The parties continue to negotiate this issue.

**Google's Position**:

Google and Epic have continued to make substantial progress regarding the parties' respective discovery requests, and negotiations are ongoing. On March 12, 2025, Google served responses and objections to Epic's first set of Requests for Production ("RFPs"), and on March 31, 2025, Epic served responses and objections for Google's first set of RFPs and Google's first set of Interrogatories. Since that time, the parties have engaged in productive discussions regarding the proper scope of discovery for materials and information relevant to this case. The parties have made significant progress in less than a month. Google does not believe that there are any

---

[4] Samsung's claim that "Epic's representation to the Court in this Submission that it seeks documents dating back only to January 2020 for 'Epic's RFPs related to broader issues,' is the first time Samsung has heard this information" is incorrect. Epic's RFPs to Samsung make clear: "unless otherwise stated, the Relevant Period for purposes of Your production in response to these Requests is the period from January 1, 2020, through and Including the present." Epic sought longer timeframes, reaching as far back as 2011, for a handful of RFPs related to Samsung and Google's longstanding anticompetitive relationship, on which Epic currently only has Google's documents.

discovery matters that are ripe to raise with the Court at this time.

*Reproduction of Play Store Litigation Materials*

Consistent with the Court's desire to streamline discovery, Google has deemed produced in this case all documents that Google produced in the Play Store antitrust litigation and related actions ("PAL litigations").[5] The parties have also agreed on and filed a Supplemental Protective Order, ECF No. 76, as was entered into the PAL litigations with respect to third-party confidential information in PAL productions.

*Refresh of Productions from Epic v. Google*

With regard to Epic's request for a "refresh" of the productions made in *Epic v. Google*, the parties are in the middle of negotiating search protocols. Google sent Epic a robust search protocol, including 43 search terms, 13 custodians, and multiple date-ranges, all of which are reasonable and proportionate to the needs of this case, including for a "refresh" of the documents from Google's prior PAL productions that are relevant here. On April 29, just two days before this filing, Epic sent Google a counter proposal that included 23 additional custodians and 27 additional search terms. Google is in the process of responding to Epic's counter-proposal and looks forward to a productive meet and confer with Epic. The parties continue to make progress on this issue and Google does not believe there is any dispute ripe for the Court's consideration.

---

[5] Epic suggests that Google resisted production of these documents and delayed their reproduction while conditioning any reproduction on Epic's agreement not to challenge any privilege or confidentiality designations. At the January 16, 2025 case management conference, the Court indicated that reproduction of "everything produced in [the PAL litigations] that's relevant" would "cut down on the costs and inefficiencies." 1/16/25 Tr. at 18. As Google explained to Epic during the parties' April 2, 2025 meet and confer, Epic's unwillingness to agree not to challenge designations asserted by Google in the PAL litigations that Epic had a full and fair opportunity to challenge (but chose not to) in the PAL litigation would result in the need for Google to consider whether a re-review of prior designations made in the previous litigation was necessary, which would undermine the efficiencies sought to be gained by the reproduction. Epic confirmed in an April 16, 2025 e-mail that it was unwilling to agree to Google's condition, but agreed that either party may object to any challenge to privilege or designations if it arises, including by arguing that the other party has waived such challenge due to the passage of time. After considering whether a re-review was necessary in light of Epic's April 16 e-mail, Google conveyed to Epic during the parties' following meet and confer on April 23, 2025, that it would agree to deem documents produced by Google in the PAL litigations produced in this case. Google is working expeditiously to provide a production of the documents that it produced to Epic in the PAL litigations to Samsung.

*Time Period for Epic's RFPs to Google*

Although Epic's submission spends much space on the time period applicable to Epic's RFPs to Google, Epic concedes that Epic and Google are close to agreement on this issue and have continued to meet and confer productively.

**Samsung's Position**:

Consistent with the Court's directive at the last hearing, Samsung is preparing a production of documents produced in *Epic v. Google* and will produce such documents by the May 8, 2025 Status Conference. The parties are engaged in productive discussions regarding the proper scope of discovery for additional materials and information relevant in this case. Samsung does not believe that there are any discovery matters to raise with this Court at this time.

Samsung briefly addresses the discovery issues raised by Epic:

With respect to the refresh of the *Epic v. Google* productions, Samsung clarifies that it would consider doing so to the extent the information Epic seeks in RFP Nos. 1 and 2 is not already encompassed by Epic's thirty-three remaining document requests, which address the same subject matter.

With respect to the appropriate time period for Epic's RFPs, Samsung and Epic are engaged in ongoing, productive discussions regarding the appropriate temporal scope for each category of requests. Specifically, Samsung has agreed to search for documents from October 2022 to September 2024 for Epic's RFPs that relate to Auto Blocker because Samsung first conceived of the idea for Auto Blocker in October 2022. Epic's representation to the Court in this Submission that it seeks documents dating back only to January 2020 for "Epic's RFPs related to broader issues," is the first time Samsung has heard this information, and will consider those dates as part of the meet and confer process. Samsung notes that Epic's April 28, 2025 letter to Samsung states that it "stands on its request of time period from January 1, 2011 to the present" for RFP Nos. 3, 4, 18 and 19. While Samsung remains open to further discussion regarding discovery back to January 2020 for some RFPs, it maintains that a fourteen-year discovery period is not proportional to the needs of this case given Epic alleges Samsung's anticompetitive conduct began no earlier than October 2023.

**3.     SETTLEMENT & ADR**

**Joint Statement:**

   After the Court's order to engage a mediator (Dkt. 54), the Parties jointly engaged the Hon. Layn Phillips (Ret.) to mediate this matter (Dkt. 58). The Parties held an in-person mediation with Judge Phillips on March 24, 2025.

Dated: May 1, 2025

| | |
|---|---|
| */s/ Yonatan Even* | */s/ Victoria F. Maroulis* |
| Shaneeda Jaffer (SBN 253449) | QUINN EMANUEL URQUHART & |
| sjaffer@beneschlaw.com | SULLIVAN, LLP |
| Lily A. North (CA 260709) | Victoria F. Maroulis (SBN 202603) |
| lnorth@beneschlaw.com | victoriamaroulis@quinnemanuel.com |
| BENESCH FRIEDLANDER COPLAN & | 555 Twin Dolphin Drive, 5th Floor |
| ARONOFF LLP | Redwood Shores, California 94065 |
| 100 Pine Street, Suite 3100 | Telephone: (650) 801-5000 |
| San Francisco, California | Facsimile: (650) 801-5100 |
| Telephone: (628) 600-2250 | |
| Facsimile: (628) 221-5828 | Adam B. Wolfson (SBN 262125) |
| | adamwolfson@quinnemanuel.com |
| Gary A. Bornstein (*pro hac vice*) | 50 California Street, 22nd Floor |
| gbornstein@cravath.com | San Francisco, California 94111 |
| Yonatan Even (*pro hac vice*) | Telephone: (415) 875-6600 |
| yeven@cravath.com | Facsimile: (415) 875-6700 |
| Lauren A. Moskowitz (*pro hac vice*) | |
| lmoskowitz@cravath.com | Kevin Teruya (SBN 235916) |
| Michael J. Zaken (*pro hac vice*) | kevinteruya@quinnemanuel.com |
| mzaken@cravath.com | 865 South Figueroa Street, 10th Floor |
| CRAVATH, SWAINE & MOORE LLP | Los Angeles, California 90017 |
| Two Manhattan West | Telephone: (213) 443-3000 |
| 375 Ninth Avenue | Facsimile: (213) 443-3100 |
| New York, New York 10001 | |
| Telephone: (212) 474-1000 | Debra D. Bernstein (*pro hac vice* pending) |
| Facsimile: (212) 474-3700 | debrabernstein@quinnemanuel.com |
| | 1200 Abernathy Rd NE, Suite 1500 |
| *Counsel for Plaintiff Epic Games, Inc.* | Atlanta, GA 30328 |
| | Telephone: (404) 482-3502 |
| | Facsimile: (404) 681-8290 |
| | |
| | *Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.* |
| | |
| | */s/ Jeannie S. Rhee* |
| | Jeannie S. Rhee (*pro hac vice*) |
| | jrhee@paulweiss.com |
| | Karen L. Dunn (*pro hac vice* pending) |
| | kdunn@paulweiss.com |
| | Jessica E. Phillips (*pro hac vice*) |
| | jphillips@paulweiss.com |
| | Martha L. Goodman (*pro hac vice*) |
| | mgoodman@paulweiss.com |
| | PAUL, WEISS, RIFKIND, WHARTON & |
| | GARRISON LLP |
| | 2001 K Street, NW |
| | Washington, DC 20006-1047 |
| | Telephone: (202) 223-7300 |
| | Facsimile: (202) 223-7420 |

Meredith R. Dearborn (SBN 268312)
mdearborn@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (628) 432-5100
Facsimile: (628) 432-5100

*Counsel for Defendant Google LLC*

# E-FILING ATTESTATION

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

/s/ *Yonatan Even*
Yonatan Even