Martha L. Goodman (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile (202) 223-7420
mgoodman@paulweiss.com

Karen L. Dunn (*pro hac vice* pending)
Jeannie S. Rhee (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
jphillips@dirllp.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California
Telephone: (202) 223-7323
Facsimile (202) 330-5908
mdearborn@paulweiss.com

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

EPIC GAMES, INC.,

        *Plaintiff*,

vs.

SAMSUNG ELECTRONICS CO. LTD;
SAMSUNG ELECTRONICS AMERICA, INC.; and
GOOGLE LLC,

        *Defendants*.

Case No. 3:24-cv-06843-JD

**GOOGLE LLC'S BRIEF IN
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND THE
COMPLAINT**

Judge: Hon. James Donato

1

## <u>TABLE OF CONTENTS</u>

2   INTRODUCTION ....................................................................................................................1

3   BACKGROUND ....................................................................................................................1

4   LEGAL STANDARD............................................................................................................3

5   ARGUMENT ........................................................................................................................3

6      I.    The Proposed FAC Fails To State A Claim For Tortious
7          Interference With Contractual Relationships............................................................3

8          A.    Epic Cannot Allege Google Had The Required Intent To
              Disrupt Epic's Contracts....................................................................4

9          B.    Epic Cannot Allege Google's Conduct Actually Interfered
10              With Its Contracts Or Caused Particularized Damage...........................5

11      II.    The Proposed Amended Complaint Fails To State A Claim For
          Tortious Interference With Prospective Economic Relationships ............................7

12          A.    Epic Cannot Allege Google's Knowledge Of Any
13              Cognizable Economic Relationship With A Third Party...........................8

14          B.    Epic Does Not And Cannot Allege That Google Intended
              To, And Succeeded In, Actually Disrupting Any
15              Cognizable Economic Relationship........................................................10

16          C.    Epic Cannot Allege Damages With Reasonable Certainty.....................11

17      III.    The Proposed First Amended Complaint Fails To State A Claim
          For Trade Libel. ....................................................................................12

18   CONCLUSION....................................................................................................................13

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3500 Sepulveda, LLC* v. *Macy's W. Stores, Inc.*,
  980 F.3d 1317 (9th Cir. 2020) .......................................................................................4

*Am. Shooting Ctr., Inc.* v. *Secfor Int'l.*,
  2015 WL 1914924 (S.D. Cal. Apr. 7, 2015) ...................................................................13

*Blatty* v. *New York Times Co.*,
  42 Cal. 3d 1033 (1986) .................................................................................................12

*Bonin* v. *Calderon*,
  59 F.3d 815 (9th Cir. 1995) .............................................................................................3

*Brown* v. *Allstate Ins. Co.*,
  17 F. Supp. 2d 1134 (S.D. Cal. 1998) ...............................................................................8

*Centerline Hous. P'ship* v. *Palm Cmtys.*,
  2022 WL 247951 (C.D. Cal. Jan. 12, 2022) .......................................................................6

*Davis* v. *Nadrich*,
  174 Cal. App. 4th 1 (2009) .............................................................................................5

*Epic Games Inc.* v. *Google LLC*,
  No. 3:20-cv-05671-JD ..............................................................................................1, 11

*First Advantage Background Servs. Corp.* v. *Private Eyes, Inc.*,
  569 F. Supp. 2d 929 (N.D. Cal. 2008) .............................................................................13

*Foman* v. *Davis*,
  371 U.S. 178 (1962) ........................................................................................................3

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..........................................................................................3

*GSI Tech.* v. *United Memories, Inc.*,
  2014 WL 1572358 (N.D. Cal. Apr. 18, 2014) .....................................................................5

*Honey Bum, LLC* v. *Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023) ............................................................................................7

*Janda* v. *Madera Cmty. Hosp.*,
  16 F. Supp. 2d 1181 (E.D. Cal. 1998) ...............................................................................8

*Jenni Rivera Enters., LLC* v. *Latin World Enter. Holdings, Inc.*,
  36 Cal. App. 5th 766 (2019) ............................................................................................5

*Mann* v. *Quality Old Time Serv., Inc.*,
    120 Cal. App. 4th 90 (2004) ......................................................................................13

*Miller* v. *Rykoff-Sexton*,
    845 F.2d 209 (9th Cir. 1988) ........................................................................................3

*name.space, Inc.* v. *Internet Corp. for Assigned Names & Numbers*,
    2013 WL 2151478 (C.D. Cal. Mar 4, 2013) ...............................................................10

*name.space, Inc.* v. *Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .....................................................................................10

*Nationstar Mortg. LLC* v. *Presley*,
    2022 WL 1616546 (E.D. Cal. May 19, 2022) ...............................................................6

*Netbula, LLC* v. *Distinct Corp.*,
    212 F.R.D. 534 (N.D. Cal. 2003) ..................................................................................3

*Nevada DeAnza Fam. LP* v. *Tesoro Refin. & Mktg. LLC*,
    474 F. Supp. 3d 1087 (N.D. Cal. 2020) ........................................................................4

*Nevares* v. *San Jose Police Officers Flose*,
    2025 WL 1266906 (N.D. Cal. May 1, 2025) .................................................................3

*Pac. Gas & Elec. Co.* v. *Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) .................................................................................................5

*Peak Health Ctr.* v. *Dorfman*,
    2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ..........................................................7, 8

*Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*,
    360 F. Supp. 3d 994 (N.D. Cal. 2018) ..........................................................................8

*Quelimane Co.* v. *Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ..................................................................................................10

*Red Hat, Inc.* v. *VirtaMove, Corp.*,
    2025 WL 1159869 (N.D. Cal. Apr. 21, 2025) ...............................................................3

*Reudy* v. *Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010) ........................................................................8

*Rincon Band of Luiseno Mission Indians* v. *Flynt*,
    70 Cal. App. 5th 1059 (2021) .......................................................................................6

*RingCentral, Inc.* v. *Nextiva, Inc.*,
    2020 WL 978667 (N.D. Cal. Feb. 28, 2020) ...............................................................13

*Rosen* v. *Uber Techs., Inc.*,
    164 F. Supp. 3d 1165 (N.D. Cal. 2016) ........................................................................8

*Silicon Knights, Inc.* v. *Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ............................................................................9, 10, 11

*Soil Retention Prods., Inc.* v. *Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ..........................................................................................7

*Sybersound Recs., Inc.* v. *UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ....................................................................................................11

*Trindade* v. *Reach Media Grp., LLC*,
   2013 WL 3977034 (N.D. Cal. July 31, 2013) ...................................................................5, 9, 10

*Vascular Imaging Pros., Inc.* v. *Digirad Corp.*,
   401 F. Supp. 3d 1005 (S.D. Cal. 2019) .......................................................................................4

*Waits* v. *Weller*,
   653 F.2d 1288 (9th Cir. 1981) ......................................................................................................3

*Westside Ctr. Assocs.* v. *Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ...................................................................................................8, 11

*ZF Micro Sols., Inc.* v. *TAT Cap. Partners, Ltd.*,
   82 Cal. App. 5th 992 (2022) ................................................................................................12, 13

**Other Authorities**

F.R.C.P. 12(b)(6) .............................................................................................................................3

Restatement (Second) of Torts § 766.......................................................................................5, 10

## INTRODUCTION

Plaintiff Epic Games seeks leave to amend its complaint and add gratuitous claims based entirely on a security feature that has existed for over a decade and was already litigated in *Epic Games Inc.* v. *Google LLC*, No. 3:20-cv-05671-JD: Google's Unknown Sources installation flow. These new claims are not tethered to the core allegations in this case, an alleged agreement with Samsung regarding Auto Blocker. Epic's request should be denied because the proposed First Amended Complaint ("FAC") fails to allege a sufficient factual basis for the proposed claims. According to the FAC, Google is intentionally deploying the Unknown Sources installation flow— a security feature that Epic acknowledges has applied to all forms of direct downloading for the past decade—specifically to interfere with the Epic Games Store. *See* FAC ¶¶ 215, 227, 238. But the proposed FAC does not allege that Google made changes to the Unknown Sources install flow because of, or in order to interfere with, this launch. It is simply implausible that Google deployed the Unknown Sources install flow a decade ago to harm an app store that did not exist at the time. Epic's proposed claims could not survive a motion to dismiss, amendment would be futile, and the Court should deny Epic's motion to amend.

## BACKGROUND

Epic filed its complaint against Samsung and Google on September 30, 2024, alleging that Samsung and Google conspired to turn Samsung's Auto Blocker security feature on by default. Now, Epic seeks leave to amend its complaint to bring four additional claims unrelated to the alleged conspiracy, based instead on Google's decade-old Unknown Sources installation flow.

Epic launched the Epic Games Store on Android on August 16, 2024—after the jury's verdict in *Epic* v. *Google*. FAC ¶ 7. According to the proposed FAC, Google's Unknown Sources installation flow, which featured in *Epic* v. *Google*, is intended to interfere with customers' ability to download the since-launched Epic Games Store or apps within the Epic Games Store. FAC ¶ 10. Of course, the Unknown Sources install flow was well known to Epic at the commencement of the prior *Epic* v. *Google* litigation; it applied to Epic's *Fortnite* launcher then. Unknown Sources thus featured heavily, and was litigated in, *Epic v. Google*. *E.g.*, *Epic Games Inc.* v. *Google LLC*, No. 3:20-cv-05671-JD, ECF No. 341 at ¶¶ 129–32 (discussing and demonstrating

with pictures the steps to download *Fortnite* from Epic's servers). Epic did not bring these claims then.

Here, Epic's proposed FAC ties its new claims to the launch of the Epic Games Store.[1] The proposed FAC alleges that through the Unknown Sources install flow, Google "still" warns users that unknown apps "might be harmful." FAC ¶¶ 10, 69. Epic further alleges that, in maintaining the Unknown Sources install flow as it has existed for the past decade, Google is intending to, and is, "discouraging existing and prospective customers from downloading the Epic Games Store on Android, as well as Epic apps and third-party apps offered on the Epic Games Store," FAC ¶ 151, and that Google is "deterring developers from contracting with Epic to host their games on the Epic Games Store," including because unnamed developers allegedly fear that the Epic Games Store may become "subject to significant frictions" once the injunction (which is currently stayed pending appeal) in *Epic* v. *Google* expires in three years, FAC ¶¶ 87, 152. Finally, the proposed FAC alleges that the warnings about unknown apps, which are built into the Unknown Sources install flow, are false as to the Epic Games Store and the apps within it. FAC ¶¶ 135–36.

Based on these allegations, Epic seeks to add a claim for tortious interference with its contractual relationships with consumers (proposed Count 10), predicated upon two contracts with unnamed existing users of the Epic Games Store and *Fortnite* on other platforms: (1) the Epic Games Store End User License Agreement and (2) the *Fortnite* End User License Agreements (collectively, "EULAs"). FAC ¶¶ 211–17. Epic further seeks to add a claim for tortious interference with Epic's prospective economic relationships with consumers (proposed Count 12), FAC ¶¶ 223–27, and with developers (proposed Count 14), FAC ¶¶ 236–43. Finally, Epic seeks to add a claim for trade libel and commercial disparagement against Google (proposed Count 8).

---

[1] Still, some allegations suggest Epic is seeking to relitigate issues or theories of their claims that could have and should have been brought in the prior litigation. *See* FAC ¶¶ 225-26 (claims related to "apps [downloaded] from Epic's website".). Such theories or claims are subject to claim preclusion or the applicable statutes of limitation, Google will assert such defenses (and reserves all rights to do so) at the appropriate juncture.

1

## **LEGAL STANDARD**

2  Whether to grant a plaintiff's motion for leave to amend a complaint is left to the discretion

3  of the trial court. *Waits* v. *Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981).  In deciding whether to

4  grant leave, a court considers: (1) undue delay, (2) the movant's bad faith or dilatory motive, (3)

5  repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to

6  the opposing party, and (5) futility of the amendment.  *Foman* v. *Davis*, 371 U.S. 178, 182 (1962);

7  *see also Nevares* v. *San Jose Police Officers Flose*, 2025 WL 1266906, at *3 (N.D. Cal. May 1,

8  2025).  All five factors need not be present for leave to be denied; "futility of amendment can, by

9  itself, justify the denial of a motion for leave to amend." *Bonin* v. *Calderon*, 59 F.3d 815, 845 (9th

10  Cir. 1995).[2]  The "legal sufficiency of a proposed amendment is identical to the one used when

11  considering the sufficiency of a pleading challenged under Rule 12(b)(6)."  *Miller* v. *Rykoff-*

12  *Sexton*, 845 F.2d 209, 214 (9th Cir. 1988).[3]  On this posture, the Court must take Plaintiff's

13  allegations as true, but need not accept as true "allegations that are merely conclusory, unwarranted

14  deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

15  (9th Cir. 2008).

16

## **ARGUMENT**

17  **I.     The Proposed FAC Fails To State A Claim For Tortious Interference With Contractual Relationships.**

18  Leave to amend to add a claim for tortious interference with contractual relations should

19  be denied as futile. To state this claim, a plaintiff must plausibly allege five elements: "(1) a valid

20

21  [2] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call
numbers, internal quotations, and citations have been omitted for readability. All emphasis is
22  added unless otherwise indicated.

23  [3] Some courts in this District have noted that denial of leave to amend on futility grounds is "rare"
and opt to "defer consideration of challenges to the merits of a proposed amended pleading until
24  after leave to amend is granted and the amended pleading is filed." *Netbula, LLC* v. *Distinct Corp.*,
212 F.R.D. 534, 539 (N.D. Cal. 2003).  Other courts consider the merits on a motion to amend.
25  *E.g.*, *Red Hat, Inc.* v. *VirtaMove, Corp.*, 2025 WL 1159869, at *4–*6 (N.D. Cal. Apr. 21, 2025)
(denying motion to amend based on futility).  In the interest of efficiency, Google offers these
26  arguments now for the Court's earliest consideration.  Google has no objection if the Court chooses
to defer consideration of whether Epic has stated a claim "until after leave to amend is granted and
27  the amended pleading is filed." *Netbula*, 212 F.R.D. at 539.

28

contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *3500 Sepulveda, LLC* v. *Macy's W. Stores, Inc.*, 980 F.3d 1317, 1325–26 (9th Cir. 2020). The proposed FAC fails to allege facts sufficient to establish any of these elements.

### A.    Epic Cannot Allege Google Had The Required Intent To Disrupt Epic's Contracts.

Epic does not—because it cannot—allege facts showing that Google's "specific purpose was to disrupt" the EULAs, or that Google knew interference with the EULAs was "a necessary consequence of" or "substantially certain to occur" as a result of the Unknown Sources install flow. *Nevada DeAnza Fam. LP* v. *Tesoro Refin. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095 (N.D. Cal. 2020).

As the proposed FAC admits, the Unknown Sources installation flow existed for "**well over a decade**" prior to the launch of the Epic Games Store on Android. FAC ¶ 65. It is implausible that Google could have intended to disrupt the EULAs, when according to the proposed FAC, Google implemented the Unknown Sources install flow (whose purpose is security-related: to protect against potentially "harmful" apps, according to the proposed FAC) more than ten years before the Epic Games Store even existed. *See id.* ¶¶ 65–68. Nor can Epic make any plausible allegation that the implementation and operation of the Unknown Sources install flow was intended to interfere with Epic's contracts with customers based on the future, hypothetical launch of the Epic Games Store, which is fatal to Epic's proposed new claim.

Epic's conclusory allegation that the Unknown Sources install flow is "designed to and does" dissuade consumers is insufficient as a matter of law. FAC ¶ 215. In *Nevada DeAnza Family LP*, the court dismissed a claim of tortious interference with contractual relationships where there existed "alternative business explanations" for the defendant's conduct. 474 F. Supp. 3d at 1095. Unknown Sources warns users of the security risks of direct downloading, FAC ¶ 68, a clear alternative business purpose entirely unrelated to the Epic Games Store or Epic's EULAs. The lack of any facts alleging Google's "specific purpose" to interfere, or "substantial certainty"

- 4 -

of contractual interference, dooms this claim. *Vascular Imaging Pros., Inc.* v. *Digirad Corp.*, 401 F. Supp. 3d 1005, 1011–12 (S.D. Cal. 2019) (dismissing complaint that is "devoid of any facts" in support of the plaintiff's "bare allegations" that the defendant "intended to interfere with the contract").

Because Epic fails to allege that Google had "anything more than generalized knowledge of any contractual relationships," it "likewise fails to allege that" the defendant had the requisite intent to disrupt the contracts. *Trindade* v. *Reach Media Grp., LLC*, 2013 WL 3977034, at *16 (N.D. Cal. July 31, 2013); *Davis* v. *Nadrich*, 174 Cal. App. 4th 1, 10–11 (2009) (defendant was not "sufficiently aware of the details" of that contract "to form an intent to harm it"). Indeed, Epic does not and cannot allege that Google has actual "knowledge of the contract with which [it] is interfering and of the fact that [it] is interfering with the performance of the contract." *Jenni Rivera Enters., LLC* v. *Latin World Enter. Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019) (citing Restatement (Second) of Torts § 766 cmt. i)). Epic alleges only that the EULAs "are public," FAC ¶ 148, and that "Google knows of the contracts between Epic and its contracting customers," *id.* ¶ 214. Because Epic does not allege "anything more than generalized knowledge of" the contractual relationship between Epic and its customers, the claim fails. *Trindade*, 2013 WL 3977034, at *16 (granting dismissal where plaintiff alleged only "generalized knowledge" of plaintiff's contracts with advertisers); *GSI Tech.* v. *United Memories, Inc.*, 2014 WL 1572358, at *7 (N.D. Cal. Apr. 18, 2014) (holding insufficient allegation the defendant knew of non-compete contract because "as an industry participant" the defendant "knows that non-competes are common").

## B. Epic Cannot Allege Google's Conduct Actually Interfered With Its Contracts Or Caused Particularized Damage.

Epic has also failed to meet the other two elements: actual breach and particularized damage. While Epic "need not allege an actual or inevitable breach" of the EULAs, it must at least allege "interference with its performance" under the EULAs. *Pac. Gas & Elec. Co.* v. *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129 (1990). The proposed FAC contains no allegations that

there has been any actual disruption to Epic's (unspecified) obligations under the EULAs—let alone a breach of those obligations. *See* FAC ¶¶ 213–17 (failing to specify any provision of the EULAs was breached or disrupted). Nor are there, nor could there be, any allegations that consumers' performance under the EULAs is disrupted or that consumers breached. This dooms any claim for tortious interference with contractual relationships. *See Centerline Hous. P'ship* v. *Palm Cmtys.*, 2022 WL 247951, at *9 (C.D. Cal. Jan. 12, 2022) (dismissing claim because there was no breach or disruption); *Nationstar Mortg. LLC* v. *Presley*, 2022 WL 1616546, at *5 (E.D. Cal. May 19, 2022) ("Nowhere in the FAC does Nationstar allege that actual breach or disruption of any contract between Nationstar and a third party occurred.").

Instead, Epic alleges that it has "lost . . . revenue from in-app sales it could make to users who attempted to download the Epic Games Store or an app therefrom on their Android device, but failed to complete the process due to Unknown Sources install flow." FAC ¶ 216. But the proposed FAC nowhere explains how users allegedly failing to download the app or the purportedly "lost" revenue from this rises to the level of a disruption or breach of the EULAs, and under controlling California law it does not. *Rincon Band of Luiseno Mission Indians* v. *Flynt*, 70 Cal. App. 5th 1059 (2021), is instructive. In that case, an American Indian tribe with an exclusive contract to offer casino games alleged that operators of other gambling establishments tortiously interfered with that exclusive contract because the tribe had to pay higher costs "for public assistance programs and other community economic offsets" caused by defendants' establishments. *Id.* at 1111. The court dismissed the claim, reasoning that "diverted revenue" was "not an actual breach or disruption of the [tribe's] performance under the gaming compact." *Id.* Like in *Rincon*, the proposed FAC does "not explain how those costs are in any way related to [Epic's] performance" under the contract. *Id.*

Because Epic has failed to allege any actual breach or interference with the EULAs, Epic has not plausibly alleged that it has suffered any particularized damages from resulting Google's alleged interference. *See* FAC ¶¶ 213–17 (no allegation that Epic suffered damages specifically resulting from its alleged breach of the EULAs). A conclusory allegation of "lost revenue,"

1    untethered from any causal link to the alleged breach, is insufficient to state a claim for tortious

2    interference. *Soil Retention Prods., Inc.* v. *Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 960 (S.D.

3    Cal. 2021) (dismissing tortious interference claim where plaintiff alleged it suffered "lost profits,

4    lost sales, and lost opportunity costs"; "such conclusory, threadbare recitals of the elements" fail

5    to adequately allege "facts describing Plaintiff's damages").  To the extent Epic contends that it

6    has suffered damages in the form of the purported "lost revenue" from the terminated downloads

7    of the Epic Games Store or other apps, it has failed to even explain how that lost revenue flows

8    from purported breach or disruption of the EULAs.  *See* FAC ¶ 216.

9    **II.    The Proposed Amended Complaint Fails To State A Claim For Tortious Interference**
10   **With Prospective Economic Relationships**

11   Epic's proposed claims for tortious interference with prospective economic relations—

12   with consumers (proposed Count 12) and with developers (proposed Count 14)—fail to allege

13   sufficient facts to state a claim for similar reasons.  Leave to amend to add these claims should be

14   denied as futile.

15   To state this claim, Epic must plausibly allege "(1) an economic relationship between the

16   plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2)

17   the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

18   designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

19   harm to the plaintiff proximately caused by the acts of the defendant." *Honey Bum, LLC* v.

20   *Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023).  Further, a plaintiff "must plead facts

21   showing that the defendant engaged in conduct that was wrongful by some legal measure other

22   than the fact of interference itself." *Peak Health Ctr.* v. *Dorfman*, 2019 WL 5893188, at *5 (N.D.

23   Cal. Nov. 12, 2019).  Courts also require a plaintiff to show causation by pleading facts

24   demonstrating it is "reasonably probable that the prospective economic advantage would have

25   been realized but for defendant's interference." *Id.*

26

27

28

### A.    Epic Cannot Allege Google's Knowledge Of Any Cognizable Economic Relationship With A Third Party.

The proposed FAC fails to allege a cognizable economic relationship with a third party. Because tortious interference with prospective economic advantage "protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise," courts require a plaintiff to allege interference with "*existing* noncontractual relations." *Westside Ctr. Assocs.* v. *Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996). Moreover, the alleged interference must be with a "*specific and identifiable*" counterparty. *Reudy* v. *Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1123 (N.D. Cal. 2010); *see also Brown* v. *Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1139 (S.D. Cal. 1998) ("Plaintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions.").

Epic does not identify a *single* consumer or developer with whom it had an existing business relationship, and who abandoned that relationship due to the Unknown Sources installation flow. *See, e.g.*, FAC ¶¶ 151–52. Courts routinely dismiss tortious interference claims based on "general allegations of loss of business opportunities with unidentified existing and potential" categories of persons, such as "clients" or "customers." *Peak Health Ctr.*, 2019 WL 5893188, at *6; *see also Westside Ctr. Assocs.*, 42 Cal. App. 4th at 523–28 (rejecting claim alleging tortious interference with "the class of all potential buyers for plaintiff's property"); *Rosen* v. *Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1178–79 (N.D. Cal. 2016) (dismissing tortious interference claim predicated upon taxi driver plaintiffs' loss of unidentified passengers business due to Uber's alleged "fraudulent statements"); *Janda* v. *Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1189–90 (E.D. Cal. 1998) (dismissing tortious interference claim where the physician plaintiff alleged an "economic relationship with his existing patients and potential patients" but failed to "specify the identities of the alleged patients"); *Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1016–17 (N.D. Cal. 2018) (rejecting tortious interference claim predicated upon "lumping together allegations regarding the undifferentiated group of 11,000 Domino's stores worldwide").

*Silicon Knights, Inc.* v. *Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997), is on all fours. There, the plaintiff alleged that the defendant's "commercially disparaging statements about [plaintiff's] technical abilities" "caused customers and potential customers not to purchase video game software" from the plaintiff and "caused other software publishers and distributors not to deal with" the plaintiff. *Id.* at 1307, 1312. The court dismissed the claim because plaintiff did not allege that it "was in the midst of negotiations" with any specific third party who then "pulled out of the negotiations." *Id.* at 1312. Likewise here, Epic alleges only that the "frictions and scare screens . . . deter developers from contracting with Epic" and "discourage existing and prospective customers from downloading the Epic Games Store on Android, as well as Epic apps and third-party apps offered on the Epic Games Store." FAC ¶¶ 151–52. These allegations are materially indistinguishable from those deemed insufficient in *Silicon Knights*.

As a result, the proposed FAC does not and cannot allege that Google had knowledge of any cognizable prospective economic relationship between Epic and its would-be developers and consumers. In *Trindade*, the court dismissed the claim because the plaintiff failed to allege the defendant "had knowledge of any specific relationships" with which the defendant interfered. 2013 WL 3977034, at *16–*17. Instead, the plaintiff alleged only "generalized knowledge" of the plaintiff's business and relationships with publishers. *Id.* at *17. Similarly here, Epic alleges only that "Google knows of these prospective economic relationships between Epic and . . . consumers" and that "Google knew or should have known of the perspective economic relationships between Epic and these developers." FAC ¶¶ 226, 239. This is not sufficient. The purpose of the specific knowledge requirement is to "restrict the class of plaintiffs that can state a claim for this tort," *Trindade*, 2013 WL 3977034 at *17, and permitting a claim to proceed based only such generalized knowledge allegations would impermissibly expand the scope of this tort simply because industry participants have generalized knowledge of other industry participants' business.

**B.      Epic Does Not And Cannot Allege That Google Intended To, And Succeeded In, Actually Disrupting Any Cognizable Economic Relationship**

Epic fails to allege any facts showing that Google either intended to disrupt, or succeeded in disrupting, any economic relationship.  To allege intentional disruption, Epic must plead facts showing that Google "knew that the interference was certain or substantially certain to occur as a result of [its] action." *Quelimane Co.* v. *Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (quoting Restatement (Second) of Torts § 766 cmt. j).

Epic's own case cited in the proposed FAC (¶¶ 224, 237), *name.space, Inc.* v. *Internet Corp. for Assigned Names & Numbers*, shows why Epic fails to allege intentional disruption.  In that case, the district court dismissed plaintiff's tortious interference claims, holding the complaint failed "to allege any intentional actions undertaken by [defendant] ***designed to disrupt*** the relationship Plaintiff had with its clients." 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013). The Ninth Circuit affirmed the dismissal, noting that the plaintiff "does not allege any facts plausibly suggesting" the complained-of activities on the part of the defendant were undertaken "with the intent to breach or disrupt any existing contracts or prospective economic relationships." 795 F.3d 1124, 1134 (2015); *see also Trindade*, 2013 WL 3977034, at *15–16 (because the plaintiff had no knowledge of the specific contract or relationship, the intent element necessarily failed).  Epic similarly makes no allegations that Unknown Sources was "designed to disrupt" its prospective economic relationships.  As explained above, Unknown Sources is a decade-old security feature that applies to *all* direct downloading. *Supra* Section I.A; FAC ¶¶ 65, 67–68.  Epic does not allege that Google altered Unknown Sources in any way in response to the Epic Games Store's launch on Android.  Epic's conclusory allegations are unpersuasive as to how the Unknown Sources feature could plausibly be "designed to disrupt" its prospective economic relationships.

Nor does Epic allege any facts showing actual disruption resulted from Google's conduct.  As with its tortious interference with contract claim, Epic has only alleged that users abandoned downloading its apps, *see* FAC ¶¶ 216, 227, 241, but courts dismiss tortious interference claims where a plaintiff merely alleges a disruption to "its ongoing business and economic relationships

with customers" and not "that it lost a contract nor that a negotiation with a customer failed." *Sybersound Recs., Inc.* v. *UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).  And Epic's allegations that Google's Unknown Sources install flow has caused Epic to lose sales or business with developers "asserts the type of speculative economic relationship disapproved of" by California courts.  *Silicon Knights*, 983 F. Supp. at 1312 (dismissing claim generally alleging that misrepresentations induced distributors not to deal with plaintiffs, without providing facts alleging an actual disruption to negotiations or potential contracts).

### C.    Epic Cannot Allege Damages With Reasonable Certainty

Because Epic has failed to plead a cognizable economic relationship, Epic also has failed to allege facts sufficient to demonstrate economic harm caused by Google's actions.  Epic alleges that the Unknown Sources flow makes the Epic Games Store "less attractive" to prospective app developers and consumers, FAC ¶¶ 138, 152, thus leading to "lost revenue" from app and in-app sales, *id.* ¶¶ 216, 242.  But this "assumes what normally must be proved, *i.e.*, that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference."  *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 523.  "The need to prove damages with reasonable certainty" is "interrelated" with "the need to prove interference with a particular relationship" and requires, for this claim, a plaintiff to plead sufficient facts showing that its alleged damages are not speculative.  *Id.* at 520, 522.

Epic makes no attempt to quantify or even identify the losses it purportedly experienced due to the Unknown Sources install flow's impact on its relationships with consumers or developers.  Epic instead alleges that it has and will lose revenue "from sales of and within apps that would have been distributed on the Epic Games Store but for Google's conduct."  FAC ¶ 242. Epic further alleges that developers "are deterred by the threat that any distribution from the Epic Games Store would again become subject to significant frictions once the [*Epic* v. *Google*] injunction expires," ***three years*** from now.  *Id.* ¶ 87.  Epic thus attempts to plead damages in the form of *unspecified* monetary damages for *unidentified* apps with *unknown* audiences and

*uncertain* revenue-generation capabilities, all based on abstract actions that may or may not occur in three years. These are the kind of speculative harms that fail to state a claim.

**III.    The Proposed First Amended Complaint Fails To State A Claim For Trade Libel.**

Epic's proposed trade libel claim also fails to state a claim because Epic does not sufficiently allege any false statement about Epic. *See* FAC ¶¶ 199–203. Leave to amend to add these claims should be denied as futile.[4]

To state a claim for trade libel, Epic must allege sufficient facts plausibly showing that "(1) the defendant published a statement that tended to disparage the plaintiff's product or property; (2) the statement was provably false; (3) the defendant either knew the statement was false or acted with reckless disregard for its falsity; and (4) the statement caused actual pecuniary damage." *ZF Micro Sols., Inc.* v. *TAT Cap. Partners, Ltd.*, 82 Cal. App. 5th 992, 1002 n.5 (2022).

***First***, Epic fails to allege that Google's Unknown Sources install flow makes *any* statement about Epic, let alone one that disparages Epic. Epic concedes that the allegedly libelous statements in the Unknown Sources install flow occur when a user attempts to "download a third-party store from the web" and "when the user wishes to download an app from that store," and are not specific to the Epic Games Store or to Epic. FAC ¶ 67. Courts routinely hold that where "the statement that is alleged to be injuriously false concerns a group"—here, any third-party store or app from third-party stores—"plaintiffs cannot show that the statements were 'of and concerning them.'" *Blatty* v. *New York Times Co.*, 42 Cal. 3d 1033, 1046 (1986) (collecting cases).

***Second***, Epic fails to adequately allege any false statement, thus failing to adequately allege the second or third elements. Epic contends that the disclosures in the Unknown Sources install flow—that downloads of the Epic Games Store and downloads of apps through the Epic Games Store are "unknown apps" that "might be harmful"—are false and "misleading" because "Google is familiar with Epic's apps and knows they are safe." FAC ¶¶ 68–69, 201. Epic fails to allege

---

[4] This claim is largely identical to a claim Epic brought against Samsung in its September 30, 2024 original Complaint. While the court denied Samsung's motion to dismiss this claim, Google nevertheless urges the Court to deny leave to amend to include this claim for the reasons explained herein.

1    sufficient facts demonstrating that Google was "familiar" with all third-party apps available on the

2    Epic Game Store, let alone that Google "knows" that all those apps are "safe."

3        ***Third***, Epic fails to adequately allege that Google's statements "caused actual pecuniary

4    damage." *ZF Micro Sols.*, 82 Cal. App. 5th at 1002 n.5. The proposed FAC identifies no particular

5    customers or developers who were "dissuaded" by Google's statements, let alone adequately allege

6    how that impact led to Epic incurring actual "pecuniary damages." FAC ¶¶ 138, 200. Instead,

7    Epic alleges only that Google's statements "lead to identifiable instances of users abandoning the

8    installation of Epic apps, resulting in loss of profits that would have resulted from purchases made

9    by those users." *Id.* ¶ 202. But this allegation fails because it does not causally link between

10   Google's alleged statements and Epic's supposed actual pecuniary damage. *Am. Shooting Ctr.,*

11   *Inc.* v. *Secfor Int'l.*, 2015 WL 1914924, at *7 (S.D. Cal. Apr. 7, 2015) (dismissing trade libel claim

12   where plaintiff failed to "allege facts showing that it suffered pecuniary damage" because it was

13   "unclear" if the audience for the alleged injurious statement "was a potential customer and if so,

14   whether [plaintiff] lost [its] business as a result of what [defendant] said"). Epic does not even

15   "identify particular customers and transactions of which it was deprived as a result of the libel."

16   *Mann* v. *Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004); *see also RingCentral,*

17   *Inc.* v. *Nextiva, Inc.*, 2020 WL 978667, at *4 (N.D. Cal. Feb. 28, 2020) (dismissing trade libel

18   claim for failure to "allege specific facts explaining the pecuniary damages plaintiff suffered as a

19   result of the allegedly libelous statement"); *First Advantage Background Servs. Corp.* v. *Private*

20   *Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (dismissing trade libel claim when plaintiff

21   failed to "allege the amount of business it had prior to the defendant allegedly making these

22   statements, how much it had after, or the value of the business").

23   **<u>CONCLUSION</u>**

24       For the foregoing reasons, Google respectfully requests the Court deny Epic's motion for

25   leave to amend its complaint and file the proposed FAC.

26

27

28

1    Dated:  June 13, 2025                    Respectfully submitted,

2                                             */s/ Martha L. Goodman*
                                             Martha L. Goodman

3                                             PAUL, WEISS, RIFKIND, WHARTON
4                                             & GARRISON LLP
                                             2001 K Street, NW
5                                             Washington, DC 20006-1047
                                             Telephone: (202) 223-7300
6                                             Facsimile (202) 223-7420
                                             mgoodman@paulweiss.com

7                                             Karen L. Dunn (*pro hac vice* pending)
8                                             Jeannie S. Rhee (*pro hac vice*)
                                             Jessica E. Phillips (*pro hac vice*)
9                                             DUNN ISAACSON RHEE LLP
                                             401 Ninth Street, NW
10                                            Washington, DC 20004
                                             Telephone: (202) 240-2900
11                                            kdunn@dirllp.com
                                             jrhee@dirllp.com
12                                            jphillips@dirllp.com

13                                            Meredith R. Dearborn (SBN 268312)
                                             PAUL, WEISS, RIFKIND, WHARTON
14                                            & GARRISON LLP
                                             535 Mission Street, 24th Floor
15                                            San Francisco, California
                                             Telephone: (202) 223-7323
16                                            Facsimile (202) 330-5908
                                             mdearborn@paulweiss.com

17                                            *Counsel for Defendant Google LLC*

18

19

20

21

22

23

24

25

26

27

28
                              - 14 -