1  Shaneeda Jaffer (SBN 253449)
   sjaffer@beneschlaw.com
2  Lily A. North (CA 260709)
   lnorth@beneschlaw.com
3  **BENESCH FRIEDLANDER COPLAN &**
   **ARONOFF LLP**
4  100 Pine Street, Suite 3100
   San Francisco, California
5  Telephone: (628) 600-2250
   Facsimile:  (628) 221-5828
6
   Gary A. Bornstein (*pro hac vice*)
7  gbornstein@cravath.com
   Yonatan Even (*pro hac vice*)
8  yeven@cravath.com
   Lauren A. Moskowitz (*pro hac vice*)
9  lmoskowitz@cravath.com
   Michael J. Zaken (*pro hac vice*)
10 mzaken@cravath.com
   **CRAVATH, SWAINE & MOORE LLP**
11 Two Manhattan West
   375 Ninth Avenue
12 New York, New York 10001
   Telephone:  (212) 474-1000
13 Facsimile:  (212) 474-3700

14 *Attorneys for Plaintiff Epic Games, Inc.*

15                    **UNITED STATES DISTRICT COURT**

16                    **NORTHERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18  EPIC GAMES, INC., | Case No. 3:24-cv-06843-JD |
| 19                     Plaintiff, | **PLAINTIFF EPIC GAMES, INC.'S** |
| 20  v. | **REPLY IN SUPPORT OF ITS MOTION TO AMEND THE COMPLAINT** |
| 21  SAMSUNG ELECTRONICS CO.  LTD; SAMSUNG ELECTRONICS AMERICA, | Hon. James Donato |
| 22  INC.; and GOOGLE LLC, | Hearing:   July 9, 2025 |
| 23                     Defendants. |             10:00 AM |
| 24  | Courtroom 11 |

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................. 1

I.    Epic's Tortious Interference Claims Are Not Futile. ........................................................ 2

      A.    Epic Has Adequately Pleaded Individual Relationships with Consumers and Developers. .................................................................................................... 2

      B.    Epic Has Adequately Alleged Knowledge and Intent. ............................................. 4

      C.    Epic Has Adequately Alleged Disruption. .............................................................. 8

      D.    Epic Has Sufficiently Alleged Damages ................................................................. 9

II.    Epic Has Adequately Alleged Trade Libel by Google. ....................................................... 9

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Tek Mech., Inc. v. KHW Servs., Inc.*, 2022 WL 3044815 (S.D. Cal. Aug. 2, 2022) ....................7

*Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988)..................................9

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir.2005) ....................................................5

*AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp 3d 1133 (N.D. Cal. 2019).............................9

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (Cal. 1986).........................................................10

*Code Rebel, LLC v. Aqua Connect, Inc.* 2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ................3

*DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119 (N.D. Cal. 2010)....................................3

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .............................................1

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822 (9th Cir. 2008) ..............................................................................................................................................2

*Fortinet, Inc. v. Forescout Techs., Inc.*, 2021 WL 5565836 (N.D. Cal. Nov. 29, 2021).............3, 5

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) ............................................................................................................................................10

*Goolsby v. Pugett*, 2016 WL 215864 (N.D. Cal. Jan. 19, 2016) .....................................................1

*Gopher Media LLC v. Melone*, 2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) ............................10

*Grateful Dead Prods. v. Sagan*, 2008 WL 11389542 (N.D. Cal. Dec. 18, 2008) ..........................5

*Hynix Semiconductor Inc. v. Toshiba Corp.*, 2006 WL 3093812 (N.D. Cal. Oct. 31, 2006) ..........1

*Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181 (E.D. Cal. 1998) ..........................................4

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) .........................................2

*Lillis v. Apria Healthcare*, 2012 WL 4760908 (S.D. Cal. Oct. 5, 2012) .......................................2

*Logistick, Inc. v. AB Airbags, Inc.*, 2021 WL 2433944 (S.D. Cal. June 15, 2021) ........................3

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ...................................................2

*Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148 (C.D. Cal. 2010) ........................................5

*Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191 (N.D. Cal. 2014) .........................................................7

*Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626 (C.D. Cal. 2021) .................................8

*Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534 (N.D. Cal. 2003) ....................................................2

*Nevada DeAnza Fam. LP v. Tesoro Refin. & Mktg. LLC*, 474 F. Supp. 3d 1087 (N.D. Cal. 2020) .............................................................................................................................................7

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990) .........................................8

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071 (C.D. Cal. 2017)...............3

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994 (N.D. Cal. 2018) .............................................................................................................................................4

*Qwest Commc'ns Corp. v. Herakles*, LLC, 2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ..............3

*Raymat Materials, Inc. v. A & C Catalysts, Inc.*, 2013 WL 5913778 (N.D. Cal. Oct. 31, 2013) .............................................................................................................................................8

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 WL 744038 (N.D. Cal. Mar. 7, 2025) .............................................................................................................................................6

*Red Hat, Inc. v. VirtaMove, Corp.*, 2025 WL 1159869 (N.D. Cal. Apr. 21, 2025).........................1

*Rincon Band of Luiseno Mission Indians v. Flynt*, 70 Cal. App. 5th 1059 (4th Dist. 2021) ..........9

*Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165 (N.D. Cal. 2016).................................................4

*Sarkisov v. Stonemor Partners L.P.*, 2014 WL 12644016 (N.D. Cal. June 25, 2014) ....................1

*Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198 (C.D. Cal. 2001) ....................................5

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244056 (C.D. Cal.) ...........................8

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997)....................4

*Solyndra Residual Trust ex rel. Neilson v. Suntech Power Holdings Co., Ltd.*, 62 F. Supp. 3d 1027 (N.D. Cal. Mar. 31, 2014) .......................................................................................5

*Starbuzz Tobacco, Inc. v. Fantasia Distribution, Inc.*, 2012 WL 12892505 (C.D. Cal. Dec. 5, 2012).................................................................................................................................3

*Transcription Commc'ns Corp. v. John Muir Health*, 2009 WL 666943 (N.D. Cal. Mar. 13, 2009) .......................................................................................................................................5

*Trindade v. Reach Media Group*, 2013 WL 3977034 (N.D. Cal. July 31, 2013)...........................5

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (5th Dist. 1996)..............4

1   Defendants oppose Epic's motion to amend without contesting three of the four factors at
2   issue.  The oppositions concede that (1) amendment will not prejudice Defendants, (2) Epic
3   timely sought leave and (3) Epic is not acting in bad faith.  Defendants thus stake their
4   oppositions on the singular contention that amendment would be futile.  The oppositions are, in
5   effect, premature motions to dismiss and, even as such, they are substantively without merit.
6   Epic's motion for leave to amend the complaint should be granted.

## ARGUMENT

8   The opposition papers pin their hopes entirely on the contention that Epic's amendment
9   would supposedly be futile.  But the Ninth Circuit holds that, in ruling on a motion to amend, "it
10  is the consideration of prejudice to the opposing party that carries the greatest weight".
11  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or
12  a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a)
13  in favor of granting leave to amend."  *Id.*  (emphasis in original).  Accordingly, "[c]ourts rarely
14  deny a motion for leave to amend for reason of futility".  *Hynix Semiconductor Inc. v. Toshiba*
15  *Corp.*, 2006 WL 3093812, at *2 (N.D. Cal. Oct. 31, 2006).  Google effectively concedes as
16  much, stating it "has no objection if the Court chooses to defer consideration" of its merits
17  arguments until after the amended complaint is filed.  (Google Opp'n at 3 n.3.)
18  Samsung, on the other hand, argues that courts "routinely deny amendments based on
19  futility".  (Samsung Opp'n at 4.)  The cases it cites, however, are anything but routine.  They all
20  involve distinguishable and extreme situations in which plaintiffs' proposed amendment either
21  would not salvage an otherwise unviable claim or is clearly barred by statute and precedent.  (*See*
22  Samsung Opp'n at 4 (citing *Red Hat, Inc. v. VirtaMove, Corp.*, 2025 WL 1159869, at *4-6 (N.D.
23  Cal. Apr. 21, 2025) (addressing proposed amended complaint over which the court would lack
24  subject-matter jurisdiction); *Goolsby v. Pugett*, 2016 WL 215864, at *10 (N.D. Cal. Jan. 19,
25  2016) (addressing motion to amend complaint in tandem with summary judgment ruling);
26  *Sarkisov v. Stonemor Partners L.P.*, 2014 WL 12644016, at *4 (N.D. Cal. June 25, 2014)
27  (holding that proposed amendment would require reading a statute contrary to its plain meaning
28  and the court's precedent)).)  These circumstances are not applicable here, and the Court should

thus "not indulge Defendants' attempt to convert Plaintiff's motion to amend into a premature motion to dismiss". *Lillis v. Apria Healthcare*, 2012 WL 4760908, at *1 (S.D. Cal. Oct. 5, 2012); *see also Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 538-39 (N.D. Cal. 2003) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.").

In any event, amendment is not futile. To show futility, Defendants must show that "*no set of facts* can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim". *Lillis*, 2012 WL 4760908, at *1 (emphasis added) (citations omitted); *accord Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). The arguments in opposition fall far short of this demanding standard.

## I. Epic's Tortious Interference Claims Are Not Futile.

Epic alleges two types of tortious interference claims: tortious interference with contracts and tortious interference with prospective economic relationships. A tortious interference with contract claim requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage". *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008). A prospective economic relationships claim involves similar elements but focuses on "economic relationship[s] . . . with the probability of future economic benefit" rather than contracts and requires an additional showing that "defendant's conduct was wrongful by some legal measure other than the fact of interference itself". *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003) (quotations omitted). Epic sufficiently alleged each of these elements.

### A. Epic Has Adequately Pleaded Individual Relationships with Consumers and Developers.

Defendants overstate Epic's burden and understate the factual allegations in the complaint. Samsung suggests that Epic's tortious interference claims fail because they "refer generally to 'consumers' and 'developers' but fail to identify a single such lost consumer or developer customer". (Samsung Opp'n at 5.) Google argues the same. (Google Opp'n at 8.)

1   This court has previously made clear that "identification of a specific customer is unnecessary" to establish a tortious interference claim. *Fortinet, Inc. v. Forescout Techs., Inc.*, 2021 WL 5565836, at *25 (N.D. Cal. Nov. 29, 2021). All that is required are "sufficient facts to allow the Court to plausibly infer some real third-party—named or unnamed—existed and expected to partake in [an economic or contractual] relationship". *Id.* (quoting *Logistick, Inc. v. AB Airbags, Inc.*, 2021 WL 2433944, at *5 (S.D. Cal. June 15, 2021)). Identifying a specific subset or type of consumer or business relationship meets this requirement. *See Code Rebel, LLC v. Aqua Connect, Inc.* 2013 WL 5405706, at *6 (C.D. Cal. Sept. 24, 2013). For example, in *Code Rebel, LLC v. Aqua Connect, Inc.*, the court denied defendant's motion to dismiss tortious interference with prospective economic relationships claims, even though plaintiff did not "specifically identify existing third parties", because plaintiff alleged relationships with "actual and prospective customers" of certain of its software. *Id.* In addition, allegations "that [a plaintiff] had relationships with prospective customers who were in the market for the services [plaintiff] provides" and that those customers "had taken steps toward engaging" those services, have been found to be sufficient at the pleading stage. *Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783347, at *11 (E.D. Cal. Mar. 20, 2008). These are precisely the types of allegations Epic makes. Epic identified relationships with both (1) existing and prospective consumers who use the Epic Games Store ("EGS") or Epic apps and have signed user agreements or are attempting an Android download of Epic apps and (2) app developers whose apps Epic is negotiating to host on EGS for Android. (PAC ¶¶ 148-52, 206, 213, 220, 225, 230, 238.) Requiring the specificity that Defendants demand would perversely make it harder to plead tortious interference claims the more insidious and wide-reaching the interference is.

Defendants' cases are inapposite.[1] For example, Google's opposition suggests that a

---

[1] Both Defendants rely on cases in which plaintiffs made no effort to identify the customers or economic relationship at issue *at all*. (*See* Samsung Opp'n at 5 (citing *Starbuzz Tobacco, Inc. v. Fantasia Distribution, Inc.*, 2012 WL 12892505, at *8 (C.D. Cal. Dec. 5, 2012) (alleging only "customers who were likely to purchase"); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010) (alleging only "valid and existing business relationships"); *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D. Cal. 2017) (alleging only "present and potential future end-user customers")); Google Opp'n at 8

1    nearly 30-year-old case, *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D.
2    Cal. 1997), is "on all fours", but misstates the court's analysis. (Google Opp'n at 9.) Google
3    contends that the *Silicon Knights* court dismissed plaintiff's claim because plaintiff failed to
4    identify a specific third party. *Id.* On the contrary, the plaintiff there had identified Microsoft,
5    Activision and 3DO as third parties by name. *Silicon Knights*, 983 F. Supp. at 1312. But on a
6    motion to dismiss (not to amend), the court found that "the complaint alleges only conclusory
7    statements and no facts in support of its contention that [plaintiff] lost potential customers" from
8    which the court "could infer the probable disruption of an actual economic relationship". *Id.*

### B. Epic Has Adequately Alleged Knowledge and Intent.

Defendants raise two arguments regarding knowledge and intent: one about the specificity of the allegations required, the other about the timing of the tortious interference. Neither is supported by law and both ignore the alleged facts.

*First*, Defendants overstate what Epic must plead about Defendants' knowledge. Samsung suggests that Epic's Proposed Amended Complaint ("PAC") would need to allege that "Samsung knew of specific consumers who would download the store on their Samsung phone or specific developers who wished to place games on Epic's Android [EGS]" and show an "intentional, affirmative act of interference aimed at [those] specific contract[s]". (Samsung Opp'n at 6, 7 (emphasis omitted).) And Google suggests the PAC's knowledge allegations are too "generalized" and insufficient to show that Google's actions were "designed to disrupt" specific relationships. (Google Opp'n at 9-10.)

These arguments ignore that "[i]nterference with contractual relations . . . does not

---

(citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522-23 (5th Dist. 1996) (alleging "purely hypothetical relationship" with "the class of all potential buyers"); *Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1189-90 (E.D. Cal. 1998) (alleging just "future lost patients" (quotations omitted)); *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1178-79 (N.D. Cal. 2016) (alleging "hypothetical future relationship" with the general "passenger public"); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1016 (N.D. Cal. 2018) (failing to establish at summary judgment that prospective relationships at issue were reasonably probable given that expressing interest at a trade show was insufficient to show an economic relationship)).) In fact, one of the cases Google cites—*Janda v. Madera Community Hospital*—held that plaintiff's allegations of contracts with "existing patients" *were* sufficient even though plaintiff failed to "specify the identities of the alleged patients". 16 F. Supp. 2d at 1189.

require a defendant to have actual knowledge of the existence of the contract with which it interferes; it is enough that a defendant know of facts from which it can infer the existence of a contract." *Grateful Dead Prods. v. Sagan*, 2008 WL 11389542, at *7 (N.D. Cal. Dec. 18, 2008). "[T]he Plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted"; it is sufficient "if the defendant knows that contractual relations with a third party exist". *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001); *see also Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1162-63 (C.D. Cal. 2010) ("[G]eneral knowledge that [plaintiff] had economic relationships with its customers is sufficient."); *accord Solyndra Residual Trust ex rel. Neilson v. Suntech Power Holdings Co., Ltd.*, 62 F. Supp. 3d 1027, 1048 (N.D. Cal. Mar. 31, 2014); *Fortinet*, 2021 WL 5565836, at *25.

Similarly, a Plaintiff need not allege a specific intent to interfere with specifically identified contracts. *Sebastian Int'l*, 162 F. Supp. 2d at 1203 ("[I]ntent can certainly be inferred if the defendant knows that contractual relations with a third party exist."). "[T]he Ninth Circuit has . . . stated that '[w]hen the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship.'" *Transcription Commc'ns Corp. v. John Muir Health*, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (quoting *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005)).[2]

The PAC sufficiently alleges that Samsung and Google knew that Epic intended to distribute its applications to consumers outside the Google Play Store or Galaxy Store and that Epic intended to launch a store on Android carrying apps from third-party developers. (PAC ¶¶ 87, 106, 118, 147-52.) Samsung and Google were aware of Epic's contracts with users of Epic's applications and its contracts with developers whose apps would be distributed on EGS. (PAC ¶¶ 147-52.) The PAC also alleges that Google and Samsung were aware of the effects

---

[2] The Magistrate Judge decision on which Google relies, *Trindade v. Reach Media Group*, 2013 WL 3977034 (N.D. Cal. July 31, 2013), is not to the contrary. While it faulted the plaintiff for "not alleg[ing] that [the defendant] had knowledge of a specific relationship," the plaintiff had relied on nothing other than its "reputation" and "position" in the relevant industry. *Id.* at *15.

Auto Blocker and Unknown Sources would have on these prospective and actual contracts. (PAC ¶¶ 87, 102-03, 147-52.) Courts have found far less specific allegations sufficient to allege knowledge and intent. *See, e.g.*, *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2025 WL 744038, at *17 (N.D. Cal. Mar. 7, 2025) ("[Defendant] is aware of these relationships at least because [defendant] attempts to sell its [products] to those same buyers.").

*Second*, Defendants argue that they did not have the requisite knowledge or intent, as they acted prior to the launch of EGS on Android. (*See* Samsung Opp'n at 5-7; Google Opp'n at 4-5.) These arguments ignore the PAC's well-pleaded allegations that Defendants were aware of the effect Auto Blocker would have on Epic at the time of Samsung's initial decision because they were aware of Epic's plans to launch EGS on Android from public testimony provided by Epic during *Epic v. Google*. (*See* PAC ¶ 87.) Defendants were also long aware of Epic's efforts to encourage downloads of *Fortnite* and its other apps through direct downloading from the web even before releasing EGS. (*Id.* ¶ 150.)

But even setting aside these allegations, Defendants' arguments mischaracterize the tortious act at issue. They assume that Defendants' knowledge is relevant only when they first launched Auto Blocker and Unknown Sources. Not so. Defendants continue those misleading practices to this day, with knowledge of the actual and prospective contracts at issue. That is ongoing tortious interference. It is thus incorrect to suggest "the only affirmative act of alleged interference by Samsung predates" the release of EGS (Samsung Opp'n at 7), as the PAC alleges continuing acts of interference with existing and prospective contracts (PAC ¶¶ 150-52). Samsung continues to release new devices on which Auto Blocker is set to "on" by default and Auto Blocker continues to display misleading scare screens to Epic's existing and prospective consumers. Auto Blocker interferes with those consumer relationships by preventing the installation of apps from any source other than the Google Play and Samsung Galaxy Stores and interposing misleading scare screens to steer consumers back to Samsung's preferred app stores.

The PAC similarly alleges that Google continues to tortiously interfere by deploying scare screens in Unknown Sources. (PAC ¶¶ 41, 87.) Regardless of when Google first implemented Unknown Sources, Google continues to require Android OEMs to implement it,

knowing full well how it interferes with Epic's relationships with consumers and developers. (PAC ¶¶ 87, 130 (Google's CEO admitted under oath that, with more steps in a user flow, users become less likely to complete that flow).) Google persisted in this course of action after it learned of Epic's intent to release the EGS on Android. (PAC ¶ 87.) The PAC alleges that Google knew the Unknown Sources would interfere with Epic's actual and prospective contracts and other business relationships "as a necessary consequence" of how it functions (Google Opp'n at 4 (quotations omitted)), but continued deploying it anyway.[3]

Google's opposition also argues that the PAC's allegations do not meet the intent requirement because Google's implementation of Unknown Sources has "alternative business explanations". (Google Opp'n at 4.) Not only does this argument ignore clear allegations to the contrary (PAC ¶¶ 215, 227, 24), it also ignores precedent that the intent requirement can "be satisfied if the actor does not act for the purpose of interfering with the contract" as long as the actor knows the interference is "substantially certain to occur". *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014) (quotations omitted). Google's reliance on *Nevada DeAnza Fam. LP v. Tesoro Refin. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095 (N.D. Cal. 2020) is misplaced. There, the court held that the plaintiff could show *neither* "specific purpose" (because there were "alternative business explanations") *nor* that interference was a known necessary consequence of the defendant's action or substantially likely to occur. *Id.* Further, the plaintiff could allege "no apparent benefit" for the defendant to engage in the interference. *Id.* By contrast, the PAC articulates both that interference benefits Google—by reducing competition for the Play Store (PAC ¶ 72)—and that Google is aware of how Unknown Sources interferes with Epic's contracts and business relationships (*id.* ¶¶ 87, 147-52). Thus, Defendants' arguments "are more appropriate on a motion for summary judgment when the record is more fully developed". *A-Tek Mech., Inc. v. KHW Servs., Inc.*, 2022 WL 3044815, at *9 (S.D. Cal. Aug. 2, 2022), *on reconsideration in part*, 2022 WL 18635745 (S.D. Cal. Oct. 13, 2022).

---

[3] Google's opposition vaguely adverts to claim preclusion objections but does not press them or provide support. (Google Opp'n at 2 n.1.) Epic will address any such arguments when squarely presented.

### C. Epic Has Adequately Alleged Disruption.

The oppositions also wrongly contend that Defendants' conduct was not tortious because, even if it materially interfered with Epic's actual and prospective contracts, their conduct did not create an absolute block. Samsung argues that "Epic fails to allege actual disruption because Auto Blocker is an optional feature that consumers can turn off"; that is to say, it imposes "friction" rather than blocking every possible use of an alternative distribution method. (Samsung Opp'n at 7.) Similarly, Google asserts that "the proposed [amended complaint] nowhere explains how users allegedly failing to download the app or the purportedly 'lost' revenue from this rises to the level of a disruption or breach of" Epic's contracts with consumers. (Google Opp'n at 6.)

The law does not require total breach or complete prevention of the plaintiff's relationship with a third party. It is enough to allege "[m]ere 'disruption of the contractual relationship'" to satisfy this element. *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021). A contractual relationship is disrupted "if plaintiff's performance is made more costly or burdensome". *Raymat Materials, Inc. v. A & C Catalysts, Inc.*, 2013 WL 5913778, at *2 (N.D. Cal. Oct. 31, 2013); *see also Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 592 (Cal. 1990) (same). This requirement is also satisfied if the defendant's conduct "interferes with the contracting parties' expectations regarding their relationship, making the contract less valuable to the plaintiff (either by increasing its obligations *or* decreasing the benefit it expects in return)". *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244056, at *35 (C.D. Cal.).

The PAC alleges that the performance of Epic's contracts with consumers and developers has been frustrated on both ends by Auto Blocker and Unknown Sources. Consumers are hampered in downloading Epic's apps, preventing contracts from being formed and making it more expensive for Epic to secure those relationships. (PAC ¶ 151.) These reduced downloads impede Epic's ability to secure and maintain developer relationships. (*Id.* ¶ 152.) Epic suffers reduced value from these contractual relationships because it receives reduced profits from consumers and developers. (*Id.* ¶¶ 151-52, 209, 216.) These allegations regarding lost profits

are not conclusory or speculative: the PAC alleges that Defendants' behavior reduces the profits Epic would have otherwise earned through downloads of *Fortnite* or other EGS apps and through developer contracts on EGS. (*Id* ¶¶ 146-52.)

### D. Epic Has Sufficiently Alleged Damages.

Google's opposition brief also argues that lost revenue is insufficient to satisfy the "actual damages" standard. (Google Opp'n at 6.) This mistaken reading of the law relies on a misinterpretation of *Rincon Band of Luiseno Mission Indians v. Flynt*, 70 Cal. App. 5th 1059 (4th Dist. 2021). (Google Opp'n at 5-6.) Google asserts that *Rincon* stands for the proposition that "lost" revenue does not rise to the level of disruption or breach needed for tortious interference. (*Id.* at 6.) *Rincon* cannot support that proposition. The *Rincon* court acknowledged that it is sufficient to allege that "[d]efendants made it more costly and burdensome for the [plaintiff] to operate" under the contract allegedly interfered with. *Rincon*, 70 Cal. App. 5th at 1111. The plaintiff in *Rincon* failed to meet that standard, however, because the operative complaint alleged expenses caused by defendants that were unrelated to the contract allegedly interfered with—*i.e.*, having to pay "disproportionate amounts for public assistance programs and other community economic offsets". *Id.* (emphasis omitted). The lost revenues the PAC alleges arise from the very contracts with consumers and prospective developers that Defendants are interfering with. (PAC ¶¶ 151-52.)

## II. Epic Has Adequately Alleged Trade Libel by Google.

"Trade libel is defined as 'an intentional disparagement of the quality of property, which results in pecuniary damage.'" *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). "A trade libel claim requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp 3d 1133, 1154 (N.D. Cal. 2019). Epic alleges each of these elements. (PAC ¶¶ 132-38.)

Google's trade libel arguments are essentially identical to those made by Samsung in its motion to dismiss Epic's trade libel claims for Auto Blocker's false statements. (Dkt. 49, Mot. to Dismiss by Samsung Defs. at 14-15.) Epic's opposition to Samsung's motion to dismiss discussed why these arguments are inapposite as a matter of law (Dkt. 61, Pl. Epic Games, Inc.'s

1  Consolidated Opp'n to Defs.' Mot. to Dismiss at 23-24) and this Court already declined to
2  dismiss Epic's claims on these grounds (Dkt. 69, Apr. 3, 2025 Minute Entry).  Google makes no
3  effort to show why its arguments should fare any differently from Samsung's.

4  *First*, Google's opposition argues that Epic's trade libel claim fails because the Unknown
5  Sources flow does not make any statement about Epic specifically.  (Google Opp'n at 12.)
6  However, as the PAC alleges, Google warns users attempting to download Epic's apps that the
7  apps are "unknown" and may "put [their] phone and data at risk".  (PAC ¶ 10.)  It is sufficient as
8  a matter of law that these statements refer to Epic "by reasonable implication".  *Blatty v. New
9  York Times Co.*, 42 Cal. 3d 1033, 1046 (Cal. 1986).  *Second*, Google's opposition asserts that its
10 scare screens do not make false statements because the PAC fails to allege that Google was
11 "familiar with all third party apps available on EGS, let alone that Google knows that all those
12 apps are safe".  (Google Opp'n at 13.)  However, this argument ignores that the PAC alleges
13 that, to this day, Unknown Sources states that an app is "unknown" even if Google must know of
14 the app because it has also been or is distributed on the Google Play Store.  (PAC ¶ 99.)  *Third*,
15 Google's opposition claims that the PAC fails to allege proper damages because it does not
16 identify "particular consumers or developers".  (Google Opp'n at 13.)  However, such
17 particularity is not required when plaintiffs "proceed on a theory of loss of market or general
18 business loss where they can plead the loss with reasonable certainty and eliminate other
19 causes".  *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *10 (S.D. Cal. Dec. 19, 2023);
20 *see Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *5-6 (E.D. Cal. Aug.
21 11, 2009).  The PAC does so by alleging lost profits from identifiable instances of users
22 abandoning installation of Epic's apps because of Unknown Sources.  (PAC ¶ 202-03.)

## CONCLUSION

24 Neither Google's nor Samsung's opposition argues that Epic's amendment is untimely,
25 made in bad faith or in any way prejudicial.  Defendants' futility arguments fail the high standard
26 for opposing leave without a showing of prejudice because the PAC alleges more than enough
27 facts to support every element of the new tortious interference and trade libel causes of action.
28 Therefore, Epic respectfully reaffirms its request that the Court grant its motion to amend.

Dated: June 20, 2025

Respectfully submitted,

By:   */s/ Gary A. Bornstein*
        Gary A. Bornstein

**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**

Shaneeda Jaffer (SBN 253449)
sjaffer@beneschlaw.com
Lily A. North (CA 260709)
lnorth@beneschlaw.com
100 Pine Street, Suite 3100
San Francisco, California
Telephone: (628) 600-2250
Facsimile: (628) 221-5828

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com

Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*