Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
jphillips@dirllp.com
mgoodman@dirllp.com

Meredith R. Dearborn (SBN 268312)
DUNN ISAACSON RHEE LLP
345 California Street
San Francisco, CA 94104
Telephone: (202) 240-2900
mdearborn@dirllp.com

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EPIC GAMES, INC.,

*Plaintiff*,

vs.

SAMSUNG ELECTRONICS CO. LTD; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC,

*Defendants*.

Case No. 3:24-cv-06843-JD

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: September 11, 2025
Time: 10:00 a.m.
Dept.: Courtroom 11, 19th Floor
Judge: Hon. James Donato

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE FAC SHOULD BE DISMISSED AS BARRED BY CLAIM PRECLUSION. ..... 2

- A. Epic's Claims Share The Same Transactional Nucleus As *Epic v. Google*. ..... 2
- B. The Other Factors for Claim Preclusion Are Also Met. ..... 4

II. THE FAC FAILS TO STATE A TRADE LIBEL CLAIM, DOOMING ITS TORTIOUS INTERFERENCE CLAIMS. ..... 6

III. THE FAC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT. ..... 8

IV. THE FAC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS. ..... 9

## INTRODUCTION

Epic attempts to avoid claim preclusion by arguing that it is solely challenging "later-occurring conduct" and "new, ongoing harm." Dkt. 102 ("Opp.") 1. But Epic pleads ***no new conduct or harm***, making this case distinguishable from every case cited in its Opposition. Epic does not limit its claims or factual support to "later-occurring conduct," and relies extensively on the trial record from *Epic v. Google*. In this case, Epic seeks to redress the same harm it alleged in *Epic v. Google,* both as to downloads from its website and related to the Epic Games Store, arising from the same conduct, Unknown Sources, that it challenged in *Epic v. Google*. *See* Dkt. 99-1, ¶¶ 19, 94-103; Dkt. 99-7. Epic's claims here therefore accrued—and could have been sued upon—at that time. Claim preclusion prevents Epic from suing under different legal theories in order to pursue relief it did not request (damages) or failed to obtain (specific injunctive relief related to Unknown Sources) in *Epic v. Google*. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.,* 590 U.S. 405, 416 n.3 (2020) ("claim preclusion does apply to a later, standalone suit seeking relief that could have been obtained in the first").

Epic maintains that its "decision not to bring trade libel and tortious interference claims as part of [*Epic v. Google*]" does not mean "that Epic has lost the right to bring such claims for all time." Opp. 5. That is exactly what claim preclusion means; it "bars a party in successive litigation from pursuing claims that were raised ***or could have been raised*** in a prior action," thereby conserving "judicial resources" and fostering "reliance on judicial action." *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019). The claims should be dismissed.

Nor does Epic overcome the alternative bases to dismiss. It does not meaningfully contend with the implausibility of Google implementing Unknown Sources to deride or interfere with Epic's business years before Epic even offered apps on Android, let alone before it launched the Epic Games Store on Android. And Epic does not—and cannot—adequately allege damages for any of its claims, given the heightened pleading requirement for trade libel under Rule 9(g) and the speculative nature of its purported damages. For these and other pleading failures, Epic's trade libel and tortious interference claims should be dismissed.

## ARGUMENT

**I. The FAC Should Be Dismissed As Barred By Claim Preclusion.**[1]

"Claim preclusion bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action," and requires (1) an identity of claims, (2) a final judgment on the merits, and (3) identical parties. *Media Rights*, 922 F.3d at 1020. Epic does not contest that identity of parties and final judgment on the merits are met. Opp. 4-9. Epic's FAC involves identical claims as *Epic v. Google* and should be dismissed as barred by claim preclusion.

**A. Epic's Claims Share The Same Transactional Nucleus As *Epic v. Google*.**

Epic asserts this case does not share the same transactional nucleus as *Epic v. Google* because "the conduct at issue is severed in time from the conduct in" *Epic v. Google*. Opp. 5. The relevant conduct—*Google's conduct*—is not severed from *Epic v. Google*, as demonstrated by Epic's own FAC, and the trial record of which the Court can take judicial notice (which Epic did not oppose). Dkts. 99, 99-1 through 99-18. Epic will rely on Google's design and implementation of Unknown Sources, its alleged reasons for doing so, and its purported impact to establish its claims here, just as it did in *Epic v. Google.* Epic alleges no new conduct on Google's part. The only change Epic alleges since *Epic v. Google* is on ***Epic's*** part—the launch of the Epic Games Store on Android in August 2024. Dkt. 98 ("MTD") 4. But Epic does not limit its claims to the launch of EGS on Android.[2] And although Epic cannot decide which period applies to its new claims as the "new" conduct (it points to the statute of limitations period of "two years" (Opp. 6 n.2), after "the jury reached its verdict" (*id*. 1), "after the filing of the operative complaint" in Epic *v.* Google (*id*. 6), "after the verdict and injunction" (*id*. 5), and "after [*Epic v. Google*] was filed" (*id*. 5)), under any of these time periods, the claims all rely on the same transactional nucleus of

[1] Contrary to Epic's assertion, courts routinely grant Rule 12 dismissal based on claim preclusion. *E.g.*, *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Whyte Monkee Prods. LLC v. Netflix, Inc.*, 757 F. Supp. 3d 1025, 1029 (N.D. Cal. 2024); *Glaude v. Deutsche Bank*, 2024 WL 664806, at *1 (N.D. Cal. 2024). Epic's cited case acknowledges that 12(b)(6) dismissal is proper "where the court can discern from the face of the pleadings that an affirmative defense applies." *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1177 (E.D. Cal. 2008).

[2] At a minimum, Epic's claims for damages could only possibly survive preclusion if Epic is tied to, and limited by, the launch of the Epic Game Store on Android in August 2024. And if that is the outcome, Epic should not be permitted to pursue discovery untethered to that narrow time period, nor to pursue injunctive relief given that it did in fact pursue that in *Epic v. Google*.

fact and have already accrued.

Epic also argues that its claims do not share the same transactional nucleus as *Epic v. Google* because a "different incident[] of 'accrual'" occurs every time "a user abandons a download" or "developer declines to pursue [] distribution" on the Epic Games Store (web or Android version—Epic does not specify) due to Unknown Sources. Opp. 6-7. That is not the law. The transactional nucleus analysis is "most concerned with the facts or events from which the alleged harms arose." *Media Rights*, 922 F.3d at 1027. Epic's own allegations concede that the harms alleged here arose from the same "facts or events" litigated in *Epic v. Google*. *E.g.*, FAC ¶¶ 10 ("Google also ***continues*** to impose frictions on direct downloads through its Unknown Sources flow"), 62, 73; *see also* Opp. 11, 13. Epic cites *Media Rights* to argue that claim preclusion does not apply to causes of action that "were not in existence and could not have been sued upon" in the prior action, Opp. 5, but that misses the point. As *Media Rights* and Epic's other cited cases show, Epic's claims ***were*** in existence and ***could*** have been sued upon in *Epic v. Google*. Tellingly, Epic does not cite a single case where claim preclusion was denied when the defendant's allegedly wrongful conduct was unchanged and remained identical to the prior lawsuit. Each involved new alleged wrongdoing ***by the defendant*** following the previous case. *Lucky Brand*, 590 U.S. at 414-15 (defendant infringed different trademarks after prior suit); *Media Rights*, 922 F.3d at 1023 (under copyright-specific separate accrual rule, "the infringer" committed infringement with each sale of infringing products after prior suit); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1038-39 (9th Cir. 2017) (in employment retaliation case, defendant rejected plaintiff's application after prior suit); *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 952-53 (9th Cir. 2002) (in environmental case, defendant released water under a plan adopted several years after prior suit).

The law on accrual only underscores this point. The parties agree that claims accrue upon "the occurrence of the last element essential to the cause of action." Opp. 6; *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.4th 1185, 1191 (2013). But Epic applies this rule completely incorrectly, and cites no case applying the rule as Epic would have it. Where, as here, the last element to occur is harm, a claim accrues upon "the maturation of perceptible harm," *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal App. 4th 882, 886 (2000), even if "some damage continued to

occur or be discovered that might have increased the amount of damages." *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 72 (2021).[3] And Epic does not assert that any exception applies that would allow for individual instances of accrual with each alleged additional harm.[4] Epic's allegations in 2020 belie its assertion that claims related to Unknown Sources are just accruing now: at the time Epic filed its first complaint in *Epic v. Google*, it already alleged that it had suffered the requisite harm due to Unknown Sources both as to downloads from its website and related to the Epic Games Store.[5] *See* Dkt. 99-1, ¶¶ 19, 26-27, 94-103. Epic's claims had thus already accrued, and are now precluded. If the rule were otherwise, claim preclusion would never prevent a party from claiming a new amount or extent of damages from harm already detected and sued upon.

**B. The Other Factors for Claim Preclusion Are Also Met.**

Although Court's inquiry could end there, *Media Rights*, 922 F.3d at 1028-29, each of the other factors for identity of claims is met as well, and Epic has not shown otherwise.

***Impairment of rights or interests:*** The outcome of *Epic v. Google* is "the full measure of relief to be accorded" on claims Epic could have brought in that suit. *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986). Epic asked for a remedy specific to Unknown Sources, Dkt. 99-12, at 4-5, and the Court's injunction did not include Epic's proposed terms. Opp. 3. Epic argues

---

[3] Epic's claim for injunctive relief has similarly accrued. Epic cannot plausibly argue it is unique to downloads since the *Epic v. Google* jury verdict. Having failed to secure injunctive relief specific to Unknown Sources under one legal theory, it cannot keep suing under different theories in the hopes that the Court will eventually grant that same remedy. *See Lucky Brand*, 590 U.S. at 416 n.3 ("claim preclusion does apply to a later, standalone suit seeking relief that could have been obtained in the first").

[4] Nor could it: neither of California's "continuing wrong exceptions" could apply here. The "continuous accrual" doctrine does not apply, as Epic does not and cannot allege a "periodic, recurring obligation," *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1083-84 (N.D. Cal. 2016) (collecting cases), and the "continuing violation" doctrine, which treats a "series of wrongs" as "accruing for all of them upon commission or sufferance of the last of them" does not apply here, where Epic alleges just one wrong—unchanged Unknown Sources. *See Aryeh*, 55 Cal.4th at 1192.

[5] Epic does not argue that only harm connected to Unknown Sources' alleged effect on consumers (not developers) was litigated in *Epic v. Google*, nor could it. *E.g.*, Dkt. 99-2 ¶¶ 29 ("Epic, which distributes apps through its own store to users of personal computers, would open a store to compete with Google's and offer developers more innovation. . ."), 30 ("Google's anti-competitive conduct has injured Epic, both as an app developer and as a potential competitor in app distribution"). Even if that were true–which it is not–it could not save Epic's claims for tortious interference with contractual and prospective economic relationships with consumers (Counts 10 and 12), and the remaining claims for trade libel and tortious interference with prospective economic relationships with developers (Counts 8 and 14) must be limited to EGS and the period after its launch on Android on August 16, 2024.

that allowing these claims to go forward cannot impair any rights or interests because Google was "the losing party" in *Epic v. Google*, Opp. 8, but claim preclusion also applies to the winner. *Lucky Brand*, 590 U.S. at 412 (if plaintiff "wins," it "cannot bring a second independent action for additional relief"); *id.* at 416 n.3 ("claim preclusion does apply to a later, standalone suit seeking relief that could have been obtained in the first"). Epic mischaracterizes the lone case it cites, which found that the judgment in the prior case did have preclusive effect as to "any claims [plaintiff] may bring involving conduct by the [defendant] prior to the date of the judgment." *Clark v. Yosemite Community College Dist.*, 785 F.2d 781,789 (9th Cir. 1986).

***Same evidence:*** Epic argues that "potential overlap" in evidence is "entirely speculative." The FAC demonstrates otherwise. Epic repeatedly cites evidence from *Epic v. Google* to support its trade libel and tortious interference claims. Opp. 11, 13. Epic has no response to Google's highlighting of the actual same evidence in the prior case and also alleged in this case. *E.g.*, Dkt. 99-4, at 159:1-7 (Epic's opening arguing that Google called Epic "unknown" even though it "knew exactly who Epic was"); Dkt. 99-6, at 2030:22-2031:8 (Epic CEO testifying about users and developers with whom Epic would like to form relationships through EGS on Android); Dkt. 99-9, at 3357:13-3358:4 (Epic's closing describing trial evidence of users who abandoned downloads when they "hit those warning screens"), 3384:16-21 (Epic's closing describing harm to EGS); *see also, e.g.*, FAC ¶ 148 (alleging "existing contractual relationships" that pre-date EGS on Android). Epic's purported rule that the claims must have "the same legal elements," Opp. 8, is not the law, is not supported by the case it cites, *Evans v. Cal. Comm'n on Peace Officers Standards & Training*, 2023 WL 8091823, at *8 (E.D. Cal. 2023), and would make it impossible for a claim to be precluded by a prior action if predicated on a different legal theory with different elements, *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995) ("seeking new remedies under a new legal theory" is barred by claim preclusion).

***Infringement of the same rights:*** Epic states that the rights at issue here are "its right to be free from harm to its reputation" and its right "to enter into or enhance economic relationships with consumers and developers without interference." Opp. 9. Epic argued for both of these claimed rights as part of *Epic v. Google*. *E.g.*, Dkt. 99-4, at 159: 1-7; Dkt. 99-6, at 2030:22-2031:8;

Dkt. 99-9, at 3357:13-3358:4. Epic acknowledges as much when it points to its own trial exhibits from *Epic v. Google* to show that "Unknown Sources had impeded EGS from expanding to Android." Opp. 13. *See Media Rights*, 922 F.3d at 1029 (factor favored preclusion where the present case concerned a right that was a subset of the broader right at issue in the prior case).

**II. The FAC Fails To State A Trade Libel Claim, Dooming Its Tortious Interference Claims.**[6]

Epic does not dispute that the Unknown Sources statements say nothing specific to Epic, its apps, or its game store. Instead, Epic argues that, because a user sees the Unknown Sources warnings when they attempt to download a specific app, the user then associates the warnings with Epic as the source of the app by "reasonable implication." Opp. 10. But the law requires Epic to allege the statements are "of and concerning" Epic by "clear implication," because courts limit the claim only to "those who are the direct object of criticism." *Blatty v. New York Times Co*., 42 Cal. 3d 1033, 1044 (1986). Epic does not allege any facts plausibly showing why there is "clear implication" as its cited case requires, particularly in light of Epic's allegation that Unknown Sources applies to all sideloaded apps and app stores. FAC ¶¶ 66-68. And Epic ignores the California Supreme Court's holding that a statement cannot be libelous when it—as Epic's own allegations show—refers to a group of more than 25. *Blatty*, 42 Cal. 3d at 1046.

Epic likewise fails to allege that any statement is "provably false." *ZF Micro Sols., Inc. v. TAT Cap. Partners, Ltd.*, 82 Cal. App. 5th 992, 1002 n.5 (2022). Epic asserts that the warning that "installing apps from this source may put your phone and data at risk" is false because "Google knows that EGS is a reputable and safe store," relying on allegations about Google's alleged knowledge of EGS prior to the launch on Android. Opp. 10; FAC ¶ 134. There is nothing "provably false" about the statements, which do not state EGS or any app is unsafe; they generically state that apps downloaded in that circumstance "may" pose risks. FAC ¶ 134.

Next, Epic's failure to plead particularized damages is not saved by Epic's assertion that it is proceeding on a theory of "loss of market" based on "consumers abandoning installation of its apps." Opp. 10-11. Epic nowhere acknowledges that it is required by Rule 9(g) to "specifically

[6] In noting the Court did not dismiss the trade libel claim against Samsung, Epic ignores that the Court granted Google permission to "renew [its] challenges to the sufficiency of Epic's pleading in [a] 12(b)(6) motion[]." Dkt. 94.

state[]" its damages, as its own cited case demonstrates. *Franklin Fueling Systems, Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *5, 6 (E.D. Cal. 2009) (plaintiff pled particularized damages under Rule 9(g) because it alleged "decreased market share from 95% to 50%-70%" as a result of the alleged libel). Because Epic "alleges special damages based on a general loss of customers," its claim must be dismissed because it has not alleged any "facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such loss in sales were the natural and probable result of such publication." *Id.*; *see also, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4-5 (C.D. Cal. 2014) (dismissing trade libel claim where only factual allegation on damages was a "conclusory statement" that "Plaintiffs lost sales, market share, and customer goodwill"); *GOLO, LLC v. Higher Health Network, LLC*, 2019 WL 446251, at *11 (S.D. Cal. 2019) (dismissing trade libel claim for failure to sufficiently allege pecuniary loss); *New.Net, Inc. v. Lafasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004) (same); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1046-47 (C.D. Cal. 1998) (same).

The handful of speculative allegations Epic relies on do not meet that standard. They assert only that there are "identifiable instances of users abandoning the installation of Epic apps, resulting in loss of profits that would have resulted from purchases made by those users" and that this "also harm[s] Epic's profits made via distribution of third-party apps and its relationships with developers." FAC ¶¶ 202-203. The only specific number that Epic can point to in the FAC refers only to a 35% "drop off" in ***direct downloads*** of Fortnite from the web, based on the trial record from *Epic v. Google*. FAC ¶ 130; *see also* Dkt. 99-9, at 3357:17-24 (Epic's closing stating that Professor Bernheim testified to a "35 percent" drop-off in Fortnite installs due to Unknown Sources). This allegation does not specify any loss in revenue as to Fortnite, and says nothing as to Epic's other apps or the Epic Games Store or loss of revenue from EGS on Android in particular. And, contrary to the requirement to plead losses "***subsequent*** to the publication" of the alleged trade libel, *Franklin Fueling*, 2009 WL 2462505, at *5, none of Epic's allegations pertain to the post-*Epic v. Google* period that Epic claims this case is about.

Last, Epic concedes that its claims for tortious interference require independently wrongful

conduct, and alleges no such conduct other than the alleged trade libel. Opp. 11, 15. Because the claim for trade libel fails, so too do all of Epic's tortious interference claims.

## III. The FAC Fails To State A Claim For Tortious Interference With Contract.

***Intent***: Epic does not contest that it failed to allege Google had a specific purpose to disrupt Epic's contractual relationships through Unknown Sources. Epic cites *Moore v. Apple* to argue that Google need not "act for the purpose of interfering with the contract" as long as it knows the interference is "substantially certain to occur," Opp. 14, but the court in *Moore* found that standard met because the plaintiff alleged detailed facts that would establish the defendant's knowledge of the specific contract, the plaintiff's rights under that contract, and how its alleged conduct would interfere with those contractual rights. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203-04 (N.D. Cal. 2014) (plaintiff alleged, among other things, that "[Defendant] knew about the undelivered messages problem, [and of plaintiff's] contractual right to send and receive text messages, and still knowingly failed to alert her"). In contrast, Epic points to a single conclusory allegation that "Google is aware of these contractual relationships," FAC ¶ 148, with no allegations of supporting facts or that Google was aware of contractual rights or interference. Indeed, Epic has not identified what contractual rights were allegedly interfered with, nor can it, as those at-will contracts give Epic no right to money from consumers.

Epic also provided no case suggesting that Google's intent to tortiously interfere with Epic's contracts may be inferred based on the same Unknown Sources install flow that had existed for years before Epic ever began offering apps on Android devices. Epic's assertion that "alternative business explanations are not a proper basis for a motion to dismiss," Opp. 14, is incorrect and misses the point. The fact that there are alternative "explanations" contained within Epic's own FAC—that Unknown Sources warns users of real security risks (FAC 68) – means that the intent element is not sufficiently or plausibly alleged. *Nevada DeAnza Fam. LP v. Tesoro Refin. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095 (N.D. Cal. 2020) (allegations of "specific purpose to disrupt" or knowledge that interference was "substantially certain to occur" were not "plausibl[e]" where there were "alternative business explanations").

***Actual Disruption***: Epic does not dispute that it has not alleged any breach of contract or

interference with either its own or with consumers' performance under the EULAs. *See* Opp. 14-15. Nor do Epic's allegations meet even its own proposed standard:[7] it alleges no interference that would make the EULAs "less valuable" to Epic by interfering with "the contracting parties' expectations regarding their relationship." Epic has no contractual right to users' money under the EULAs and points to nothing in the EULAs to suggest it had some expectation based in contract to that money. Epic does not, as it cannot, contest that the EULAs are at-will.

***Damages***: Epic does not respond to Google's argument for dismissal based on failure to allege damages caused by the interference, which is that Epic's allegations regarding lost revenue are conclusory and therefore insufficient to meet this element. *See* MTD 13.[8]

**IV. The FAC Fails To State A Claim For Tortious Interference With Economic Relations.**

***Cognizable Economic Relationships*****:** In response to Google's argument that Epic failed to identify consumers or developers whose relationship they were deprived of, Epic asserts that it simply need not identify them. Opp. 11-13. Not so. As Epic's own cited cases demonstrate, a plaintiff must "allege sufficient facts to allow the Court to plausibly infer some real third-party–named or unnamed–existed and expected to partake in the relationship." *Fortinet, Inc. v. Forescout Techs., Inc.*, 2021 WL 5565836, at *25 (N.D. Cal. 2021); *see also Logistick, Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 888-90 (S.D. Cal. 2021) (alleging economic relationships with "consumers of Plaintiff's disposable load bars"); *Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783347, at *11 (E.D. Cal. 2008) (alleging relationships with "prospective customers who were in the market for the services Qwest provides and who had taken steps toward engaging Qwest").

---

[7] Epic's formulation of the standard (Opp. 14) omits that tortious interference with contract requires that the defendant "interferes with the contracting parties' expectations regarding their relationship, making the contract less valuable to the plaintiff (***either by increasing its obligations or decreasing the benefit it expects in return***)." *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244056, at *35 (C.D. Cal. 2013).

[8] Contrary to what Epic said (Opp. 15), Google did not cite *Rincon* in connection with damages, but rather to show why actual disruption is not adequately alleged. In that case, an American Indian tribe with an exclusive contract to offer casino games alleged that operators of other gambling establishments tortiously interfered because the tribe had to pay "for public assistance programs and other community economic offsets" caused by defendants' casinos. *Rincon Band of Luiseno Mission Indians v. Flynt*, 70 Cal. App. 5th 1059, 1111 (2021). The court dismissed the claim because "diverted revenue" was "not an actual breach or disruption of the [tribe's] performance" under the contract, and because plaintiffs did "not explain how those costs are in any way related" to performance. *Id.*

In contrast, Epic alleges only impacts on potential relationships with a group of "existing and prospective" users–that means literally anyone with an Android device. These are just like the relationships with "passengers who ride in taxicabs" found insufficient in *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1179 (N.D. Cal. 2016). *See* FAC ¶¶ 151, 225. As to developers, Epic alleges that it has unilaterally "attempted" to "enter into economic relationships with developers by hosting those developers' apps on the Epic Games Store,"[9] FAC ¶ 238, an allegation just as insufficient as the "other publishers" with whom plaintiff "was in the business of contracting" in *Trindade v. Reach Media Group LLC*, 2013 WL 3977034, at *17 (N.D. Cal. 2013).

***Actual Disruption***: Epic likewise does not adequately allege that Google took intentional steps to disrupt Epic's relationships or otherwise knew interference was substantially certain to occur. *Supra* 8. Nor does Epic rebut that it failed to allege facts showing actual disruption to its existing economic relationships. The paragraphs it cites (Opp. 12-13, 15) only emphasize how threadbare the FAC is on this score, and none show actual disruption to any specific economic relationship, let alone post-*Epic v. Google*. FAC ¶¶ 54-55 (describing network effects based on a 2017 document from *Epic v. Google*); 93 (describing the success of EGS for PC); 130 (describing trial record from *Epic v. Google* regarding effect of Unknown Sources on user behavior); 150 (describing trial record from *Epic v. Google* regarding Epic's desire to launch EGS on Android); 151-52 (describing general alleged effects of Unknown Sources on "existing and prospective customers" and "developers"). As to *Silicon Knights*, that case demonstrates that it is not enough to name specific third parties in a complaint (although Epic fails to do that too) or allege generally that the complained-of conduct has caused business loss; the plaintiff must allege non-conclusory facts that show an actual disruption to negotiations or potential relationships with specific parties. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1312 (N.D. Cal. 1997).

***Damages***: Epic does not adequately allege damages, and it does not meaningfully argue otherwise. *Supra* 9.

## CONCLUSION

Google requests that the Court dismiss the FAC with prejudice.

---

[9] Epic claims that its allegations relate to "developers ***in the market for distribution services of the type EGS provides***," Opp. 12, but that category does not appear anywhere in the FAC.

Dated: August 27, 2025

Respectfully submitted,

/s/ *Jeannie S. Rhee*

Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004-2637
Telephone: (202) 240-2902
jrhee@dirllp.com

Meredith R. Dearborn (SBN 268312)
DUNN ISAACSON RHEE LLP
345 California Street
San Francisco, CA 94101
Telephone: (202) 240-2902
mdearborn@dirllp.com