Shaneeda Jaffer (SBN 253449)
sjaffer@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California
Telephone: (628) 600-2250
Facsimile: (628) 221-5828

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

[Additional counsel appear on signature page]

Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
kdunn@dirllp.com
jrhee@dirllp.com
jphillips@dirllp.com
mgoodman@dirllp.com

Meredith R. Dearborn (SBN 268312)
DUNN ISAACSON RHEE LLP
345 California Street
San Francisco, CA 94104
Telephone: (202) 240-2900
mdearborn@dirllp.com

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| EPIC GAMES, INC.,<br><br>       *Plaintiff,*<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO. LTD;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.; and GOOGLE LLC,<br><br>       *Defendants.* | Case No. 3:24-cv-06843-JD<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Date: September 11, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato |

1    The parties to the above-entitled action jointly submit this Joint Status Conference

2    Statement ("JSCS") pursuant to the Court's August 29, 2025 Order.  (Dkt. 104.)

3    1.  **CASE STATUS AND SCHEDULE**

4    **<u>EPIC'S STATEMENT</u>**:  Epic brought this action in September 2024.  Since

5    then, Google has engaged in obstruction and delay.  Google opposed treating all party materials

6    from *Epic v. Google,* Case No. 3:20-cv-05671-JD (N.D. Cal.) ("*Google I*"), as part of the record

7    here, until the afternoon before filing this JSCS; Google objected for months to the addition of

8    custodians central to Epic's claims, including *Google I* witnesses Sundar Pichai, Hiroshi

9    Lockheimer and Jamie Rosenberg, ultimately agreeing to add them only days before this filing;

10   Google delayed for months any meaningful discussion of proposed search terms for use in

11   Google's search protocol, and then objected to those search terms without providing credible hit

12   reports or other evidence of burden; Google failed to produce a single document in this case,

13   ultimately committing (in late August) to make its first production on the date of this filing;

14   Google refused even to negotiate with Epic a target date for substantial completion of its (and

15   Epic's) document production; and Google now insists it needs five more months to complete its

16   production, which would leave Epic with only eight weeks to review and use Google's

17   documents to conduct depositions and prepare expert reports.

18   Google suggests below that this ongoing delay was caused by Epic's amendment.

19   Not so.  Google did not produce any documents for nine full months *before* that amendment

20   became effective, and Google did not produce any documents for over three months *since* it

21   learned of the proposed amendment.  Google knew of the proposed amendment since May 30,

22   2025, when Epic filed its Motion to Amend.  (*See* Dkts. 87, 88-2.)  This Court allowed that

23   amendment over two months ago, on July 3, 2025.  (Dkt. 94.)  Google therefore had ample time

24   to negotiate a search protocol, resolve disputes, agree to a reasonable substantial completion date

25   in September or at the latest October of this year, and proceed to meet that target date.  Google

26   has done none of this.

27   2

28

Google claims that much of the work the parties engaged in during the nine months prior to Epic's filing of an amended complaint was "wasted" and had to be "redone". That too is not true.  Google suggested, repeatedly, that the parties completely "reset" the discovery process following Epic's amendment of its complaint and the voluntary dismissal of its Auto Blocker claims.  Epic declined, and for good cause.  Much of the work the parties had done prior to the amendment continues to be relevant.  Epic served Google with sixteen of its 29 requests for production ("RFPs") on January 31, 2025, many months before the amendment. Epic served the other 13 RFPs on August 1, 2025, promptly after it filed the operative complaint. Epic dropped several of the custodians it sought from Google following the amendment, but 14 of the 16 custodians Google has agreed to were identified by Epic long before the amendment. And Epic also did not *add* any new search terms following the amendment; it simply removed some search terms that became irrelevant.[1]  In short, the amendment generally *narrowed* the discovery Epic seeks, but nothing about it could justify Google's extensive delay.[2]

As a result of Google's repeated efforts at delay, Epic agrees that additional time is now necessary, and therefore does not object to the deferral of the trial date that Google proposes.  But as set forth in more detail below (*see infra* Section 2), to avoid prejudice to Epic and the potential for further delay, Epic seeks a reasonable Court-ordered timeline for the substantial completion of production of documents by both parties—one that would leave Epic with months, not days or weeks, to assess Google's production; challenge any deficiencies in that

---

[1] Google similarly withdrew only 15 of 65 original RFPs it had served prior to the amendment, and sought no new custodians following the amendment.  Google did wait two full months to serve 38 *additional* RFPs on Epic, doing so a full month after the Parties had reached agreement on Epic's search terms (which Epic proceeded to use for its review).  As noted below, Epic would object to any attempt by Google to re-open the search terms discussion at this juncture.
[2] Google at various points below insinuates that delay here is to be expected because the parties were busy briefing Google's motion to dismiss.  But Google is far from being resource-constrained, and it certainly may not slow-roll discovery to self-legislate a *de facto* stay of discovery pending its motion to dismiss.

3

1  production; prepare for and take fact depositions; and provide Epic's experts with sufficient time

2  with the data Epic requested from Google to conduct their analysis and prepare expert reports.

3      **GOOGLE'S STATEMENT**: This case began with Epic's September 30, 2024

4  Complaint, which brought five antitrust claims against Google centering exclusively on

5  allegations of a conspiracy between Google and Samsung regarding Samsung's Auto Blocker

6  feature.  Dkt. 1.  In July, Epic voluntarily dismissed each of those claims and replaced them with

7  state law tort claims based only on Unknown Sources.  Not a single claim from the case filed in

8  September remains a part of the case.  The only relevant claims against Google have therefore

9  been pending for two months.  Not twelve. In those eight weeks:

10  • Google and Epic each withdrew and modified previously-served discovery requests.

11  • Each party has served new discovery requests.

12  • Google has responded to Epic's new discovery requests, served on August 1, 2025, with

13    responses and objections to Epic's new requests for production, and substantive

14    responses to five interrogatories.

15  • The parties have collaborated on which requests, time-periods, and search strings from

16    the original phase of the case remain relevant to Epic's new claims.

17  • The parties have reached agreement on the custodians to be included in each party's

18    search protocol.

19  • Each party has produced new documents relevant to Epic's new claims.

20      As a result of Epic's fundamental remaking of its claims, Google has raised

21  legitimate and, it respectfully suggests, meritorious arguments that Epic's claims should be

22  dismissed as barred by claim preclusion and for failure to state a claim.  That the parties have

23  made this kind of progress in this span of time, while simultaneously briefing Google's motion to

24

25

26

27          4

28

dismiss,[3] represents a real commitment to and investment in keeping the case moving should it survive Google's motion to dismiss.  To put into context, if Epic had brought these new claims by filing a new case, the parties would not even have reached the initial Case Management Conference at this point.

Epic does not claim the parties have not made tremendous progress in those eight weeks, but inexplicably points to the preceding nine months to disingenuously argue delay, despite the fact that those negotiations were about different allegations, and both sides agree had to be reworked.  During those previous nine months, the parties had invested substantial time and effort into serving and responding to written discovery, negotiating search terms and custodians, identifying and collecting documents, and conducting fact investigation regarding Epic's Auto Blocker claims, much of which had to be redone or at least substantially revised; other work was rendered wasted.  *See* Dkt. 77.  Epic counters that the amendment merely "narrowed" the scope of discovery, but that is precisely the point: Google's prior efforts had focused on the formerly "core issue" in the case (Auto Blocker and the alleged conspiracy with Samsung).  It necessarily took work to determine what slice of that work remained relevant after Epic's amendment.

Epic's motion to amend on May 30, 2025, did nothing to notify Google that Epic would dismiss all the previous antitrust claims, and Google accordingly continued to focus its investigation and discovery efforts on Epic's Auto Blocker allegations–still the ***only*** allegations that were new since *Epic v. Google*.  Google had no way to know about the progress Epic and Samsung were making in settlement discussions,[4] much less that the Auto Blocker claims against

---

[3] Far from Epic's suggestion that Google references the motion to dismiss to explain delay and "self-legislate a *de facto* stay of discovery," the parties have made substantial progress on discovery by any standard in the two months since Epic reinvented its case.  That progress is particularly notable given the context of simultaneous motion to dismiss briefing.

[4] Despite Google's attendance at an in-person mediation in March, Epic did not involve Google in subsequent settlement negotiations with Samsung.  As Epic represented in the parties' first Rule 26(f) conference and in the initial case management statement (Dkt. 48), it had no demands of Google to resolve the case as it was then constituted

Google would be dismissed–rendering a substantial share of Google's work to that point irrelevant. Nor is it reasonable to suggest, as Epic seems to, that Google should have refocused its discovery efforts on Unknown Sources before those claims were part of the case. Indeed, Epic did not even modify its requests for document productions to relate to its new claims until late July 2025, and did not serve new discovery requests related to those new claims until August.

The new claims should be dismissed for the reasons set forth in Google's motion to dismiss, including that Epic has already extensively litigated the harms it claims result from Unknown Sources. If they are not dismissed, however, the case management schedule should be amended, not because of any delay in document production but because the claims that formed the basis for that original schedule no longer exist. In light of the fundamental shift in the case and the resulting need to redirect discovery efforts to issues dealing specifically with Unknown Sources, the parties are agreed on a proposed amended case schedule, set forth in Exhibit A. The proposed schedule keeps the case on a schedule for it to be trial ready within eighteen months from the filing of the proposed amended complaint. *Cf.* Standing Order for Civil Cases Before Judge Donato, ¶ 4 (cases should be budgeted for no more than 18 months between the initial case management conference and trial). The proposal also extends the schedule by a few months to allow the parties to efficiently refocus their fact investigation and discovery efforts on the new allegations and claims in this case, and keeps the cadence originally entered by the Court for each phase of the case.

The only dispute between the parties regarding the case schedule is as to the substantial completion deadline for document production, addressed in Section 2 below.

2.  **PACE OF DOCUMENT PRODUCTION, INCLUDING SUBSTANTIAL COMPLETION**

**EPIC'S STATEMENT**: For almost a full year, Google has not produced a single document in this case. On August 5, 2025, given the December fact discovery cutoff, Epic

raised with Google its concern about Google's failure to produce any documents or to commit to dates certain by which it would begin and complete its productions.  Google did not respond to this outreach.[5]  On August 19, 2025, Epic therefore raised this concern with Google again, this time proposing specifically that the parties aim to substantially complete their productions by September 15, 2025.  Google again did not respond to Epic's proposal.[6]  Epic reached out yet again on August 27, 2025, this time proposing a substantial completion goal of September 26, 2025.  In response, Google stated (at a meet and confer) that it would not agree to commit to *any* substantial completion date because the Court had not included a substantial completion date in the case schedule.  (Dkt. 72.)  Only after Epic insisted the parties ask the Court for a status conference did Google finally commit to make *any* production by a date certain—September 8 (*i.e.*, the date of this filing).  Google subsequently asked Epic to agree to extend the case schedule, proposing a substantial completion date of February 20, 2026—one month before its proposed new fact discovery cutoff.  That substantial completion date was entirely unreasonable, and Google's revised proposal of January 23, 2026, fares no better.

---

[5] Google claims that Epic's "description of the parties' conferrals regarding timeline of production is not accurate", claiming that it responded to Epic's August 5 email during an August 8 meet and confer.  But during that meet and confer Google refused to give Epic *any* indication of when it would make any production, let alone when it would substantially complete its productions.  Epic memorialized this concern from the August 8 meet and confer in an August 19 email stating:  "On our meet and confer, Google refused to say when it will be prepared to begin producing documents.  The parties are now four months from the fact discovery cut-off date in the Court's scheduling order, yet Google has still provided no timeline.  Google argued that it could not assess the timeline until there was complete agreement on custodians and search terms.  However, Google did not explain why it could not begin producing documents that hit on custodians and search terms that the parties have already agreed on . . . Please provide a . . . timeline for production and respond to Epic's search term counteroffer this week, otherwise the parties are at an impasse and Epic will seek relief from the Court."  As discussed above, Google did not respond substantively to Epic's August 19 email either.
[6] In its August 22, 2025 email Google simply kicked the can down the road, saying that Epic's amendment had "prevented Google from providing a timeline for its document production" and that it intended to produce documents "on a rolling basis" starting the week of this JSC.

Google's proposal invites the Court to allow Google to engage in sandbagging. That is improper and uncalled for. The Parties' respective search protocols are largely set. Any remaining disputed items are laid out below. There is no reason the Parties cannot substantially complete their productions over the next two months, by **November 7, 2025**. An early November substantial completion date would provide both Parties with just over four months to digest the productions, identify additional documents that may be needed (or that are missing), plan for and complete fact depositions, and allow their respective experts to work with the relevant data to prepare their opening reports. That is a reasonable window of time that safeguards against further delay and gamesmanship. By contrast, Google's proposal would leave Epic with only eight weeks within which to complete this crucial work. Google's insistence that it will make "rolling productions" does nothing to assuage the serious concerns that Epic will be forced to conduct most or all fact depositions and expert work in a severely compressed time period.

**GOOGLE'S STATEMENT**: Again, this case as it now exists has not been pending for a year. The only claims for which discovery is owed have been pending for eight weeks.[7] As discussed above, tremendous progress has been made.[8] And despite the Court not

---

[7] Moreover, given that the remaining claims relate solely to Google's continued operation of the same Unknown Sources at issue in *Epic v. Google*, Epic already has a great deal of the discovery it contends it needs: the millions of documents produced in that case, which Google has already deemed produced here.

[8] Epic's description of the parties' conferrals regarding the timeline of productions is not accurate.

First, Epic asserts that Google did not respond to Epic's August 5 email. Google responded to the substance in an August 8 telephonic meet and confer.

Second, Epic asserts that Google did not respond to Epic's August 19 proposal that the parties agree to a substantial completion deadline, which was the first time Epic had made any such request since the amendment. On August 22 Googled responded by email, outlining why Epic's proposed September substantial completion deadline was completely unworkable and stating that, while the court declined to include a substantial completion deadline in the scheduling order with the understanding that discovery would be ongoing, regardless, Google would produce

8

1    ordering one previously when Epic sought one, Google is also amenable to a deadline for the

2    substantial completion of document productions. Google has no interest in dragging out this

3    case, which it contends was already litigated and should not be litigated again.

4              The only dispute between the parties is when the substantial completion of

5    document discovery should be.  Google requests a substantial completion deadline of January 23,

6    2026.  In the event that Google's motion to dismiss is not granted, Google will continue making

7    rolling productions of documents over the next several months, and substantially complete its

8    document production by a Court-set deadline.  With these rolling productions and a substantial

9    completion deadline two months prior to the close of fact discovery, the parties will have ample

10   time to digest the productions, identify additional documents that may be needed (or that are

11   missing), plan for and complete fact depositions, and allow their respective experts to work with

12   the relevant data to prepare their opening reports.  A January 23, 2026, substantial completion

13   deadline also leaves ample time for the parties to conduct a thorough and careful review for

14   responsiveness and privilege.

15             Epic's complaint that Google has not produced documents until today ignores the

16   change in its case.  It would make no sense for Google to move ahead with the productions it had

17   been working on related to Auto Blocker–now wholly irrelevant–rather than retooling its efforts

18   to prepare productions of documents related to the live claims in Epic's case.

19             Despite the change in the case, Google has been working diligently to produce

20   additional documents responsive to Epic's discovery requests, which Epic revised on July 23

21   based on its new allegations, and Google will be making a production of thousands of additional

22   documents prior to this filing.

23

24   _____

25   documents starting the week of September 8, and continue on a rolling basis.  Epic
     acknowledges Google's August 22 response, *see* FN 7, while simultaneously claiming "Google
26   did not respond substantively to Epic's August 19 email," *see* FN 6.

27

28

1    In light of the ongoing discovery negotiations—including those regarding

2    Google's new requests for production served on Epic, the expansive time period for discovery

3    that Epic has requested (should the Court agree), the sixteen Google custodians whose

4    documents require review, and the substantial volume (numbering in the millions) of documents

5    requiring review, including as a result of Epic's expansive search terms, Google respectfully

6    submits that a substantial completion deadline of January 23, 2026, two months prior to the close

7    of fact discovery, is appropriate in this case.

8    Further, in light of the above, Epic's proposed November 7, 2025, substantial

9    completion deadline is unrealistic and unduly burdensome.

10    3.  **RELEVANT TIME PERIOD FOR DOCUMENT DISCOVERY**

11    **EPIC'S STATEMENT**:  After months of agreement on this issue, Google

12    seeks to re-open discussion on the relevant time period for productions for no good reason.

13    **Start Date:**  On May 7, 2025, Google memorialized the Parties' agreement that

14    the relevant time period for any RFPs not regarding Samsung's "Auto Blocker" and security

15    issues "related" to Auto Blocker would be August 14, 2020.  Google did not propose a

16    different date deviating from that agreement until September 4, 2025.  The August 14, 2020

17    start date was selected by the Parties specifically because it ensures continuity in time between

18    the productions in this case and the productions made in *Google I*, which the Court instructed

19    the Parties to re-produce here.  (Jan. 16, 2025 Case Mgmt. Conf. Tr. 17:10-18, 17:23-18:13;

20    Apr. 03, 2025 Am. Mot. To Dismiss Tr. 6:20-7:1.)  In *Google I*, the cutoff date for productions

21    was August 13, 2020.  Any start date later than the following day would thus create an

22    evidentiary gap between the two sets of documents.[9]

23

24    [9] Google argues that Epic's argument regarding an "evidentiary gap" "underscores" that Epic's
claims are precluded.  This is not the case.  Epic does not seek discovery going back prior to the

25    *Google I* discovery, and as Epic explains at length, the date ranges for discovery do not impact
when claims are cabined for statute of limitations purposes (and vice versa).

26

27

28

1    Having agreed to that start date back in May, Google nonetheless insists now

2    that the start date should be cabined by the limitations period that applies to Epic's claims.

3    Google cites no authority in support of that proposition, nor is it consistent with general

4    practice.  The relevant time period for discovery frequently exceeds relevant limitations

5    periods.  Indeed, the discovery period in *Google I* went back to the early days of Android—

6    many years prior to the relevant limitations period for the claims in that matter.

7    Google claims that it "promptly raised the start date" issue during the Parties'

8    first meet and confer after Epic's amendment and cites to an email in which Google argues the

9    time period should be "tied to the Epic Games Store".  But Google neglects to mention that in

10   the very same email it acknowledged that Epic made clear that "Epic's claims go beyond the

11   Epic Games Store".   Epic memorialized its position on the start of the time period not being

12   tied to the Epic Games Store in a July 23, 2025 letter where it stated:  "[Google's] email also

13   echoes Google's wholly unsupported claim that the Amended Complaint is 'tied to' the Epic

14   Games Store, despite clear and explicit language making clear the Complaint is not so

15   limited."  (Jul. 23, 2025 Letter from Y. Even to K. Dunn.)  And Google made no concrete

16   proposal to deviate from the previously-agreed-to start date of August 2020 (given the fact the

17   claims extend beyond the Epic Games Store) until the Parties began negotiating this JSCS on

18   August 29, 2025.

19   Google also harps on the fact that the Parties agreed to a 2022 start date for

20   requests related to Auto Blocker, but that agreement is inapposite.  Epic agreed to that later

21   start date for Auto Blocker requests because Samsung represented that Auto Blocker did not

22   exist prior to 2023.  The same cannot be said for Unknown Sources, which Google has applied

23   since long before August 2020.  Google seemingly suggests that the parties agreed to this time

24   period for "certain RFPs that are not related to Auto Blocker", but this misrepresents the

25   Parties' agreement.  In a May 30, 2025 letter, Google wrote "the parties negotiated and

26   reached an agreement that the relevant time period would begin on January 1, 2022, for

27                                          11

28

discovery requests related to Auto Blocker and related security issues and would begin on August 14, 2020, for all other discovery requests."  (May 30, 2025 Letter from M. Goodman to M. Zaken.)  Google seemingly wishes to read "and related security issues" as untethered from "Auto Blocker".  But the Parties' agreement related to Auto Blocker RFPs that are no longer in the case and was predicated entirely on Samsung's representation as to when it began working on that feature.[10]

**Cut Off Date:**  The parties are in agreement that the relevant cut off date should be the later of January 31, 2025 or the date when documents are collected.  Epic has made clear to Google that if Epic chooses to seek damages beyond that cutoff, Epic would be willing to discuss a limited "refresh" of relevant discovery.

**GOOGLE'S STATEMENT**: The parties disagree about the relevant time period for document discovery as applicable to Epic's new claims.

**Start date**: Google submits that a time period for discovery, should this case proceed beyond the motion to dismiss, must be tailored to Epic's current claims rather than–as Epic would have it–proceed as a de facto continuation of *Epic v. Google*.  As Google has

---

[10] Google claims below that RFP No. 18 is subject to the January 1, 2022 start date.  Not so. Google relies on an Epic May 26, 2025 letter where Epic noted specifically that "for Epic's RFPs *related to Auto Blocker and related security issues*, the time period should begin on January 1, 2022", whereas "for Epic's remaining RFPs, the time period should begin on August 14, 2020". (May 26, 2025 Letter from M. Zaken to M. Goodman at 2 (emphasis added).)  In a footnote, Epic listed the RFPs subject to the later start date, including RFP No. 18, because at the time that RFP called for "All documents Relating To the actual or potential 'white listing' of any distribution source or channel *under Auto Blocker, Safe Install* and/or Unknown Sources."  (Epic Games, Inc.'s First Set of Requests for Production of Documents to Defendant Google LLC (emphasis added).)  Epic dropped all the other RFPs on this list after it agreed to dismiss its Auto Blocker claims; RFP No. 18 now does not call for documents relating to Auto Blocker or Safe Install, but only to Unknown Sources.  (Jul. 23, 2023 Letter from Y. Even to K. Dunn at Appendix A.)  Because RFP No. 18 no longer pertains to "Auto Blocker and related security issues", it should thus be subject to the August 14, 2020 start date, like all other RFPs now in the case.

JOINT STATUS CONFERENCE STATEMENT
Case No. 3:24-cv-06843-JD

argued in its reply in support of its motion to dismiss, that may mean tethering discovery to the launch of the Epic Games Store on Android in August 2024.

In the interest of compromise, Google offered an even earlier start date for the relevant time period of May 30, 2023, which reflects a start date tethered to the statute of limitations of two years (from the date of Epic's proposed amended complaint). Epic has acknowledged this as the applicable statute of limitations, Dkt. 102, at 6 n.2, but rejected that compromise offer.

Epic's proposal of an August 14, 2020, start date imposes significant additional burden of searching for, collecting, reviewing, and producing documents from several years prior to the earliest possible date that Epic's claims could accrue. Such a start date would significantly outweigh any possible benefit of producing those documents, particularly because Epic alleges only that Google "continues" to maintain Unknown Sources in the same way that it did during the period covered by documents produced in *Epic v. Google*, which Google has already deemed produced in this case. *See* Dkt. 95 ¶ 10. Further, Epic provides no reason that this period–spanning more than five years for recently added custodians–is appropriate when the statute of limitations is only two years, and Epic ignores the significant burden from those extra unnecessary years of discovery. And Epic's argument that any later start date would produce an "evidentiary gap" simply underscores why its claims are precluded: if Epic did not view its present claims as a mere continuation of *Epic v. Google*, such a "gap" would not matter.

Epic contends that Google previously agreed to an August 14, 2020, start date. True, but with respect to a different set of claims that have since been dismissed. That start date made sense in light of the antitrust claims, and relevant market and market power issues that remained relevant to that antitrust case, but it does not make sense for the new claims that Epic brought after that agreement was reached. Further, the parties had previously agreed to a time period beginning on January 1, 2022, for "RFPs related to Auto Blocker and

13

related security issues," including the entirety of Epic's RFP No. 18, which the parties agree remains in the case as it relates to Unknown Sources.[11]  *See* May 26, 2025 Letter from M. Zaken, at 2 & n. 1; July 23, 2025 Letter from Y. Even, at 6.  Epic's insistence now that the parties had agreed on a blanket start date of August 14, 2020, for all discovery in this case is both incorrect and walks back the parties' agreement as to some discovery requests that are still in play.

Finally, Google promptly raised the start date for document production during the parties' first meet and confer following Epic's amendment.  *See* Dkt. 101-1 (July 16, 2025 email from Google counsel to counsel for Epic memorializing July 14 meet and confer, requesting that Epic provide its "views of the next steps on discovery in this case, including the relevant time period" and reiterating Google's position that "because Epic's remaining claims" are "tied to the Epic Games Store," "the relevant period should now begin with the launch of that store on Android in August of 2024.").  Epic ignored Google and did not respond regarding the relevant time period until August 27, 2025, only after Google raised the relevant time period issue again after waiting more than a month but receiving nothing but silence from Epic on this fundamental issue.

**Cut-off date**: As to the cut-off date, the parties are generally agreed that January 31, 2025, or the date of document collection is appropriate.  Google has sought Epic's consent that Google may revisit that cut-off date should Epic's claims for damages (if they survive) extend beyond January 31, 2025, so that Google can obtain discovery relevant to such

---

[11] Epic's position that these "related security issues" excluded Unknown Sources is belied by Epic's own identification of RFPs naming Unknown Sources as included in that category. Further, Google agrees with Epic that agreements on the scope of discovery cannot be "untethered" from the actual claims at issue.  It made sense at that time to tether the scope of discovery to Auto Blocker (then the "core issue" in the case), just as it makes sense now to tether the scope of discovery to the time period during which Epic argues it has valid claims.  Dkt. 102, at 6 n.2.  In any case, the parties clearly agreed then that it did not make sense to start all discovery at the end of fact discovery in *Epic v. Google*, and it makes even less sense to do so now.

damages claims. Google appreciates Epic's willingness "to discuss a limited 'refresh' of relevant discovery," but should Epic pursue damages claims beyond January 31, 2025, Google submits that additional discovery is necessary.

### 4. CUSTODIANS

Following negotiations over the last week, the parties reached agreement on both Epic's custodians and Google's custodians for purposes of document production. Google has agreed to sixteen custodians and Epic has agreed to twelve custodians.

### 5. GOOGLE'S SEARCH TERMS

**EPIC'S STATEMENT**:    On July 22, 2025, Epic proposed search terms to use in its search of its own documents. On August 15, 2025, Google proposed a variety of expansions and modifications to Epic's proposal. These modifications included adding seven new search strings and expanding several of Epic's proposed search strings. On August 23, 2025 Epic accepted all of these proposed expansions without any modification. The parties currently have no dispute over the search terms that Epic will use to search its documents.[12]

Google has taken a very different approach for the search of its documents. On June 3, 2025, Epic provided Google with a set of search terms based on its RFPs at the time. Google never responded substantively to that proposal, stating only that it was testing those search strings. On July 23, 2025, in light of the dismissal of the Auto Blocker claims, Epic provided a narrower search term proposal. All that Epic's proposal did was to *remove* certain Auto-Blocker-related strings wholesale, leaving all others unchanged. Epic's revised proposal should thus not have affected any testing Google was running on these search strings.

---

[12] Realizing that the disparity between the Parties' approaches demonstrates Google's obstruction, Google has now tried to characterize Epic's search terms proposal as "unilateral". That assertion has no basis in fact. Epic's July 22, 2025 proposal was based on several prior iterations dating back to April 2025 and reflected Epic's attempt to revise the prior proposals in light of the dismissal of the Auto Blocker claims. As noted above, Google countered with meaningful expansion, and Epic accepted that expansion in full. There is nothing "unilateral" about the Parties' agreement on Epic's search terms.

1          For months, Epic pleaded with Google to provide feedback regarding its search

2  terms, and to accompany any burden objection it might have with appropriate hit reports.  And

3  for months, Google kept insinuating that Epic's proposed search strings are burdensome (as it

4  does below) but failed to provide any response to Epic's proposal.  Google finally provided a

5  counterproposal only on August 22, 2025—nearly three months after Epic first made its

6  proposal and a full month after Epic narrowed that proposal.  That counterproposal did not

7  materially advance the discussion.  Three months in, Google still asserted that it "continues to

8  test and narrow" nine search strings.  Google outright rejected three other strings, without any

9  justification or explanation.  And Google proposed modifications narrowing eleven other

10  search strings, again without any justification or rationale.

11          Absent *any* evidentiary basis for Google's claims of burden, Epic took several

12  days to analyze Google's August 22 proposed modifications.  Even without any substantiation

13  from Google, Epic decided to accept certain proposed modifications to terms that Epic

14  concluded could result in false positives—for example, Epic agreed to modify terms such as

15  "Play" and "GPS".[13]  But Epic rejected modifications to limiters and connectors (*e.g.*,

16  changing "AND" modifiers to "w/[number of words]" modifiers, or changing "w/10"

17  modifiers to "w/5" modifiers), which Epic had no ability to evaluate without a comprehensive

18  hit report substantiating the burden and establishing the effects of the proposed modification.

19  On September 4, Epic advised Google of its position, but invited Google yet again to provide

20  substantiation of its claims of burden, so that the Parties may narrow any dispute ahead of this

21  JSCS.

22          On Friday, September 5, at 3:06 p.m. Pacific time, Google for the first time sent

23  Epic what Google represented to be a hit report substantiating its claims.  That hit report,

24

---

25  [13] Google argues that "Play" and "GPS" are still used in several search strings.  But Epic agreed

26  to modify these terms in any string in which Google asked to modify them, and would of course
agree to consistent modifications in any other string.

27

28

however, obscures rather than substantiates any burden on Google. *First*, Google's hit report is inflated because it was run across a collection that included the documents of six custodians that Epic has agreed to drop, with no indication of the impact of those additional custodians. *Second*, Google's hit report is inflated because it does not report "unique" hits, *i.e.*, the number of unique documents returned by any of the search strings. *Third*, the hit report does not reflect the modifications to search terms that Epic has agreed to (*e.g.*, some of the largest hit numbers come from search strings that still include the standalone terms "Play" and "GPS", which Epic has already agreed to modify).[14] *Fourth*, the hit report does not reflect any deduplication. *Fifth*, the hit report provides no information on the effect of any of the modifications Google had proposed (*i.e.*, it does not report hits with and without any proposed modification). *Finally*, the hit report does not report the size of the overall universe of documents against which the terms were run, and therefore provides no insight on the proportion of documents the search term proposal is flagging as potentially responsive.

For these reasons, Google's hit report almost certainly grossly overstates the actual burden Google faces—and importantly, some of the search strings in Google's report do not yield an inordinate number of hits despite all the flaws noted above (five of the 15 strings Google reports on hit 200,000-250,000 (non-unique, non-deduped) documents each). Google's doom-and-gloom suggestion that the hit report shows that three strings alone returned "more than eight million documents" is simply wrong. Even setting aside the fact that the number of hits reported for each string is likely grossly inflated, because Google's hit report does not show unique hits and the hit report provides no information about the overlap

---

[14] Google's claim that many of Epic's search strings contain "indiscriminate terms" is unsupported. Not only did Epic agree to modify any terms for which Google provided sufficient justification, but it used narrowing criteria like "AND" to limit any searches from overproduction.

JOINT STATUS CONFERENCE STATEMENT
Case No. 3:24-cv-06843-JD

1    between the hits reported for each search string, making simple addition of the type Google

2    engages in both misleading and uninformative.[15]

3         Ultimately, the supposed hit report offers far too little and comes far too late.

4    Google's assertion that the Court should not intervene simply invites further delay.  Google

5    only relented on moving the ball forward on certain issues—custodians—because this Status

6    Conference Statement was looming.  Epic should not be forced to *begin* protracted

7    negotiations over Google's search strings over three months after Google had received those

8    search strings.  Google should run the search strings as proposed by Epic and proceed to

9    produce all responsive documents by November 7, 2025.

10        **GOOGLE'S STATEMENT**:  As explained above, as a result of Epic's

11   amended complaint, both Epic and Google had to reevaluate the appropriate scope of

12   discovery–including search terms–that would be reasonably calculated to lead to admissible

13   evidence and be proportionate to the needs of the case.  This issue is not ripe for the Court, as

14   Google fully anticipates coming to agreement with Epic on a complete set of search strings

15   applicable to Google's custodial document search and review promptly.  Google will also

16   work expeditiously to address the search strings for Epic to apply in its responses to Google's

17   second set of requests for production.  Epic's complaints in this statement about search strings

18   fail to acknowledge, like the rest of Epic's sections, the significant progress that has been

19   made or that Epic fundamentally remade its case just two months ago.

20        During the time since Epic remade this case, Epic and Google each revised their

21   search string proposals for the other party's identification of potentially relevant

22   documents.   For its part, ***Epic*** unilaterally modified its search strings on July 22 to account for

---

[15] As a simplified example, three strings yielding 200,000 hits each could result in a review population of anywhere between 200,000 documents (if there is complete overlap between the documents hit by each string) and 600,000 documents (if there is no overlap between the documents hit by each string).

JOINT STATUS CONFERENCE STATEMENT
Case No. 3:24-cv-06843-JD

its reshaped claims, retaining strict numerical limiters on the majority of its strings without providing any showing of burden. In the spirit of compromise, Google accepted Epic's modifications with only minor changes, including no substantive change to any of the numerical limiters within Epic's proposed strings. Epic has not made any proposal regarding the search strings it anticipates using to identify documents responsive to Google's second set of RFPs to Epic served on August 29, 2025.

Regarding the set of strings that **Google** will run to identify relevant documents, it was only on July 23, Epic sent Google a substantially revised set of proposed search strings that it requested Google apply; this July 23 proposal modified the set of search strings about which the parties had previously been negotiating until July 2025 under the Auto Blocker phase of this case, and the modification, of course, reflects Epic's acknowledgement of the substantially altered scope of its new allegations despite its recitation above. Amidst dispositive motion briefing and negotiations over other aspects of both parties' search protocols that had to be reworked given the change in the case, Google worked diligently to analyze Epic's proposed July 23 search string modifications. On August 22, 2025, Google agreed to more than a dozen of Epic's newly revised proposed search strings, agreed to a dozen additional search strings with syntax modifications, and sent Epic proposed revisions to nine additional strings that Epic had proposed whose syntax, subcomponent terms, and lack of numerical connectors led to disproportionately burdensome volumes in the millions of documents.[16] On September 4, 2025, Epic sent Google a letter regarding Google's August 22-transmitted set of search strings, refusing to agree to any of Google's strings as-modified.

Google's hit report sent to Epic on September 5 reflects the substantial burden Epic's terms impose. As just one example, three of Epic's disputed search strings alone

---

[16] Google's agreement as to any particular string, as proposed by Epic or as modified by Google, was made in the spirit of compromise and was not, and is not, to be construed as a concession by Google that any particular string, or subcomponent part within a string, is relevant to Epic's new claims or Google's defenses, or proportionate to the needs of the case.

JOINT STATUS CONFERENCE STATEMENT
Case No. 3:24-cv-06843-JD

returned more than eight million documents.  Further, many of Epic's search strings contain "indiscriminate terms, such as the producing company's name or its product name,"[17] which are "inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction." *Andersen v. Stability AI Ltd*., 2025 WL 870358, at *6 (N.D. Cal. Mar. 19, 2025); *Est. of Mann v. Cnty. of Stanislaus*, 2022 WL 4029571, at *2 (E.D. Cal. Sept. 2, 2022) (same).  Relatedly, Epic writes above that Google's hit report is flawed because it "include[s] the standalone terms "Play" and "GPS", which Epic has already agreed to modify"—but Epic's proposal still contains the standalone terms "Play" OR "GPS" in thirteen strings (ST008, ST015, ST017, ST031, ST033, ST036, ST054, ST055, ST058, ST064, ST066A, ST066B, and ST069).  Epic writes that it "would of course agree to consistent modifications in any other string," while also refusing to engage with Google on any further discussions–*see* supra Epic Statement ("Google should run the search strings as proposed by Epic"). All this shows is that the search term issues can and will be worked out by the parties.

---

[17] For instance, the following search strings contain *only* Google product names that are limited only by dozens of common terms with only "OR" connectors, containing no numerical limiter at all, despite Epic's repeated use of numerical limiters for its own search strings.

(Play OR "GPS" OR "Android Market") AND ("unknown sources" OR compet* OR market* OR users OR share* OR "Monthly Active" OR "Daily Active" OR customers OR demand* OR barrier* OR valu* OR benefit* OR differ* OR invest* OR service* OR innovat* OR cost* OR revenue* OR profit* OR loss* OR margin* OR monetiz* OR policy OR policies OR guideline* OR attract* OR advantag* OR disadvantage* OR prefer* OR maintain* OR operat* OR sale* OR distribut* OR offer* OR entr* OR enter* OR left OR exit* OR compar* OR switch*)

((Android OR Play OR "GPS") AND (compar* OR differ* OR alternat* OR compet* OR better OR best OR discover* OR prevent* OR stop* OR hinder* OR discourage* OR disable* OR limit* OR imped* OR barrier* OR frustrat* OR polic* OR privacy OR security* OR breach* OR laps* OR "personal information" OR PII OR fraud* OR refund* OR malware OR virus*)) AND (analysis OR study OR studies OR report OR reports OR assessment* OR survey*)

1

2

3

4

5

6

7

8

Rather than order Google to use these overbroad and unduly burdensome search strings, Google submits the better course of action is to allow the parties to continue their productive negotiations to date.  It was only in the last few days the parties even agreed to custodians, and the outcome of the parties' dispute over time period will also affect the amount of documents requiring review.  Simply put, no search term dispute is ripe, and Google simply asks that Epic exhibit the same willingness to compromise as Google exhibited during Epic's search term negotiations.  Google does not believe that the parties' ongoing search term negotiations require any action from the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS CONFERENCE STATEMENT
Case No. 3:24-cv-06843-JD

1

*Dated:* September 8, 2025

2

*/s/ Yonatan Even*
Shaneeda Jaffer (SBN 253449)
sjaffer@beneschlaw.com
Lily A. North (CA 260709)
lnorth@beneschlaw.com
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, California
Telephone: (628) 600-2250
Facsimile: (628) 221-5828

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*

*/s/ Jeannie S. Rhee*
Jeannie S. Rhee (*pro hac vice*)
Karen L. Dunn (*pro hac vice* pending)
Jessica E. Phillips (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com
kdunn@dirllp.com
jphillips@dirllp.com
mgoodman@dirllp.com

Meredith R. Dearborn (SBN 268312)
DUNN ISAACSON RHEE LLP
345 California Street
San Francisco, CA 94104
Telephone: (202) 240-2900
mdearborn@dirllp.com

*Counsel for Defendant Google LLC*

22

**Exhibit A: Parties' Proposed Amended Case Schedule**

| Event | Deadline |
|---|---|
| Substantial completion of production | Current: N/A<br>Epic's Proposed: November 7, 2025<br>Google's Proposed: January 23, 2026 |
| Fact discovery cut-off | Current: December 12, 2025<br>Joint Proposed: March 20, 2026 |
| Expert disclosures | Current: December 19, 2025<br>Joint Proposed: March 27, 2026 |
| Rebuttal expert disclosures | Current: January 21, 2026<br>Joint Proposed: May 8, 2026 |
| Expert discovery cut-off | Current: February 13, 2026<br>Joint Proposed: May 29, 2026 |
| Last day to file dispositive and *Daubert* motions | Current: February 26, 2026<br>Joint Proposed: June 12, 2026 |
| Pretrial conference | Current: July 9, 2026<br>Joint Proposed: October 29, 2026 |
| First day of trial | Current: July 27, 2026<br>Joint Proposed: November 16, 2026 |

1

**E-FILING ATTESTATION**

2

I, Jeannie S. Rhee, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the

4

signatories identified above has concurred in this filing.

5

6

*/s/ Jeannie S. Rhee*
Jeannie S. Rhee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24