| | |
|---|---|
| Shaneeda Jaffer (SBN 253449) <br> sjaffer@beneschlaw.com <br> BENESCH FRIEDLANDER COPLAN & ARONOFF LLP <br> 100 Pine Street, Suite 3100 <br> San Francisco, California <br> Telephone: (628) 600-2250 <br> Facsimile: (628) 221-5828 <br><br> Gary A. Bornstein (*pro hac vice*) <br> gbornstein@cravath.com <br> CRAVATH, SWAINE & MOORE LLP <br> Two Manhattan West <br> 375 Ninth Avenue <br> New York, New York 10001 <br> Telephone: (212) 474-1000 <br> Facsimile: (212) 474-3700 <br><br> *Counsel for Plaintiff Epic Games, Inc.* | Jeannie S. Rhee (*pro hac vice*) <br> Karen L. Dunn (*pro hac vice*) <br> Jessica E. Phillips (*pro hac vice*) <br> Martha L. Goodman (*pro hac vice*) <br> DUNN ISAACSON RHEE LLP <br> 401 Ninth Street, NW <br> Washington, DC 20004 <br> Telephone: (202) 240-2900 <br> kdunn@dirllp.com <br> jrhee@dirllp.com <br> jphillips@dirllp.com <br> mgoodman@dirllp.com <br><br> Meredith R. Dearborn (SBN 268312) <br> DUNN ISAACSON RHEE LLP <br> 345 California Street <br> San Francisco, CA 94104 <br> Telephone: (202) 240-2900 <br> mdearborn@dirllp.com <br><br> *Counsel for Defendant Google LLC* |

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO. LTD; SAMSUNG ELECTRONICS AMERICA, INC.; and GOOGLE LLC, <br><br> *Defendants*. | Case No. 3:24-cv-06843-JD <br><br> **JOINT STATUS CONFERENCE STATEMENT** <br><br> Date: November 6, 2025 <br> Time: 10:00 a.m. <br> Dept.: Courtroom 11, 19th Floor <br> Judge: Hon. James Donato |

The parties to the above-entitled action jointly submit this Joint Status Conference Statement ("JSCS").

**1. FACTS**

**EPIC'S STATEMENT**: This case concerns Google's trade libel disparaging Epic's Android apps and its tortious interference with Epic's ability to create and expand economic relationships with Android users and developers through its operation of the unknown sources install flow ("Unknown Sources"). The Unknown Sources flow deters consumers from directly downloading Epic's products onto Android phones, including the Epic Games Store ("EGS") and apps from EGS. (Dkt. 95, First Amended Complaint ¶¶ 67, 70.) And by deterring users, the Unknown Sources flow discourages developers from dealing with EGS. (*Id.* ¶ 203.) The Unknown Sources flow inflicts these harms on Epic by presenting users attempting to download apps from Epic's website or from EGS with scare screens stating that such downloads "might be harmful", are "unknown" to Google, and may put the user's "phone and data at risk". (*Id.* ¶¶ 66, 68, 133, 134.) These statements are knowingly false, as Google is well aware of Epic's apps and knows that they are safe. (*Id.* ¶¶ 69, 135–36.) Moreover, Unknown Sources further deters consumers from completing installation of apps from Epic's websites and from EGS by imposing unnecessary frictions on such downloads, requiring users to take many more steps than necessary to complete them (*e.g.*, many more steps than the number of steps a user needs to take to complete a download from Google's own Play store). (*Id.* ¶¶ 41, 65–66, 151–52.) Google deploys these measures with the intent or knowledge that they will disrupt Epic's relationships and that these statements are false. (*Id.* ¶¶ 136–38, 151–52.)

Google improperly seeks to relitigate its Motion to Dismiss below. Regardless, and as discussed at length in Epic's opposition to Google's Motion to Dismiss (Dkt. 102), Google's arguments fail as a matter of law. Epic's claims did not exist at the time the parties were litigating *Epic v. Google* (Case No. 3:20-cv-05671-JD) and Epic seeks to vindicate different rights, based on different evidence, than those Epic sought to avail in *Epic v. Google*. Furthermore, Epic has sufficiently alleged its claims for trade libel and tortious interference.

Contrary to Google's contention, the warnings Unknown Sources displays refer to Epic by reasonable implication. And Epic has explained how it lost revenue from users and developers that would have contracted with Epic, or otherwise used Epic's products, if not for Unknown Sources.

Epic anticipates that the following factual issues, among others, will be disputed: (a) the effects of Google's deployment of Unknown Sources on Epic's business, including how many users are deterred from installing apps from Epic websites and/or from EGS due to Unknown Sources; (b) whether the statements in Unknown Sources scare screens are knowingly or recklessly false as they pertain to downloads from Epic's websites or from EGS; and (c) whether Google's proffered justifications for Unknown Sources excuse Google's tortious behavior.

**GOOGLE'S STATEMENT:** This case attempts to resurrect Epic's long-standing grievance with a Google security feature, the Unknown Sources install flow ("Unknown Sources"), that was already the subject of Epic's original lawsuit against Google in *Epic v. Google* (Case No. 3:20-cv-05671-JD) ("*Epic v. Google I*"). Epic's claims for trade libel and tortious interference are barred by claim preclusion. Epic extensively litigated Unknown Sources, including the number of steps, the content of the screens, and whether the screens acted as a deterrent at the *Epic v. Google I* trial. The conduct at issue in Epic's new claims—Google's development and use of Unknown Sources—is identical to the conduct at issue in *Epic v. Google I*. The basic theory of harm—that warnings in Unknown Sources are false and the install flow creates "friction"—is also the same, and is what the parties already litigated. The parties also litigated Epic's requested remedy pertaining to Unknown Sources. Preclusion prevents Epic from relitigating that which it could have—and did—litigate extensively in a prior proceeding.

Google deployed Unknown Sources a decade ago for security reasons, not in order to harm an app store that did not exist. Nor did Google make any changes to Unknown Sources in order to interfere with the launch of the Epic Games Store on Android. Nor do the statements in the install flow say anything specific about Epic or its Games Store. And Epic

cannot show with reasonable certainty damages caused by Unknown Sources where Epic has no legal assurance of any revenue from its customers from in-app sales or revenue from the customers of third-party developers who declined to enter into a distribution arrangement with Epic.

Google anticipates that the following factual issues, among others, will be disputed: (a) whether Epic's claims arise out of the same transactional nucleus of fact from which Epic's claims in *Epic v. Google I* arose; (b) whether Epic can show that Google created the Unknown Sources install flow specifically to interfere with the Epic Games Store, and not for any other reason, including the security of Android devices; (c) whether Epic can attribute consumers' abandoned downloads to Unknown Sources versus other cause(s); (d) whether Epic failed to enter into economic relationships with developers due to Unknown Sources and not other cause(s); and (e) whether Epic can show actual pecuniary harm as a result of Google's conduct.[1]

## 2. PENDING MOTIONS

<u>Motion to Dismiss:</u>  Google filed a motion to dismiss Epic's First Amended Complaint on August 6, 2025. (Dkt. 98.) Epic filed its opposition on August 20, 2025. (Dkt. 102.) Google filed a reply in support of its motion on August 27, 2025. (Dkt. 103.) On September 11, 2025, the Court took the motion under submission. (Dkt. 109, Minute Entry.)

<u>Discovery Letter Regarding Substantial Completion and Search Protocol:</u>  On September 18, 2025, Epic filed a letter seeking discovery relief pursuant to Paragraph 18 of the Court's Standing Order for Discovery in Civil Cases and the Court's September 11 Minute Order (Dkt. 109), regarding several related pending discovery disputes over the scope and timing of Google's document productions. (Dkt. 110.) At the Court's instruction, Google filed a responsive letter on September 30, 2025. (Dkt. 116.)

---

[1] Google does not need to prove "whether Google's proffered justifications for Unknown Sources excuse Google's tortious behavior." Rather, Epic bears the burden of proof on all elements of its claims.

          <u>Discovery Letter Regarding Hyperlinked Documents</u>:  On October 27, 2025, Epic filed a letter seeking discovery relief pursuant to Paragraph 18 of the Court's Standing Order for Discovery in Civil Cases (Dkt. 120).  As discussed in Section 3.f. below, Google has now agreed to Epic's requested relief.  **No further resolution on this discovery letter is required by the Court.**

## 3.    DISCOVERY

          **<u>EPIC'S STATEMENT:</u>**  Google's repeated delay and the cadence and size of its document productions is prejudicing Epic's ability to prosecute this matter.  Despite the impending December 12 discovery cutoff and the Court's admonition at the last status conference that "time is of the essence" in this case (Sept. 8, 2025 Case Mgmt. Conf. Tr. 13:10), Google has made very little progress on document productions since that date.  Since the September 11 conference, Google has made three productions:  on September 29, Google produced 11,672 documents; on October 20, Google produced 14,690 documents; and on the eve of this JSCS, Google produced approximately 9,000 documents bringing its total around 47,000 documents.  Google refuses to indicate what approximate proportion of its production it has now completed.  By contrast, Epic has substantially completed its production.  By the time this JSCS is filed, Epic will have produced 156,413 documents as well as various data.

          Google tries to wish away its delay by blaming Epic's July 2025 amendment.  But this is a red herring.  Google did nothing to move forward discovery before amendment (first proposed in May 2025, over five months ago) and has engaged in repeated delay since.[2]  Google further suggests that it has made concessions "in the interest of time", however the fact remains

---

[2] Google seems to suggest that it could have completed *no* relevant discovery before July 7, 2025.  Not so.  Much of the work the parties had done prior to the amendment continues to be relevant.  Epic served Google with 16 of its 29 requests for production on January 31, 2025, many months before the amendment.  Epic dropped several of the custodians it sought from Google following the amendment, but 14 of the 16 custodians Google agreed to were identified by Epic long before the amendment.  Furthermore, almost all of the search terms in Epic's search term proposal for Google's documents remained the same; the primary changes Epic made were *deleting* no longer relevant search strings.  Google's claims are therefore unsupported.

that Google has yet to agree to a reasonable search protocol or time period for searches of its documents. Furthermore, Google argues that any further condensing of the fact discovery timeline would result in prejudice to Google. Google fails to acknowledge or attempt to resolve the severe prejudice Google's continued delay imposes on Epic's ability to prosecute its case. Epic describes below the primary ways Google's delay prejudices Epic.

**GOOGLE'S STATEMENT:** As detailed in the parties' prior joint statement, Dkt. 105, the wholesale replacement of the claims and issues in the case four months ago entailed significant time and work to retool the discovery conducted until that point, which had focused largely on the former 'core issue' of Auto Blocker and the core elements of a monopolization case, including market definition and monopoly power. Google has worked diligently since then to conduct that retooling as expeditiously as possible, including conceding in the interest of time many of its legitimate objections to Epic's proposed custodians, search terms, and RFPs. As outlined below, this has resulted in substantial productions on an exceptionally condensed timeline. Any further condensing of the timeline for discovery would result in substantial prejudice.

Since the parties' last status report on September 8, 2025, Dkt. 105, Google has made significant progress towards completing its document productions: Google has produced approximately 47,000 documents, including more than 9,000 documents produced to Epic on Wednesday, October 29 that prioritized the custodial files of the first Google employee that Epic informed Google that it intended to depose. These productions are *in addition to* the more than 3.3 million documents deemed reproduced from *Epic v. Google I*. Google has engaged more than three hundred contract attorneys to review the approximately 2.4 million documents that would be required to be reviewed under Epic's proposed overly broad timeframe and using Epic's overly broad search strings. Although the operative claims have only been pending for

less than four months,[3] Google continues to make rolling document productions every one to three weeks and will substantially complete production of non-privileged custodial documents from deponents' files 7 days prior to their agreed deposition date.  As outlined below, Epic is not prejudiced by the case schedule, the Court-ordered ESI protocol, or Google's ongoing and continuing efforts to supplement the existing "Mount Everest of evidence," 1/17/2025 Hearing Tr., Dkt. 55, that Google has already produced to Epic related to its claims.  Epic's failure to timely update its disclosures after remaking its case, however, does prejudice Google.  The issues outlined in this filing are addressed through the jointly-proposed modification to parts of the case schedule.  Google respectfully requests that the Court consider this joint proposal in light of the changes to the case made four months ago and the issues outlined by both parties in this submission.

          **a.   Substantial Completion**

**EPIC'S STATEMENT: Epic respectfully reiterates its request that the Court set a substantial completion deadline for Google's production that is well ahead of any fact discovery cutoff.**

A substantial completion deadline for document discovery is necessary to ensure that the parties have time to review the production, choose witnesses to depose and depose those witnesses on the basis of a full documentary record, and prepare expert disclosures.  Epic has been attempting to set a mutual substantial completion deadline, feasible for both parties, since mid-August.  Google rebuffed Epic's efforts, refusing even to negotiate such a deadline.  Shortly after the September 11 conference, Epic proposed a substantial completion date of October 17, 2025.  (*See* Dkt. 110 at 1, 2.)  This proposed deadline would have been tight, but doable. Following the conference, the Parties met and conferred, but Google refused to commit to that

---

[3] There has been no delay in discovery progress.  Epic amended its complaint on July 7, 2025, abandoning all previous allegations regarding a supposed antitrust conspiracy with Samsung and replacing that case with a set of state law tort claims based entirely on conduct previously litigated in *Epic v. Google I*.  Google could not reasonably have been reviewing or producing documents for claims that did not exist between September 2024 and July 2025.

1  deadline—or to *any* deadline.  Google dismisses its obstinance, claiming that these proposals
2  were unrealistic.  But Epic has proven through its own document production and substantial
3  completion that an October timeline was always doable.

4           On September 18, 2025, per the Court's direction, Epic raised this issue in a
5  discovery letter (Dkt. 110), which Google responded to on September 30, 2025 (Dkts. 115, 116).
6  Since then, in roughly half a dozen meet-and-confers, Epic sought some indication from Google
7  as to the anticipated pace of its productions and its substantial completion goal.  Google
8  steadfastly refused to provide *any* such indication, claiming that "the issue has been briefed" and
9  that absent a decision from this Court, Google will continue making productions roughly every
10 three weeks and would not commit to substantially complete its production on any date prior to
11 the December 12 discovery cutoff.  Below, Google indicates it only anticipates substantially
12 completing its productions by December 12, 2025, and shows it would only agree to a substantial
13 completion deadline if this Court agrees to modify the schedule.  In short, Google concedes what
14 Epic has suspected all along—that Google intends to sandbag Epic by substantially completing
15 its production at or near the very last day of the fact discovery period and, moreover, to blow
16 past this Court's fact discovery "cut-off" by continuing to make supplemental productions
17 thereafter.

18          Productions made at or after the discovery cutoff date would largely be useless for
19 purposes of preparing Epic's case, as Epic would not have the opportunity to use these
20 documents in depositions or incorporate them into the opinions of Epic's experts.  The parties
21 propose below a modified schedule that would allow the parties more time to complete fact
22 discovery, without affecting the trial date.  If, and only if, the Court accepts the modifications to
23 the schedule, would December 5, 2025 be an appropriate target for Google to substantially
24 complete its production.  If that proposal is not adopted, Epic respectfully requests that the Court
25 set a substantial completion deadline for Google's production well ahead of the December 12,
26 2025 fact discovery cutoff.

1 **GOOGLE'S STATEMENT: Google has no objection to a substantial**
2 **completion deadline in concept. As explained in more detail in Google's pending letter brief**
3 **response, Dkt. 116, given the scope and breadth of the discovery it demands, however,**
4 **Epic's earlier proposals were unrealistic.**  Google has no objection to a substantial completion
5 deadline at or near the current fact discovery deadline, as the parties have jointly
6 proposed.  Google is working diligently to review and produce documents as quickly and
7 responsibly as possible and has no intention or plan to "sandbag" Epic; rather, it is producing
8 documents on a regular cadence as soon as they are ready for production.  As discussed in more
9 detail in Section 5 below, the parties have jointly proposed a revised case schedule that would
10 include a substantial completion date as well as an extension of the fact discovery period,
11 without moving the trial date.

12    b.   Privilege Logs

13    **EPIC'S STATEMENT:  Epic respectfully requests that the Court clarify that**
14 **Google must produce *all* documents, including documents falling off its privilege log, as**
15 **well as the privilege log itself, ahead of the fact discovery cutoff.**

16    Epic has asked Google to exchange privilege logs on November 12, 2025, less
17 than one month after Epic substantially completed its production.  Google, in response, stated it
18 would not be prepared to exchange privilege logs on that date, but that it would follow a "similar
19 cadence" of producing its privilege log roughly one month after Google substantially completes
20 its own production.  However, because Google refuses to commit to substantially complete its
21 production on a date prior to the December 12 fact discovery cutoff, Google has refused to
22 commit to produce its privilege logs any earlier than one month following that date—*i.e.*, by
23 mid-January.  Because logging typically involves the production of documents that "fall off" the
24 log (*i.e.*, documents initially withheld as potentially privileged but then ultimately produced,
25 potentially with redactions, following further privilege review), Google's position would result
26 in productions well past the current fact discovery cutoff—after depositions will have been

completed, and after opening expert reports will have been served. That is neither workable nor consistent with the schedule ordered by the Court.

Google claims that its position is consistent with this Court's ESI Order because the order contemplates that "[a]ll privilege logs will be exchanged after any Court ordered completion date for a party document production". (Dkt. 84 § 8(c).) Google's position is entirely unreasonable. The fact the Court has not yet set a substantial completion date does not mean that Google can defer the exchange of privilege logs way past the fact discovery cutoff date.

Whether or not the Court modifies the case schedule, Epic respectfully requests that the Court order Google to produce *all* documents, as well as its privilege log, ahead of the deadline for the close of fact discovery.

**GOOGLE STATEMENT: Google is fully complying with the ESI Protocol, which Epic does not dispute.** The ESI Protocol states that "All privilege logs will be exchanged promptly after any Court ordered completion date for party document production." Epic does not dispute that Google's commitments are consistent with the ESI Protocol. Epic's complaint (that this would result in productions being made after the current fact discovery deadline) apparently attempts to renegotiate that protocol. Nonetheless, Google is willing to agree to exchange privilege logs for fully withheld documents prior to the close of fact discovery on the condition that the discovery cutoff date is extended. *See* Joint Statement, Section 5. The parties' proposed schedule would moot all of Epic's purported complaints about privilege logs outlined above.

    c.  **Depositions**

**EPIC'S STATEMENT:** Google's commitment to produce documents a week before depositions is demonstrably unworkable. In its September 30 letter to the Court, Google committed to "complete any deponents' custodial document productions at least seven days prior to any agreed-upon deposition date", claiming that such productions would provide Epic with "ample time to review documents in advance of depositions". (Dkt. 116 at 2.) But this timing

prejudices Epic's ability to conduct depositions in two distinct ways. *First*, Epic will have to choose which custodians to depose *before* it has an opportunity to review their documents or the documents of Google's other custodians. This puts the cart before the horse and undermines Epic's ability to make an informed choice of which depositions to pursue. *Second*, a single week is a very compressed timeline for Epic to load a production onto its systems (a process that may take hours to a day or more, depending on the size of the production), review it, identify relevant documents in the production and prepare for deposition. This process may be workable if a production is relatively small; it will be nearly impossible for large productions.[4]

Moreover, Google so far has failed to live up to its commitment to complete productions a full week before any deposition. Epic identified five custodians for depositions in early-to-mid November, the first of which was scheduled to be deposed on November 5; Google was thus scheduled to complete the production of his files by October 29, 2025.[5] It did not. First, Google indicated it would only *substantially* complete productions from the first deponent's files by October 29, 2025. And then, on October 28, 2025, Google took the deposition off calendar, "to accommodate the production of additional custodial documents" and "to avoid having the witness sit for deposition twice". Google now seeks to reschedule this deponent for late November or early December. Google's conduct around the very first deposition further demonstrates why Google's proposal of making productions on a per-custodian basis is entirely unworkable. In short, Google's plan is prejudicial to Epic's ability to prepare for and conduct depositions.

**GOOGLE'S STATEMENT:** As Epic notes, there is no issue as to depositions ripe for the Court's consideration. Nothing about the current schedule prejudices Epic's ability

---

[4] For example, around midnight on October 29, 2025 Google produced nearly 7,000 custodial documents associated with the Google employee previously scheduled to be deposed on November 5. There is simply no way for Epic to upload and fully review a production of thousands of documents in a single week.

[5] Google has offered no deposition dates (for any deponent) earlier than November 19, 2025—three weeks before the current fact discovery cutoff.

1  to conduct depositions, and Google continues to prioritize productions of identified deponents,
2  and a large production of the first deponent was produced a week in advance. Given Epic's
3  demand that every conceivable document be produced prior to the deposition, including
4  privileged documents, and its recent statement that it must hold open the first-scheduled
5  deposition pending further productions, Google postponed the deposition and provided Epic with
6  five alternative dates for that deposition starting two weeks after the initially proposed date.  This
7  was necessary in order to facilitate a substantially complete production of the witness's custodial
8  documents.

### d. Data

**EPIC'S STATEMENT:**  For months, Epic has sought from Google data regarding downloads that trigger Unknown Sources, and specifically, data showing the number and identity of users who attempted to download apps from Epic's websites but failed to complete that installation, or "dropped off", during the Unknown Sources install flow.  Up until the parties began drafting this JSCS, Google had provided no timeline for providing this data. This data is crucial to Epic's case because it will show the effects of Unknown Sources on Epic's ability to distribute apps to users.  Epic itself has limited view into that data, because Epic does not operate Android, Unknown Sources or Chrome (the default browser on Android devices), and Android users visiting Epic's websites on their Android devices are not typically signed into their Epic accounts.  Google, by contrast, has extensive visibility into users' actions on Android: Google operates Android, Unknown Sources and Chrome, and Android users are logged into their Google accounts.  Google promises to produce at least some responsive documents on the eve of this JSCS, but Epic has no way of assessing Google's production in time to respond in this JSCS.  Epic continues to meet-and-confer on the responsive data Google has on this issue in the hope of reaching resolution.  Epic will file a discovery letter on this issue promptly should the parties reach impasse.

**GOOGLE'S STATEMENT:**  As Epic notes, there is no issue as to data ripe for the Court's consideration.  After Epic remade its case in July, it issued an expansive new

set of document requests to Google on August 1 that included requests for a voluminous amount of granular data across more than five years. Google immediately began investigating the availability of the data requested by Epic, timely responded to Epic's discovery requests, and has continued to work with Epic to understand the data being requested, the limitations on the data maintained by Google, and what Google will be able to produce in response to Epic's requests. Google is making rolling productions of responsive data to Epic's voluminous discovery requests, including data produced on Wednesday, October 29. Google is actively investigating what data is maintained that is potentially responsive to Epic's request for "funnel data" of attempted installs from particular non-Google Play sources, such as Epic's website. As Google informed Epic, Google does not maintain the precise data as requested by its RFP and contrary to Epic's assertion, Google does not have "full visibility into users actions on Android." Google will continue to work to collect and produce responsive data in its possession, custody or control that it maintains in the ordinary course of business and is responsive to Epic's discovery requests.

### e. Interrogatories

**EPIC'S STATEMENT:** On October 17, 2025, Epic wrote to Google informing it of several deficiencies in its interrogatory responses and requesting supplemental information required by these interrogatories. Google has yet to reply to Epic's letter. Epic will evaluate Google's response and will update the Court as necessary.

**GOOGLE'S STATEMENT:** With regard to Google's interrogatory responses, Epic concedes there is no ripe issue for the Court's consideration. Google is also evaluating Epic's responses and objections to interrogatories served on October 27, 2025, but there is no ripe issue there for the Court's consideration, either.

### f. Hyperlinked Documents

On October 30, 2025, Google confirmed that, for both Epic's existing and future requests, it will (a) produce responsive, non-privilege hyperlinked Google Drive files on a rolling basis; and (b) provide a cross-reference file that identifies Bates numbers for

produced hyperlinked Drive documents and the Bates number for the corresponding source email on Epic's lists that contains the hyperlinked document.  In light of this agreement the parties are no longer at impasse and do not require further resolution from the Court on this issue (Dkt. 120).

### g. Third Party Discovery

**EPIC'S STATEMENT:**  Epic's disclosures to Google regarding third-party developers have complied with Epic's obligations and are consistent with the parties' longstanding practice in *Epic v. Google* of identifying third parties by pointing to the corporate entities.  (*See, e.g.,* Google Defendants' Fifth Amended Initial Disclosures, *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal. Jun. 28, 2022) at 11 (identifying 54 "non-party entities" that are "likely to have discoverable information", naming no individuals at those 54 entities).)  To the extent that Epic determines that there are specific individuals associated with these third-party entities on whom Epic intends to rely to support its claims at trial, Epic will amend its initial disclosures accordingly.

**GOOGLE'S STATEMENT:  Epic's untimely and incomplete disclosures prejudice Google and further support the parties' joint scheduling proposal which, consistent with the Court's directive, would not affect the overall case schedule (i.e., the trial date)**.  Just over two weeks ago, on October 14, Epic supplemented its initial disclosures to, among other things, identify eight new, previously undisclosed third-party developers, upon whom Epic may rely to support its claims as developers who allegedly declined to distribute through Epic.  Such disclosure helps illustrate the need to extend fact discovery to account for discovery previously irrelevant to the case. The supplemented initial disclosures provided no contact information for these companies; nor did Epic identify any individual people associated with these companies.  Of these 8 developers, only two are located in the United States according to public records; for the other 6, Google will need to comply with the Hague Convention and/or bilateral treaties regarding obtaining foreign evidence abroad, which at a high level requires Google to evaluate each foreign country's particular agreements,

reservations or exclusions to providing pre-trial discovery; to prepare and obtain letters rogatory from this Court; and to submit to each foreign jurisdiction the request for pre-trial discovery for its approval.  The prejudice is clear: Google is left with less than two months to complete the many steps necessary to obtain pre-trial discovery from these foreign entities.   Google would have begun this process months ago if Epic had not waited until October to disclose them. And Epic still has not provided the identities of individuals at these developers or contact information that would allow Google to attempt to seek to obtain these foreign developers' voluntary cooperation with providing pretrial discovery, which is the fastest and most efficient way to obtain the discovery Google needs without requiring Court intervention or foreign jurisdiction approval. The parties' past practice in a different case where there were no specific third parties with whom Google allegedly interfered is not a valid reason for refusing to provide this information.  Epic must provide this information immediately.

4. **SETTLEMENT**

Consistent with the Court's order (Dkt. 109), the parties have exchanged settlement proposals that would resolve this case.  The parties also held an in-person settlement meeting among representatives with full settlement authority.

5. **SCHEDULING**

In light of the issues outlined above, the parties jointly propose an adjustment that, consistent with the Court's directive, would **not** affect the overall case schedule (*i.e.*, the trial date), but would modify some of the interim dates previously ordered by the Court so as to allow the parties more time to complete certain tasks.  The proposed modification to the interim dates is reflected in the chart below.

| *Epic v. Samsung Case Schedule* | *Existing Deadline* | *The Parties' Proposal* |
|---|---|---|
| **Substantial Completion Deadline** | N/A | Friday, December 5, 2025 |
| **Privilege Logs** | N/A | Monday, January 5, 2026 |
| **Close of Fact Discovery** | Dec. 12, 2025 | Friday, January 23, 2026 |
| **Opening Expert Disclosures** | Dec. 19, 2025 | Monday, January 26, 2026 |
| **Rebuttal Expert Disclosures** | Jan. 21, 2026 | Monday, February 23, 2026 |
| **End of Expert Discovery** | Feb. 13, 2026 | Wednesday, March 11, 2026 |
| **Deadline for Dispositive and *Daubert* Motions** | Feb. 26, 2026 | Friday, March 13, 2026 |
| **Oppositions filed by** | N/A | Wednesday, April 1, 2026 |
| **Replies filed by** | N/A | Friday, April 10, 2026 |
| **Dispositive and *Daubert* Motion Hearing Takes place by** | N/A | Thursday, May 7, 2026 |
| **Pre-Trial Conference** | July 9, 2026 | July 9, 2026 |
| **Day 1 of Trial** | July 27, 2026 | July 27, 2026 |

*Dated:* October 30, 2025

| | |
|---|---|
| /s/ Yonatan Even | /s/ Jeannie S. Rhee |
| Shaneeda Jaffer (SBN 253449) | Jeannie S. Rhee (*pro hac vice*) |
| sjaffer@beneschlaw.com | Karen L. Dunn (*pro hac vice*) |
| Lily A. North (CA 260709) | Jessica E. Phillips (*pro hac vice*) |
| lnorth@beneschlaw.com | Martha L. Goodman (*pro hac vice*) |
| BENESCH FRIEDLANDER COPLAN & ARONOFF LLP | DUNN ISAACSON RHEE LLP |
| 100 Pine Street, Suite 3100 | 401 Ninth Street, NW |
| San Francisco, California | Washington, DC 20004 |
| Telephone: (628) 600-2250 | Telephone: (202) 240-2900 |
| Facsimile: (628) 221-5828 | kdunn@dirllp.com |
| | jrhee@dirllp.com |
| | jphillips@dirllp.com |
| Gary A. Bornstein (*pro hac vice*) | mgoodman@dirllp.com |
| gbornstein@cravath.com | |
| Yonatan Even (*pro hac vice*) | Meredith R. Dearborn (SBN 268312) |
| yeven@cravath.com | DUNN ISAACSON RHEE LLP |
| Lauren A. Moskowitz (*pro hac vice*) | 345 California Street |
| lmoskowitz@cravath.com | San Francisco, CA 94104 |
| Michael J. Zaken (*pro hac vice*) | Telephone: (202) 240-2900 |
| mzaken@cravath.com | mdearborn@dirllp.com |
| CRAVATH, SWAINE & MOORE LLP | |
| Two Manhattan West | *Counsel for Defendant Google LLC* |
| 375 Ninth Avenue | |
| New York, New York 10001 | |
| Telephone: (212) 474-1000 | |
| Facsimile: (212) 474-3700 | |

*Counsel for Plaintiff Epic Games, Inc.*

**E-FILING ATTESTATION**

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even